**WATERS & KRAUS**
Wm. Paul Lawrence, II
(Admitted *Pro Hac Vice*)
Washington D.C. Metro Office
37163 Mountville Road
Middleburg, VA 20117
Telephone: (540) 687-6999
Fax: (540) 687-5457
plawrence@waterskraus.com

**WATERS & KRAUS**
Charles Siegel
(*Pro Hac Vice* Motion to be Submitted)
3141 Hood Street, Suite 700
Dallas, TX 75219
Telephone: (214) 357-6244
Fax: (214) 357-7252
siegel@waterskraus.com

**WATERS KRAUS & PAUL**
Michael Armitage (CA Bar No. 152740)
222 N. Sepulveda Blvd., Suite 1900
El Segundo, CA 90245
Telephone: (310) 414-8146
Fax: (310) 414-8156
armitage@waterskraus.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. Loyd F. Schmuckley Jr., <br><br> STATE OF CALIFORNIA ex rel. Loyd F. Schmuckley, Jr., Relator, <br><br> vs. <br><br> RITE AID CORPORATION <br><br> Defendant. | Civil Action No. 2-12-CV-01699-KM-EFB <br><br><br> **JURY TRIAL DEMAND** <br><br><br><br><br> **RELATOR'S FIRST AMENDED COMPLAINT** |

## RELATOR LOYD F. SCHMUCKLEY, JR.'S FIRST AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action brought by Loyd F. Schmuckley, Jr. ("Relator") to recover damages and civil penalties on behalf of the United States of America and the State of California for false and/or fraudulent claims made, used, and caused to be made, used, or presented, by Rite Aid Corporation ("Rite Aid" or "Defendant") in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and the California False Claims Act (Ca. Gov't Code §§ 12650).

- 1 -
United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint

2. In addition to the allegations of his original False Claims Act Complaint amended and restated herein, the Relator adopts and incorporates by reference all allegations of the State of California's Complaint in Intervention filed on September 21, 2017 under Docket Entry 75.

## INTRODUCTION

3. This action comes before the Court due to the knowing submission of false claims for substandard pharmacy services by a high-volume pharmacy chain that has traded speed and profits for professionalism.

4. Rite Aid seeks to maximize corporate profits by minimizing the role of high-paid professionals and turning over many of the decisions that should be made by pharmacists to computer systems and poorly-trained technicians.

5. While these corporate efficiencies are an effective strategy for generating profits, they are in conflict with the responsibilities owed by professional pharmacists to their patients and government healthcare programs. The time constraints placed upon pharmacists to meet these corporate goals make it impossible for pharmacists to properly serve the safety and health needs of patients, or the fiscal interests of government healthcare programs, in accordance with legally-mandated professional standards.

6. Federal and state healthcare programs, including Medicaid, reimburse Rite Aid and other pharmacies not just for dispensing drugs to customers, but also for providing important professional services to patients that improve health outcomes and thereby reduce overall costs of healthcare. Each billing to a government healthcare program involves both a product component, the prescription drug itself, and a service component, comprised of the pharmacist's monitoring of dosage quality, amounts, potential interactions with other prescriptions and over-the-counter and herbal medications, and the dispensing of advice to patients. In other words, the pharmacy bills a government healthcare program for a combination of both the product and the service. If the service component is not provided or is provided in a substandard way, any claim made for that service is a false claim actionable under the False Claims Act.

7. Rite Aid corporate policies violate both the letter and spirit of Medicaid regulations,

- 2 -

United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint

provider agreements and formularies by denying to pharmacists the time required to properly maintain up-to-date physician contact information, maintain accurate patient files, communicate with physicians, verify diagnoses for prescriptions with formulary restrictions on diagnosis, and honestly bill federal and state healthcare programs.

8. Additionally, Rite Aid's computerized system for filling and billing prescriptions causes pharmacy technicians to bill for prescriptions and related services, and to certify compliance with government prerequisites to payment, before the prescriptions have been filled or related services have been performed.  The result is that pharmacy technicians falsely certify performance of required services, such as calling physicians or verifying formulary restrictions have been satisfied, before any services have been rendered, whether the services later rendered are in compliance with regulations or not.  Therefore, in the interest of corporate efficiency, Rite Aid's corporate pharmacy management procedures cause the routine filing of false claims.

9. Based upon information, belief and the Relator's experience in Rite Aid stores which he believes to be representative of all stores nationwide because of uniform corporate policies, the following are examples of substandard conduct and violations that routinely occur in Rite Aid stores:

    a. Improperly using pharmacy technicians and other non-pharmacist personnel to perform functions which, by law, must be performed by pharmacists, or under a pharmacist's direct supervision.

    b. Establishing managerial structures and practices which have the foreseeable effect of causing inadequate supervision of pharmacy personnel and interfering with professional pharmacists' ability to exercise independent professional judgment.

    c. Permitting poorly-trained, unsupervised technicians to override warnings or billing denials issued by the computerized billing systems of government healthcare programs during the point-of-sale billing process by creating false records indicating that physicians have been contacted or that diagnosis or

- 3 -

United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint

          other restrictions have been met.

    d.   Requiring technicians to create whatever documentation might be required in point-of-sale computer systems of government healthcare programs to get claims paid, whether the documented actions have been taken or not.

    e.  Failing to verify diagnoses or other restrictions for drugs that can be dispensed only to patients with specified diagnoses, conditions or restrictions under applicable healthcare program formulary restrictions.

    f.  Failing to maintain adequate patient files with information on patient diagnoses and other matters that are required for pharmacists to perform their professional responsibilities.

10. Rite Aid's failure to provide proper service to patients has serious public health implications. Many drugs with formulary quantity limitations, such as Vicodin, are addictive drugs subject to abuse and often sold on the street by patients seeking cash instead of treatment. Some formulary restricted drugs, such as Ciprofloxacin (Cipro), are last defense antibiotics, which are restricted because of the public health risks of overuse. When antibiotics are needlessly used this can cause pathogens to develop resistance to antibiotics, making antibiotic treatments less effective, and causing a public health risk.

11. Rite Aid's failure to verify that conditions have been satisfied for formulary-restricted drugs has serious fiscal implications. Many drugs on the formularies of state and federal healthcare programs are restricted because of their high cost. These drugs are permitted to be dispensed only as treatment for certain diseases or conditions for which there is no lower-cost alternative. The electronic point-of-sale systems that state and federal healthcare programs use to approve payment for prescriptions generate warnings that particular diagnoses are required or that other conditions must be met when a pharmacy attempts to bill for a formulary-restricted drug. If pharmacy technicians routinely override these warnings about restrictions on dispensing of drugs by indicating that the pharmacy has verified the required diagnosis, condition or restriction, when in fact it has not, then the entire system for controlling fiscal costs of expensive

- 4 -

drugs is thwarted.

12. Weighing the certain profits resulting from high-speed drug dispensing against the unlikely penalties that might occur should its violations of law be detected, Rite Aid management has knowingly calculated the odds in favor of violating the law.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Under 31 U.S.C. § 3730(e), there has been no relevant public disclosure of the "allegations or transactions" in this Complaint.

14. This Court has supplemental jurisdiction over related state law claims as they are predicated upon the same facts as the federal claims and merely assert separate damages suffered by the various states.

15. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because Defendant can be found in, resides or transacts, or has transacted business nationally and specifically within the Eastern District of California.

16. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§1391(b) and (c) because Defendant has transacted business in the Eastern District of California. The causes of action alleged herein are timely brought because of, among other things, efforts by the Defendant to conceal from the United States and the states wrongdoing in connection with the allegations made herein.

**PARTIES**

**Plaintiff**

17. Relator Loyd F. Schmuckley Jr. is a pharmacist who resides in Ukiah, California. Mr. Schmuckley graduated from Oregon State University Pharmacy School in 1979 and has over 31 years experience working as a pharmacist in multiple states. He has been a California licensed pharmacist since 1982.

18. Relator worked as a part time staff pharmacist at Rite Aid from approximately April 2007

- 5 -

United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint

1  to August 2007.  He worked at both the Rite Aid at 680 South State Street, Ukiah, CA 95482 and
2  the Rite Aid at 1730 South Main Street, Willits, CA 95490.  Mr. Schmuckley also worked as a
3  relief pharmacist at Thrifty PayLess Drug Stores in Oregon City and Lake Oswego, Oregon from
4  February 1996-March 1996 and November-December in 1997.  He began working at Thrifty
5  PayLess shortly after it was acquired by Rite Aid and was in the process of coming under the
6  management of Rite Aid.  He observed that as Rite Aid began taking over management
7  responsibilities there was tremendous pressure on pharmacists to fill prescriptions as fast as
8  possible.  When Relator worked at Rite Aid in 1997 and was re-hired at Rite Aid 10 years later,
9  he saw that Rite Aid failed to meet its legal obligations to screen drugs according to the patients'
10 medical history, counsel patients, or ensure that Medi-Cal formulary requirements for restricted
11 drugs were met.

12   19. There has been no public disclosure of the allegations made in this Complaint.   If there
13 have been any public disclosures of the particular allegations and transactions set forth in this
14 Complaint, Relator is the original source of those disclosures because he discovered the
15 violations through his personal observation while employed at the Rite Aid stores where he
16 worked, and he has voluntarily provided the information to the United States Attorney and
17 various states before the filing of this Complaint.

18 **Defendant**

19   20. Defendant Rite Aid has its principal place of business at 30 Hunter Lane, Camp Hill,
20 Pennsylvania.  Rite Aid sells prescription drugs in stores across the United States, including
21 numerous stores in the Eastern District of California.

22 **FACTUAL AND LEGAL BACKGROUND ON FORMULARY RESTRICTIONS FOR CERTAIN DRUGS**
23

24   21. Medi-Cal publishes a formulary called the "Contract Drugs List" that lists all of the drugs
25 that Medi-Cal may reimburse.  On information and belief, other state and federal healthcare
26 programs publish similar formularies.  Formulary restrictions are authorized by 42 U.S.C. §
27 1396r-8(d)(6), which states that, "[a] State may impose limitations, with respect to all such drugs

28
- 6 -
United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint

1  in a therapeutic class, on the minimum or maximum quantities per prescription or on the number
2  of refills, if such limitations are necessary to discourage waste, and may address instances of
3  fraud or abuse by individuals in any manner authorized under this chapter."   According to Cal.
4  Code Regs. 22 § 51313.3(b), drugs marked with an "*" on the Medi-Cal contract drug list are
5  called "Code I" drugs, and may not be reimbursed unless the conditions in the Medi-Cal
6  formulary are met.  (Cal. Code Regs. 22 § 51313.3(b) states: "Code I drugs on the List of
7  Contract Drugs marked "*", require prior authorization in accordance with Section 51003 [the
8  Treatment Authorization Request regulation] unless used under the conditions specified on the
9  Medi-Cal List of Contract Drugs, and are subject to the prescription documentation requirements
10 of Section 51476(c).").

11   22. Vicodin, Tylenol with Codeine ("Tylenol No. 3"), Cipro, Levaquin and Zithromax are all
12 examples of drugs marked with an "*" on the Medi-Cal contract drugs list.  A recent version of
13 the Medi-Cal formulary, including the introduction, is attached as Exhibits A-E to this
14 Complaint.

15   23. Some Code I medications, marked with an "*" on the Medi-Cal formulary, have
16 restrictions based on patient age or diagnosis in order for Medi-Cal to reimburse for these
17 medications.  For example, Ciprofloxacin HCl tablets 250mg -750 mg may only be reimbursed
18 by Medi-Cal if the prescription is used to treat 1) lower respiratory tract infections in persons
19 aged 50 years and older; 2) osteomyelitis; or 3) pulmonary exacerbation of cystic fibrosis.  Ex.
20 B. at 29.  In another example, Dronabinol capsules are indication restricted for the treatment of
21 anorexia associated with weight loss in patients with AIDS.  Ex. B. at 46.

22   24. For prescriptions that are marked as "Code I" drugs, California regulations explicitly
23 state that the pharmacist must have documentation of the patient's diagnosis, in order for Medi-
24 Cal to reimburse the prescription. 22 CCR § 51476(c) states:

25   Records of providers shall document the meeting of Code I restrictions for
26   medical supplies in the list established by the Department and for drugs listed in
27   the Medi-Cal List of Contract Drugs as follows:  (1) The practitioner who issues a

28

- 7 -

United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint

1    prescription for a Code I supply or drug shall document, in the patient's chart, the
2    patient's diagnostic or clinical condition that fulfills the Code I restriction. (2) The
3    dispenser shall maintain readily retrievable documentation of the patient's
4    diagnostic or clinical condition information that fulfills the Code I restriction. If
5    this Code I diagnostic or clinical condition information is transmitted to the
6    dispenser other than by personal handwritten order from the prescriber, the
7    dispenser shall document the transmittal date and the name of prescriber or the
8    employee or agent who is legally authorized to transmit such information. The
9    documentation shall be personally signed by the dispenser.

10   25. According to Medi-Cal regulations, "Code I" drugs require that pharmacists fill out a
11 Treatment Authorization Request ("TAR") unless the prescription meets the exact requirements
12 of the Medi-Cal Formulary. 22 CCR § 51313.3(b) states, "Code 1 drugs on the List of Contract
13 Drugs marked "*", require prior authorization in accordance with Section 51003[the Treatment
14 Authorization Request regulation] unless used under the conditions specified on the Medi-Cal
15 List of Contract Drugs, and are subject to the prescription documentation requirements of
16 Section 51476(c)."

17   26. Furthermore, according to Medi-Cal regulations, "Unless prior authorization was
18 obtained, 100% of the ingredient cost and professional fee, if any, paid shall be recovered where
19 the drug dispensed is not in compliance with the Code I restrictions in Medi-Cal regulations."
20 22 CCR § 51488.1(a)(15).

21   27. Compliance with the above Medi-Cal rules is a condition for payment of claims
22 submitted to the State of California under the Medi-Cal program. The Medi-Cal Provider
23 Agreement, attached as Exhibit F, states in paragraph 2 on page 1 that "[p]rovider agrees to
24 comply with all applicable provisions of Chapters 7 and 8 of the Welfare and Institutions Code
25 (commencing with Sections 14000 and 14200), and any applicable rules or regulations
26 promulgated by DHCS pursuant to these Chapters." On page 8 that agreement states that

27
28

1   "**[p]rovider agrees that compliance with the provisions of this agreement is a condition**
2   **precedent to payment to provider**."

3   28. The electronic point-of-sale systems that Medi-Cal uses to approve payment for
4   prescriptions generates warnings that particular diagnoses are required or that other conditions
5   must be met when a pharmacy attempts to bill for a formulary-restricted drug.  If pharmacy
6   technicians routinely override these warnings about restrictions on dispensing of drugs by
7   indicating that the pharmacy has verified the required diagnosis or condition, when in fact it has
8   not, then the entire system for controlling fiscal costs of expensive drugs is thwarted.

**RITE AID'S KNOWING SUBMISSION OF FALSE CLAIMS AND KNOWING USE OF FALSE RECORDS IN VIOLATION OF FORMULARY RESTRICTIONS**

11   29. Rite Aid has knowingly submitted claims for Code I drugs in violation of the above rules
12   and has knowingly created false records for use in submitting such claims, having made a
13   calculated decision that the benefits of quickly filling prescriptions in its stores greatly outweighs
14   the risks of being caught in the submission of false claims.

15   30. Frequently, Rite Aid has received prescriptions for Code I drugs for Medi-Cal patients
16   with no diagnosis indicated.  Under 22 CCR § 51476(c) and 22 CCR § 51313.3(b), pharmacists
17   are required to verify that Code I prescriptions submitted to Medicaid have a patient diagnosis
18   that matches the Medi-Cal formulary.  If the pharmacist does not have documentation of the
19   patient's diagnosis, then the pharmacist may not submit reimbursement for that medication to
20   Medi-Cal.  22 CCR § 51476(c); 22 CCR § 51313.3(b).

21   31. Instead of following the documentation requirements of 22 CCR § 51476(c), Rite Aid
22   technicians routinely submit Code I prescriptions to be reimbursed by Medi-Cal without actually
23   verifying with the physician that the patient has a diagnosis that matches the Code I restriction.
24   Rite Aid also falsely certifies that Code I restrictions other than diagnosis, such as age, are met
25   without properly verifying whether these restrictions are actually met.

26   32. By failing to verify that Code I diagnosis restrictions are met, Rite Aid creates false
27   records and submits false statements to Medi-Cal.  Furthermore, according to Medi-Cal

regulations, "Unless prior authorization was obtained, 100% of the ingredient cost and professional fee, if any, paid shall be recovered where the drug dispensed is not in compliance with the Code I restrictions in Medi-Cal regulations."  22 CCR § 51488.1(a)(15).  Therefore, all claims that Rite Aid submitted that did not comply with Code I restrictions were false claims.

33. Sometimes Rite Aid has failed to certify that Code I restrictions have been met, and receives a rejection from Medi-Cal.  When Rite Aid receives rejections for not certifying that a Code I restriction has been met, Rite Aid technicians routinely enter an "override" or certify that the Code I restriction was met without actually obtaining physician authorization.

34. In a very large amount of Code I restrictions, technicians certify that the Code I restriction was met without any pharmacist supervision at all.  These claims are false and contain false statements because by California law only pharmacists can determine whether Code I restrictions are met.   California regulations state:

> ***Only a pharmacist, or an intern pharmacist acting under the supervision of a pharmacist, may:***
>
> (a) Receive a new prescription order orally from a prescriber or other person authorized by law.
>
> ***(b) Consult with a patient or his or her agent regarding a prescription, either prior to or after dispensing, or regarding any medical information contained in a patient medication record system or patient chart.***
>
> ***(c) Identify, evaluate and interpret a prescription.***
>
> ***(d) Interpret the clinical data in a patient medication record system or patient chart.***
>
> ***(e) Consult with any prescriber, nurse or other health care professional or authorized agent thereof.***
>
> (f) Supervise the packaging of drugs and check the packaging procedure and product upon completion.
>
> ***(g) Perform all functions which require professional judgment.***

16 CCR § 1793.1.  *See also* 16 CCR § 1793.3; 16 CCR § 1793.7; 16 CCR § 1793.2 16 CCR § 1793.1 (California regulations which state that all actions of a technician must be supervised by a

United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint

1 pharmacist and define the tasks that must be performed by a pharmacist and which tasks may be
2 performed by a technician).

3     35. Rite Aid's refusal to comply with formulary restrictions is due to its relentless motivation
4 to process as many prescriptions as possible in as little time as possible.  There is little regard for
5 patient safety or the interest of government programs in preventing waste, fraud and abuse.

6     36. Staff pharmacists and technicians have enormous pressure to comply with Rite Aid's
7 goals for filling prescriptions as fast as possible.  Calling doctors to confirm diagnoses elevates
8 the average time to fill a prescription and negatively affects Rite Aid's profits.

**COUNT ONE**
**FEDERAL FALSE CLAIMS ACT VIOLATIONS FOR FALSE OR FRAUDULENT CLAIMS SUBMITTED DUE TO FAILURE TO FOLLOW FORMULARY RESTRICTIONS (31 U.S.C. §3729(a)(1)(A))**

12     37. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-39 above
13 and paragraphs 1-117 of the State of California's Complaint in Intervention.

14     38. Through the acts described above and in the State of California's Complaint in
15 Intervention, Defendant knowingly presented, or caused to be presented, false or fraudulent
16 claims for payment or approval by the United States, in violation of 31 U. S. C. §3729(a)(1)(A).

17     39. As a result of these false claims, the United States has been damaged and continues to be
18 damaged in an amount yet to be determined.

**COUNT TWO**
**FEDERAL FALSE CLAIMS ACT VIOLATIONS FOR FALSE RECORDS & STATEMENTS REGARDING COMPLIANCE WITH FORMULARY RESTRICTIONS (31 U.S.C. §3729(a)(1)(B))**

22     40. Relator re-alleges and incorporates the allegations in paragraphs 1-39 above and
23 paragraphs 1-117 of the State of California's Complaint in Intervention.

24     41. Through the acts described above and in the State of California's Complaint in
25 Intervention, Defendant knowingly made, used or caused to be made or used false records or
26 statements material to false or fraudulent claims for payment or approval by the United States, in
27 violation of 31 U. S. C. §3729(a)(1)(B).

42. As a result of these false claims, the United States has been damaged and continues to be damaged in an amount yet to be determined.

**COUNT THREE**
**FEDERAL FALSE CLAIMS ACT VIOLATIONS FOR CONCEALING OR AVOIDING AN OBLIGATION TO PAY THE GOVERNMENT DUE TO ITS FAILURE TO FOLLOW FORMULARY RESTRICTIONS (31 U.S.C. §3729(a)(1)(G))**

43. Relator re-alleges and incorporates the allegations in paragraphs 1-39 above and paragraphs 1-117 of the State of California's Complaint in Intervention.

44. Defendant knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government. Specifically, defendant was aware that its pharmacists were not complying with the requirements of federal and state laws and regulations. Nevertheless, Rite Aid concealed this information or provided false information to the Government and/or accreditation agencies in order to obtain and keep payments made by Medicaid for Code I prescriptions.

45. The United States, unaware of the falsity of the claims, and in reliance on the accuracy thereof, made payment upon the false or fraudulent claims and was therefore damaged.

**PRAYER FOR RELIEF UNDER THE FEDERAL FALSE CLAIMS ACT**

46. Relator respectfully requests this Court to enter judgment against Defendant, as follows:

(a) That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

(b) That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

(c) That pre- and post-judgment interest be awarded, along with reasonable Attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

1      (d)     That the Relator be awarded the maximum percentage of any recovery allowed to him pursuant the False Claims Act, 31 U.S.C. §3730(d)(1),(2);

    (e)     That this Court award such other and further relief as it deems proper.

### COUNT FOUR
### CALIFORNIA FALSE CLAIMS ACT VIOLATIONS FOR FALSE OR FRAUDULENT CLAIMS (Ca. Gov't Code § 12651 (a)(1))

47. Relator re-alleges and incorporates the allegations in paragraphs 1-39 above and paragraphs 1-117 of the State of California's Complaint in Intervention.

48. Through the acts described above and in the State of California's Complaint in Intervention, Defendant knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval by the State of California in violation of Ca. Gov't Code § 12651 (a)(1).

49. As a result of these false claims, the State of California has been damaged and continues to be damaged in an amount yet to be determined.

### COUNT FIVE
### CALIFORNIA FALSE CLAIMS ACT VIOLATIONS FOR FALSE RECORDS & STATEMENTS (Ca. Gov't Code §§ 12651 (a)(2))

50. Relator re-alleges and incorporates the allegations in paragraphs 1-39 above and paragraphs 1-117 of the State of California's Complaint in Intervention.

51. Through the acts described above and in the State of California's Complaint in Intervention, Defendant knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim for payment or approval by the State of California in violation of Ca. Gov't Code § 12651 (a)(2).

52. As a result of these false claims, the State of California has been damaged and continues to be damaged in an amount yet to be determined.

**PRAYER FOR RELIEF UNDER THE CALIFORNIA FALSE CLAIMS ACT**

53. WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

    To the STATE OF CALIFORNIA:

Three times the amount of actual damages which the State of California has sustained as a result of Defendant's fraudulent and illegal conduct;

A civil penalty of up to $10,000 for each false claim which Defendant presented or caused to be presented to the State of California;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

Litigation costs and reasonable attorney's fees;

Such further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Relator, on behalf of himself and the United States and the individual states, demands a jury trial on all claims alleged herein.

Dated: September 28, 2017                    Respectfully submitted,

                                                                     WATERS & KRAUS

                                                                     /s/ *Wm. Paul Lawrence, II*
Wm. Paul Lawrence, II
(Admitted *Pro Hac Vice)*
Washington D.C. Metro Office
37163 Mountville Road
Middleburg, VA 20117
Telephone: (540) 687-6999
Fax: (540) 687-5457
plawrence@waterskraus.com

- 14 -
United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint

| | |
|---|---|
| 1 | WATERS & KRAUS |
| 2 | Charles Siegel |
|   | (*Pro Hac Vice Motion to be Submitted*) |
| 3 | 3141 Hood Street, Suite 700 |
|   | Dallas, Texas 75219 |
| 4 | Telephone: (214) 357-6244 |
|   | Fax: (214) 357-7252 |
| 5 | siegel@waterskraus.com |
| 6 | |
| 7 | WATERS, KRAUS, & PAUL |
|   | Michael L. Armitage |
| 8 | 222 N. Sepulveda Blvd., Suite 1900 |
|   | El Segundo, CA  90245 |
| 9 | Telephone: (310) 414-8146 |
|   | Fax: (310) 414-8146 |
| 10 | armitage@waterskraus.com |
| 11 | |
| 12 | ATTORNEYS FOR RELATOR |

- 15 -
United States ex rel. Loyd F. Schmuckley Jr. v. Rite Aid Corporation First Amended Complaint