| | |
|---|---|
| | |

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                      FOR THE EASTERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| UNITED STATES OF AMERICA, and the STATE OF CALIFORNIA, et al., ex rel. LOYD F. SCHMUCKLEY, JR., | No. 2:12-cv-01699-KJM-EFB<br><br>ORDER |
| Plaintiffs, | |
| v. | |
| RITE AID CORPORATION, | |
| Defendant. | |
| STATE OF CALIFORNIA, ex rel. LOYD F. SCHMUCKLEY, JR., | |
| Plaintiffs, | |
| v. | |
| RITE AID CORPORATION, | |
| Defendant. | |

Defendant Rite Aid Corporation (Rite Aid) moves to dismiss both Relator Loyd F. Schmuckley, Jr.'s first amended complaint (FAC) and the State of California's Complaint-in-Intervention (CII). ECF No. 101. California and Schmuckley oppose, ECF Nos. 114, 117, and Rite Aid has replied. ECF No. 121. The court held a hearing on March 23, 2018. ECF No. 122.

1

As explained below, the court GRANTS Rite Aid's motion to dismiss California's Unjust Enrichment claim with prejudice but otherwise DENIES the motion.

I. BACKGROUND

Under the False Claims Act (FCA), a private individual can bring an action known as a *qui tam* action on behalf of the United States government against any individual or company who has knowingly presented a false or fraudulent claim to the government. *United States ex rel. Anderson v. Northern Telecom*, 52 F.3d 810, 812-13 (9th Cir. 1995). Here, relator Loyd F. Schmuckley alleges Rite Aid has submitted false claims for reimbursement in prescribing "Code 1" drugs, which may not be reimbursed unless certain requirements are met. FAC ¶¶ 3,21. These Code 1 drugs have restrictions based on patient age or diagnosis that must be met before the appropriate government entity, here Medi-Cal, will reimburse for prescriptions for that medication. *Id.* ¶ 23. According to Schmuckley, "California regulations explicitly state that the pharmacist must have documentation of the patient's diagnosis, in order for Medi-Cal to reimburse the prescription." *Id.* ¶ 24.

California has intervened in this case on claims under the California FCA and filed its CII, alleging Rite Aid failed to comply with "Code 1 restrictions." CII ¶ 4. More specifically, California alleges that "[f]rom 2007 to 2014, [Rite Aid] knowingly submitted false pharmacy claims to Medi-Cal and expressly and impliedly made false certifications through the Medi-Cal electronic claims submission and reimbursement process." *Id.* ¶ 6. California alleges Rite Aid made these impliedly false certifications in three ways: (1) by not performing "the required Code 1 diagnosis review, verification and confirmation before dispensing the Code 1 drug"; (2) providing certification when "the Medi-Cal beneficiary actually did not have the Code 1 drug diagnosis" or condition restriction; "and/or" (3) Rite Aid "failed to adequately document its Code 1 review and compliance [with] Code 1 regulations." *Id.* Schmuckley has incorporated California's CII allegations by reference in his FAC. FAC ¶¶ 2, 37, 40, 43, 47, 50.

## II. LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. Conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In a Rule 12(b)(6) analysis, the court must accept well-pleaded factual allegations as true and construe the complaint in plaintiff's favor. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

A claim grounded in fraud must be pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (2003). Rule 9(b) applies to claims under the FCA. *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). In addition, "'[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir.1994) (en banc)).

## III. DISCUSSION

### A. State of California's Complaint

"To survive a Rule 9(b) motion to dismiss, a complaint alleging implied false certification must plead with particularity" that: "(1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment"; "(2) claims were submitted"; and (3) "the defendant was not in compliance with that law, rule or regulation." *Ebeid*, 616 F.3d at 998. In the Ninth Circuit, the complaint need not "identify representative

3

examples of false claims to support every allegation." *Id.* The complaint must afford "notice of the particular misconduct which is alleged to constitute the fraud charged so that [defendant] can defend against the charge and not just deny that [it has] done anything wrong." *United States v. United Healthcare Ins. Co.* ("*United*"), 848 F.3d 1161, 1180 (9th Cir. 2016) (citations omitted).

California need not "allege all facts supporting each and every instance" of a violation, and "it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998-99 (internal quotation marks and citation omitted). "[S]tatements of the time, place and nature of the alleged fraudulent activities are sufficient." *United*, 848 F.3d at 1180 (citation omitted). The complaint "need not allege a precise time frame, describe in detail a single specific transaction, or identify the precise method used to carry out the fraud." *Id.* (internal quotation marks and citation omitted).

1. Express or Implied False Certification

The Ninth Circuit has recognized that false certifications may violate the FCA. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266–67 (9th Cir. 1996). False certification may be express or implied. *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1999 (2016) ("*Escobar*"[1]). An express false certification occurs when an entity seeking payment affirmatively certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted, despite noncompliance. *Ebeid*, 616 F.3d at 998. In contrast, implied false certification occurs when an entity has previously expressly certified compliance with a law, rule, or regulation despite noncompliance, and that obligation is again implicated through submission of a claim for payment, even though a renewed certification of compliance is not required. *Id.* The submission of a claim for payment following initial approval of a grant funding agreement is an implicit reaffirmation of compliance. To establish implied

---

[1] Julio Escobar was the relator who brought the qui tam suit against Universal Health Services, Inc. under the federal FCA. *See Escobar*, 136 S. Ct. at 1997. The court uses this shorthand to reduce confusion and to conform to the practice of other courts. *See, e.g.*, *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 895 (9th Cir. 2017).

4

false certification, a plaintiff must show that (1) "the claim does not merely request payment, but also makes specific representations about the goods or services provided;" and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Escobar*, 136 S. Ct. at 2001. In either situation, express or implied, the false certification of compliance creates liability when that certification is a prerequisite to receipt of the government benefit. *Id.* (citing *Anton*, 91 F.3d at 1266).

Here, California has pleaded false implied certifications at least, if not factually false claims, by Rite Aid. First, California pleads the Med-Cal process for submitting claims "if the drug is subject to Code 1 restrictions and [that] these restrictions have been met." CII ¶¶ 44. Additionally, California has alleged the pharmacy must, to get paid after an initial denial, "resubmit the claim with affirmative statements of compliance with Code 1 requirements." *Id.* 46. California also has pleaded details of Rite Aid's own procedures for employing override codes and documentation in relation to Code 1 drugs. *Id.* ¶¶ 91, 93. Based on California's review of "344 of [Rite Aid's] prescription records out of [a] randomly selected sample of 1,904 Code 1 diagnosis-related claims," California has alleged "Rite Aid did not perform the requisite Code 1 diagnosis review before dispensing the Code 1 diagnosis-restricted drug to the Medi-Cal beneficiary for a substantial portion" of those claims. *Id.* ¶¶ 99-100; *see also id.* ¶¶ 103-06. California also has alleged a lack of "any pharmacy-associate notation showing a Code 1 diagnosis review." *Id.* ¶ 101. Had Rite Aid "performed the requisite Code 1 diagnosis review, [Rite Aid] would have found that the Medi-Cal beneficiary, in fact, did not suffer from the Code 1 diagnosis or condition-restriction for the subject Code 1 drug." *Id.* ¶ 106. Thus, Rite Aid's submission of claims with override codes, representing Code 1 requirements were met when Code 1 review was not performed, entailed the making of "explicit lies in a claim for payment." CII ¶¶ 107-11. These allegations, taken together, sufficiently allege factually false claims made by Rite Aid. *See United States v. Chen*, No. 2:04CV00859-PMPPAL, 2006 WL 1554546, at *9 (D. Nev. May 30, 2006) (use of codes and modifiers that did not meet Medicare definitions constituted factually false claims); *United States v. Somnia, Inc.*, No. 1:15-cv-00433-DAD-EPG,

2018 WL 684765, at *6 (E.D. Cal. Feb. 2, 2018) (anesthesia-services claims submitted with false billing codes that triggered higher reimbursement rates were factually false).

          2.      Scienter

Although Rule 9(b) requires pleading particularized facts, a plaintiff need only generally allege facts showing intent, knowledge or scienter. *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011). To plead scienter under either the California FCA or the federal FCA, the government must allege facts plausibly showing defendant acted "knowingly," which includes "actual knowledge," deliberate ignorance," or "reckless disregard." Cal. Gov't Code § 12650(b)(3); 31 U.S.C. § 3729(b)(1); *see United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). Through this definition, "Congress adopted the concept that individuals and contractors receiving public funds have some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek." *United States v. Bourseau*, 531 F.3d 1159, 1168 (9th Cir. 2008) (internal quotation marks, citation omitted); *see Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1119 (N.D. Cal. 2014) ("[T]hose who submit claims to the government for reimbursement may be acting in reckless disregard as to the truth or falsity of their submissions if they fail to take steps to confirm the accuracy of those submissions."). The federal FCA's "reckless disregard" standard is identical to the California FCA's reckless disregard standard. *See United States v. Ctr. for Employment Training*, No. 2:13-cv-01697-KJM-KJN, 2016 WL 4210052, at *6 (E.D. Cal. Aug. 9, 2016). Whether relators can provide sufficient evidence to carry the burden of proof with respect to scienter is not resolved at the pleading stage of the case. *Id.*

California successfully pleads scienter here. First, California pleads the existence of an agreement, called a "Provider Agreement," requiring Rite Aid's compliance with statutes and regulations applicable to the Medi-Cal program; that Rite Aid "shall not engage in or commit fraud or abuse"; that Rite Aid "shall comply with all of the billing and claims requirements" by statute; and that complying with this agreement's provisions "is a condition precedent to payment to provider." CII ¶ 20. Another alleged agreement, called a "CMC Agreement," requires a pharmacy provider such as Rite Aid to "assume personal responsibility for verification of

submitted claims with source documents." *Id.* ¶ 21. California alleges Rite Aid executed these agreements on behalf of all its California stores. *Id.* ¶ 52. Although California details numerous communications about Code 1 drug compliance procedures from Rite Aid's Vice President of Pharmacy Operations, Director of Third Party Audits and Director of Third Party Operations to all Rite Aid California pharmacy associates, CII ¶¶ 89-94, California also has pleaded that Rite Aid "did not perform any internal audits to see whether its pharmacies were reviewing, verifying and confirming the Medi-Cal beneficiary's diagnosis or condition before dispensing the Code 1 diagnosis-restricted [drugs] and submitting claims therefor," and therefore failed to comply with its agreements. *Id.* ¶ 112. Although not required, California has even provided allegations of Code 1 violations on 529 sample claims out of a random sample of 1,904 claims, an allegation of particular facts that supports California's allegation that Rite Aid did not conduct even a limited inquiry. *See* CII ¶ 115, App. A. At hearing, Rite Aid noted that no pharmacist name was identified in these allegations. But the appendix to California's CII includes a store number date, beneficiary number and other information. And California has alleged the appendix is a sample of Rite Aid's "Code 1 diagnosis-restricted claims." CII ¶ 98. Rite Aid therefore has sufficient allegations from which to review its own records against the CII Appendix and determine which pharmacists are involved in the activity underlying California's complaint.

When viewing the alleged lack of any inquiry against Rite Aid's requirement that "pharmacy associates . . . complete the dispensing of prescription drugs within certain times" and rewarding "pharmacists with bonus compensation if the pharmacist met target sold prescription counts," CII ¶¶ 113-14, the court finds California has sufficiently pleaded scienter in the form of reckless disregard. *See Bourseau*, 531 F.3d at 1168; *Siebert*, 75 F. Supp. 3d at 1119.

California also has pleaded scienter in the form of pharmacy associates' actual knowledge of Code 1 violations through resubmission for payment of originally denied Code 1 claims by false or fraudulent override codes. CII ¶ 107. Because Rite Aid delegated to its pharmacy associates Code 1 regulation compliance duties, these employees' knowledge would be imputed to Rite Aid. CII ¶¶ 54-61, 71, 73, 77-78, 82-83, 85; s*ee Clark Equip. Co. v. Wheat*, 92

7

Cal. App. 3d 503, 520 (1979) (employee knowledge imputed to employer where employee acts with apparent authority).

Rite Aid's reliance on *United States v. Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 WL 4564722, at *5 (C.D. Cal. Oct. 5, 2017) ("*Swoben*")[2] is unpersuasive. There, without acknowledging the Ninth Circuit's opinion in *Bourseau*, 531 F.3d at 1168, the court adopted a scienter pleading requirement from securities fraud cases, determining that plaintiff "must sufficiently plead at least one [of the corporation's] officers had the requisite scienter at the time they made the allegedly misleading statements." (citation omitted). This court in this case, however, is bound by the Ninth Circuit's opinion in *Bourseau* discussing the scienter required under the FCA. 531 F.3d at 1168. In *Bourseau*, the Ninth Circuit credited Congress's attempt to remedy situations where "an individual has 'buried his head in the sand' and failed to make simple inquiries," reasoning that Congress adopted "the concept [of] . . . some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek." *Id.* (citing S. Rep. No. 99-345, at 20 (1986)); *see also United States v. Copeland*, No. CV-08-3065-FVS, 2010 WL 5394854, at *3-6 (E.D. Wash. Dec. 23, 2010) (quoting *Bourseau*, examining whether defendant "conducted reasonable and prudent inquiries," finding jury would be compelled to find defendant "buried his head in the sand" and observing defendant "did not conduct a meaningful investigation of his own").

The court is unpersuaded that the Supreme Court's decision in *Escobar* affected the Ninth Circuit's decision in *Bourseau*. *Escobar* focused on materiality, with passing references to scienter. 136 S. Ct. at 1996, 2001-04. The Ninth Circuit has cited *Bourseau* and *Escobar* together without distinguishing those cases or suggesting that *Escobar* modified *Bourseau*. *United*, 848 F.3d at 1174; *see also Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 n.3 (9th Cir. 2014) (distinguishing facts there from those in *Bourseau* because defendant "did not fail to make simple inquiries as to the proper billing methods") (internal quotation marks and citation omitted).

---

[2] Swoben was the relator in that case. *See Swoben*, 2017 WL 4564722, at *3.

8

### 3. Materiality

"[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the [FCA]." *Escobar*, 136 S. Ct. at 2002. This misrepresentation "cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* at 2003 (citations omitted). Nor is a misrepresentation material merely because "the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* Materiality "cannot be found where noncompliance is minor or insubstantial." *Id.*

Proof of materiality can include "the Government's decision to expressly identify a provision as a condition of payment" and "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id.*

California has sufficiently alleged materiality. *See* CII ¶¶ 45-46, 89-92, 109. Specifically, California has alleged Medi-Cal's systems are programmed "to automatically deny every claim for such Code 1 drugs when it is submitted for the first time." *Id.* ¶ 45. The pharmacy therefore must "resubmit the claim with affirmative statements of compliance with Code 1 requirements." *Id.* ¶ 46. California has pleaded Rite Aid's knowledge of the government's refusal to pay in the form of Rite Aid's Vice President of Pharmacy Operations' writing to "all California pharmacy associates" and explaining Code 1 drug procedures "to prevent any claim recovery during third party audits," including anticipated Med-Cal representatives coming "to inspect selected prescription records" and "detect errors and fraud." *Id.* ¶¶ 89-90. As noted in one of these communications, "If documentation has not been made on the hard copy and the claim is examined in an audit, payment will be recovered." *Id.* ¶ 90; *see also id.* ¶ 92. Rite Aid's Director of Third Party Audits and Rite Aid's Vice President also communicated similar information to all California pharmacy associates in writing. *Id.* ¶ 91. These allegations all reflect knowledge by Rite Aid that the government would not pay for claims

based on a failure to comply with Code 1 drug procedures.  Thus, at the pleading stage, this court finds California has sufficiently alleged materiality.

Rite Aid's argument that Code 1 regulations are not material because Rite Aid could have sought a Treatment Authorization Request for a beneficiary who did not satisfy Code 1 diagnosis restrictions lacks merit.  The California Department of Health Care Services does not automatically approve Treatment Authorization Requests; rather, the Department denies these requests for a host of reasons.  *See* Request for Judicial Notice (RJN), Ex. C, ECF No. 115-3.[3]  In other words, California's allegations do not include Treatment Authorization Requests.  *See* CII ¶ 97.  At hearing, California confirmed none of the allegations of Code 1 violations on 529 sample claims out of a random sample of 1,904 claims was a Treatment Authorization Request claim.  *See* CII App. A.  Nothing in California's pleading indicates to the court that "the Government regularly pays" claims that do not conform to Code 1 diagnosis restrictions and do not involve an approved Treatment Authorization Request.  *See Escobar*, 136 S. Ct. at 2003.

        4.      <u>Claims to the Government</u>

Rite Aid does not contest the sufficiency of California's pleading of this element of a false claim, and it is well pled.  *See* CII ¶¶ 39, 97.

        5.      <u>Other Asserted Rule 9 Deficiencies</u>

            a)      <u>Scheme to Defraud</u>

Rite Aid contends California's complaint "is fatally deficient because it fails to allege any particularized facts showing any fraudulent scheme to defraud the government."  ECF No. 101 at 23.  Not so.  "[I]t is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually

---

[3] "The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the territorial jurisdiction, or (2) can be accurately and readily determined by trial courts from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Exhibit C is judicially noticeable as a matter of public record "obtained from a governmental website" of a state executive branch agency.  *Preciado v. Wells Fargo Home Mortgage*, No. 13–00382, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013); *Paralyzed Veterans of Am. v. McPherson*, No. 06-4670, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008).  Thus, the court may judicially notice this document.

submitted." *Ebeid*, 616 F.3d at 998-99 (internal quotation marks and citation omitted). "[S]tatements of the time, place and nature of the alleged fraudulent activities are sufficient." *United*, 848 F.3d at 1180 (citation omitted). The complaint "need not allege a precise time frame, describe in detail a single specific transaction, or identify the precise method used to carry out the fraud." *Id.* (internal quotation marks and citation omitted).

Here, California has alleged sufficiently particular details of a scheme to submit claims for Code 1 drug prescriptions in which Rite Aid did not comply with Code 1 requirements, by delegating Code 1 compliance to its employees then failing to conduct even "a limited inquiry" to ensure compliance. CII ¶¶ 6, 39, 54-61, 84, 89-94, 107, 112; *Bourseau*, 531 F.3d at 1168. California alleges a specific time frame from 2007 to 2014 and alleges multiple transactions failed to comply with Code 1 requirements, offering examples based on review of a randomly selected sample of Rite Aid's Code 1 claims. CII ¶¶ 97-98. Although California characterizes its allegations as identifying three "false or fraudulent schemes," at bottom California alleges a fraudulent scheme in the form of Rite Aid's delegating to employees responsibility for Code 1 compliance, employees failing to comply with Code 1 regulations and Rite Aid's submitting claims for payment on improperly dispensed Code 1 drugs. California's allegations that Rite Aid "did not complete documentation of the necessary Code 1 diagnosis review and verification" or "maintain any documentation of the beneficiary's diagnosis or condition" that shows Code 1 compliance, ECF No. 114 at 15, are allegations setting forth particular details about the "nature of the alleged fraudulent activities." *See United*, 848 F.3d at 1180. Moreover, this failure to "document the meeting of Code 1 restrictions for medical supplies," as required by California Welfare & Institutions Code section 14124.1,[4] supports

---

[4] California Welfare & Institutions Code section 14124.1 states:

> Each provider, as defined in Section 14043.1, of health care services rendered under the Medi-Cal program or any other health care program administered by the department or its agents or contractors, shall keep and maintain records of each service rendered under the Medi-Cal program or any other health care program administered by the department or its agents or contractors, the beneficiary or person to whom rendered, the date the service was rendered, and any additional information as the department may by regulation

11

California's implied certification theory along with Rite Aid's alleged execution of agreements promising to maintain such records. CII ¶¶ 20-21, 52.

To the extent Rite Aid believes California has not sufficiently alleged a scheme to defraud the government because California has not sufficiently alleged scienter, the court has already addressed that argument above. And a plaintiff need only generally allege facts showing intent, knowledge or scienter. *Corinthian Colleges*, 655 F.3d at 996.

### b) Particularity of False Claims

Rite Aid contends California "fails to allege a single specific example of what override code was used in connection with any specific claim, and how or why the use of that unidentified code in that instance in connection with that unidentified claim was 'false' or 'fraudulent.'" ECF No. 101 at 23 (emphasis removed). Rite Aid also asserts the appendix California attaches to its complaint, CII, Ex. A, does not set forth "any 'false' claims, much less any pleaded with the specificity required by Rule 9(b)." ECF No. 101 at 24. Rite Aid contends California's complaint describes the conduct surrounding the 529 claims in the appendix "in only the vaguest and most generalized terms." *Id.*

The court has addressed these contentions in addressing the elements of an FCA claim above. Moreover, California pleads that Rite Aid, in its own response to interrogatories, has described its own computer system's override code as "comprised of a sub-clarification code, prior authorization code, and prior authorization number" to be filed in by a pharmacist "responsible for assessing whether the Code 1 requirements have been met." CII ¶ 82. California has also offered details of the code overrides Rite Aid communicated to all California pharmacy employees. *Id.* ¶ 84-90. And Rite Aid's criticism of California's exhibit as lacking any "indication of why [the 529 claims] are 'false'" is unavailing. *See* ECF No. 101 at 24. The lack

---

require. Records required to be kept and maintained under this section shall be retained by the provider for a period of 10 years from the final date of the contract period between the plan and the provider, from the date of completion of any audit, or from the date the service was rendered, whichever is later, in accordance with Section 438.3(u) of Title 42 of the Code of Federal Regulations.

of documentation of Rite Aid's compliance with Code 1 procedures is squarely part of California's allegations. This is sufficient at the pleading stage.

### c) Code 1 Violations

Rite Aid contends California has not pleaded any Code 1 Regulation violations. According to Rite Aid, any documentation errors, such as the alleged lack of a "pharmacy-associate notation" showing a Code 1 diagnosis, CII ¶¶ 99-102, is not a regulatory violation, ECF No. 101 at 25. Under the applicable regulations, the "practitioner who issues a prescription for a Code 1 supply drug shall document" that the patient's diagnostic condition satisfies Code 1 restrictions. Cal. Code Regs. tit. 22, § 51476(c)(1). The "dispenser," or pharmacist, "shall maintain readily retrievable documentation of the patient's diagnostic or clinical condition information that fulfills the Code 1 restriction." *Id.* § 51476(c)(2). Rite Aid contrasts the word "maintain" to the word "document," noting dispensers also are required to "document the transmittal date and the name of prescriber or the employee or agent who is legally authorized to transmit such information" when "Code 1 diagnostic or clinical condition information is transmitted to the dispenser other than by personal handwritten order from the prescriber." *Id.* Thus, Rite Aid claims, the lack of a pharmacy-associate notation showing a Code 1 diagnosis does not violate Code 1 regulations because pharmacists need only maintain that notation if the prescribing practitioner documents it. ECF No. 101 at 25-26.

Rite Aid also asserts the lack of Code 1 diagnosis or condition documentation in medical records from doctors allegedly examined by California would show only "an absence of documentation but not an absence of the correct diagnosis or condition." ECF No. 101 at 26 (emphasis removed). This argument misses the point of that lack of documentation: without that documentation, Rite Aid as a "dispenser" could not have possibly "maintained readily retrievable documentation of the patient's diagnostic or clinical condition information that fulfills the Code 1 restriction." Cal. Code Regs. tit. 22, § 51476(c)(2). Even if the doctor must document and the pharmacist need only maintain documentation, the alleged lack of documentation maintained by Rite Aid states a regulatory violation. Additionally, California still alleges an FCA claim through its allegations related to Rite Aid's execution of provider and CMC agreements, including that

13

Rite Aid agreed "that no claim shall be submitted until the required source documentation is completed and made readily retrievable in accordance with Medi-Cal statutes and regulations." CII ¶ 21; *see Escobar*, 136 S. Ct. at 1995 (finding implied certification can be a basis for FCA liability when "defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's non-compliance with a statutory, regulatory, or contractual requirement").

The court DENIES Rite Aid's motion to dismiss California's FCA claims.

### 6. Unjust Enrichment

Rite Aid moves to dismiss California's claim of unjust enrichment, asserting this claim "is not a cause of action at all." ECF No. 101 at 20-21. California cites to *Astiana v. The Hain Celestial Group, Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015), asserting "[t]he Ninth Circuit has rejected this argument." ECF No. 114 at 33.

Here, Rite Aid is correct: "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Although the Ninth Circuit has stated "a court may construe the cause of action as a quasi-contract claim seeking restitution," the court is unable to do so here because California's unjust enrichment allegations do not sufficiently plead such a quasi-contract claim, if one exists. *See* CII ¶¶ 124-26; *Astiana*, 783 F.3d at 762 (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).

The court therefore GRANTS Rite Aid's motion to dismiss California's Unjust Enrichment claim. At hearing on this motion, the State agreed its payment by mistake claim was sufficient for pleading restitution as an alternative equitable remedy. Hr'g Tr. at 26:7-27:15, ECF No. 126. The court therefore dismisses the claim with prejudice.

### 7. Payment by Mistake

Rite Aid also moves to dismiss California's claim of payment by mistake. Rite Aid asserts this quasi-contractual claim should be dismissed "because the [c]omplaint has alleged that either a Provider Agreement or a CMC Agreement, or both, exists covering the subject matter set forth in the [c]omplaint." ECF No. 101 at 27 (citing *United States ex rel. Jordan v. Northrop*

*Grumman Corp.*, No. CV 95-2985 ABC (Ex), 2002 WL 35628748, at *7, n.4 (C.D. Cal. Sept. 25, 2002) ("[T]he Government may not pursue the quasi-contractual remedies of unjust enrichment and payment by mistake where valid contracts exist . . . .")).

Rite Aid's argument does not square with Federal Rule of Civil Procedure 8(d)(2), which permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Moreover, Rite Aid's authority is a case granting a motion for summary judgment; that authority is therefore inapposite. *See Jordan*, 2002 WL 35628748, at *7 n.4; *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1156 (9th Cir. 1996) (appeal from final partial judgment).

The court DENIES Rite Aid's motion to dismiss California's payment by mistake claim.

    B.    <u>Schmuckley's Complaint</u>

        1.    <u>Standing</u>

Rite Aid moves to dismiss Schmuckley's federal FCA claims for lack of Article III standing, arguing California has "intervened on each and every claim in the Relator Complaint." ECF No. 101 at 28-29. But Rite Aid overstates. California has only partially intervened in this case, asserting claims under the California FCA and claims for equitable relief on behalf of California. CII ¶¶ 118-30, Prayer for Relief at 39-40. The United States has declined to intervene. ECF No. 38. In his operative complaint, Schmuckley asserts *qui tam* claims under the federal FCA. FAC ¶¶ 37-45. As a *qui tam* plaintiff, therefore, Schmuckley sues on behalf of the United States' interests in this case. Medicaid is a jointly funded state and federal program and the federal government makes quarterly grants to each state to partially reimburse the state for the federal share of these expenditures. *See* 42 U.S.C. § 1396 *et seq.*; *Arkansas Dep't of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006). If Schmuckley can successfully show Rite Aid engaged in FCA violations, then the federal government's partial reimbursement to California would be an "injury in fact" that is concrete, particularized and actual. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Such injury would be directly traceable to any successful FCA violations, and a favorable decision to Schmuckley

would permit recovery of improperly granted reimbursements. *Id.* Schmuckley retains standing to prosecute the federal FCA claims. *See, e.g.*, *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 511-12 (S.D.N.Y. 2014) (observing "a relator's . . . complaint continues to be the operative complaint for all non-intervened claims"); 31 U.S.C. § 3730(c)(1) (permitting relator to "have the right to continue as a party to the action, subject to" some limitations); *id.* § 3730(d) (permitting relator a recovery when government proceeds with an action). Rite Aid cites to 42 U.S.C. § 1396b(q)(5), which provides funds collected under that paragraph "shall be credited exclusively to . . . the Federal health care program (including the State plan under this subchapter) . . ." *See* ECF No. 121 at 23. But Rite Aid's citation does not account for the federal government's partial reimbursement to California or the California FCA scheme under which California actually has intervened.

Rite Aid also has not shown "that unrestricted participation during the course of litigation by [relator] would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense." *See* 31 U.S.C. § 3730(c)(2)(D).[5] Rite Aid's bare assertion that Schmuckley's continued active, unrestricted participation "would subject Rite Aid (and the Court) to undue and duplicative motion practice, discovery demands, and scheduling concerns" is not a "showing" under § 3730(c)(2)(D). Here, Rite Aid moved to dismiss the claims of both California and Schmuckley in a single motion, Schmuckley has maintained federal FCA claims in which California has not intervened and there is no reason before the court to limit Schmuckley's participation at this stage of the litigation. This court, under Federal Rule of Civil Procedure 16 and through its inherent power, can manage this case to prevent duplication. *See United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).

---

[5] Title 31, United States Code, section 3730(c)(2)(D) states:

> Upon a showing by the defendant that unrestricted participation during the course of the litigation by the person initiating the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation.

16

Schmuckley also has standing under the California FCA despite California's intervention with respect to Schmuckley's California FCA claims. *Compare* CII ¶¶ 118-123, *with* FAC ¶¶ 47-52. Under California Government Code section 12652(e)(1), "[t]he *qui tam* plaintiff shall have the right to continue as a full party to the action" even "[i]f the state or political subdivision proceeds with the action" with "primary responsibility for prosecution of the action." *See United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1148 (C.D. Cal. 2005) (where "Orange County opted to intervene," *qui tam* plaintiff still had "standing under the California FCA" as "full party to the action," and same plaintiff also had standing "under the FCA as a *qui tam* plaintiff" where the United States declined to intervene) (citing Cal. Gov't Code § 12652(e)(1)).

2. <u>Incorporation of California's Complaint-in-Intervention</u>

Rite Aid also contends Schmuckley fails to state a claim under the federal FCA. ECF No. 121 at 23. Rite Aid argues in part that Schmuckley's incorporation of California's CII into his FAC is improper. *Id.* While Rite Aid's argument has some persuasive value, the court finds Schmuckley's representations at hearing sufficient to overcome Rite Aid's contentions, as explained below.

Attorneys have a nondelegable responsibility under Federal Rule of Civil Procedure 11 to personally validate the truth of filed papers. *In re Connetics Corp. Securities Litigation,* 542 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008). Courts have stricken allegations where a party has not independently investigated the allegations it makes or incorporates by reference. *See id.* (striking allegations based on SEC complaint where plaintiffs did not contend they conducted independent investigation into facts alleged); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011) (granting motion to strike allegations copied from complaints in other cases because "[p]laintiffs' counsel does not claim to have taken . . . measures to investigate the bases for allegations in other complaints they cite"); *Conde v. Sensa*, 259 F. Supp. 3d 1064, 1071 (S.D. Cal. 2017) ("Plaintiff may not rely on the unsubstantiated allegations in the attached state-court

complaints to defeat the[] Motions to Dismiss," but "the [c]ourt will consider the various primary documents attached to those complaints").

In his complaint, Schmuckley merely states he "incorporates by reference all allegations of the State of California's [CII]." FAC ¶ 2. Schmuckley offers no explanation for this incorporation, only repeating in a more specific fashion his incorporation "by reference" of "paragraphs 1-117 of the State of California's [CII]." *Id.* ¶ 37, 40, 43, 47, 50. Additionally, Schmuckley does not explain in his opposition to Rite Aid's motion to dismiss that he conducted any form of investigation or inquiry into the allegations incorporated by reference. *See* ECF No. 117 at 9, 22-23 (explaining allegations in California's CII "are adopted and incorporated into the Relator's FAC"). However, at hearing, the court confirmed with Schmuckley and the State of California that Schmuckley has conducted an independent investigation and has conferred with the State of California throughout this litigation. Hr'g Tr. at 27:19-28:15. Based on Schmuckley's representations, the court therefore considers Schmuckley's allegations in the FAC and the incorporated allegations from California's CII together.

Rite Aid's motion relies heavily on the "very close similarity" between the California FCA and the federal FCA to advance its arguments and contends its arguments apply to both California and Schmuckley. *See* ECF No. 101 at 9 (citing *California ex rel. Grayson v. Pacific Bell Tel. Co.*, 142 Cal. App. 4th 741, 746 n.3 (2006)); *see also id.* at 7, 8 n.1 (asserting "the Relator Complaint fails for the same reasons" as "the State's Complaint" and stating that "[u]nless otherwise indicated . . . each argument made [as to] the State Complaint in this motion applies equally to the Relator Complaint"). Consistent with the court's analysis above, the court DENIES Rite Aid's motion to dismiss Schmuckley's complaint.

IV. CONCLUSION

Based on the reasons set forth above, the court:

- DENIES Rite Aid's motion to dismiss California's FCA claims.
- GRANTS Rite Aid's motion to dismiss California's Unjust Enrichment claim, with prejudice.
- DENIES Rite Aid's motion to dismiss California's Payment by Mistake claim.

18

- DENIES Rite Aid's motion to dismiss Schmuckley's complaint, as described above.

Rite Aid shall file its answers within twenty-one (21) days.

IT IS SO ORDERED.

DATED: September 5, 2018.

_____
UNITED STATES DISTRICT JUDGE