MORGAN, LEWIS & BOCKIUS LLP
ERIC W. SITARCHUK, Admitted *pro hac vice*
 eric.sitarchuk@morganlewis.com
KELLY A. MOORE, Admitted *pro hac vice*
 kelly.moore@morganlewis.com
BENJAMIN P. SMITH, Bar No. 197551
 benjamin.smith@morganlewis.com
MICHAEL Q. EAGAN, Jr., Bar No. 275823
 michael.eagan@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000; Fax: +1.415.442.1001

Attorneys for Defendant
RITE AID CORPORATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, and the STATES OF CALIFORNIA, et al., *ex rel.* LOYD F. SCHMUCKLEY, JR.,<br><br>Plaintiffs,<br><br>vs.<br><br>RITE AID CORPORATION,<br><br>Defendant.<br><br>STATE OF CALIFORNIA, *ex rel.* LOYD F. SCHMUCKLEY, JR.,<br><br>Plaintiffs,<br><br>vs.<br><br>RITE AID CORPORATION,<br><br>Defendant. | Case No. 2:12-cv-01699-KJM-EFB<br><br>**DEFENDANT RITE AID CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF EXPERT ROY EPSTEIN, PH.D.**<br><br>Date: June 28, 2019<br>Time: 10:00 A.M.<br>Dept.: Courtroom 3 |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S OPP. TO PLFS.' MTN. TO
EXCLUDE PORTIONS OF EXPERT REPORT
AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

# OPPOSITION

## I. INTRODUCTION

Defendant Rite Aid Corporation ("Defendant" or "Rite Aid")[1] submits this Memorandum in Opposition to the State of California ("State") and Relator Loyd F. Schmuckley, Jr.'s ("Relator," together with the State, "Plaintiffs") Motion to Exclude Portions of Expert Report and Testimony of Roy J. Epstein, Ph. D.  ECF No. 206 ("Motion").  This Court should deny the Motion because, the Motion never specifies what "portions" of Dr. Epstein's Report ("Report") and testimony Plaintiffs seek to exclude, and Dr. Epstein's Report and testimony fully comply with the standards set forth in *Daubert* and codified in Rule 702 of the Federal Rules of Evidence. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ("*Daubert I*").  Unable to prove the viability and statistical validity of their proposed sampling methodology through their own expert's report or numerous untimely and previously-undisclosed declarations, Plaintiffs argue that the opinions of Dr. Epstein should be excluded because they are purportedly "irrelevant and unreliable" and "based on improper legal conclusions."  But, Plaintiffs arrive at these conclusions only by mischaracterizing Dr. Epstein's opinions and asserting that Dr. Epstein proffers opinions that he in fact does not.  Dr. Epstein is an eminently qualified statistician and his opinions are reliable, relevant and helpful to this Court in determining the validity of the State's sample.

Dr. Epstein is a well-respected leader, scholar and professor in econometrics and statistics. In this matter, he opines as to the veracity of Plaintiffs' statistical sample–an issue well within his expertise.  Unable to attack his credentials as a statistician, Plaintiffs first complain that he is not an expert on pharmacy practices or drug dispensing.  But, he is not being offered as an expert in such areas, and is instead being offered solely as a statistics expert.  Plaintiffs then deliberately misinterpret Dr. Epstein's statistical opinions as legal interpretations of the governing statute, Cal. Code Regs., tit. 22, § 51476.  Plaintiffs' assertions that Dr. Epstein's opinions "usurp the court's role of defining the applicable law" are nonsense. *Cf.* Motion at 13 (internal citation omitted).  Dr. Epstein repeatedly explains that he offers **no opinions** interpreting the statute or any other law,

---

[1] Rite Aid contends that it is an improper defendant to this action. *See* ECF No. 188.

1

DEF.'S OPP. TO PLFS.' MTN. TO
EXCLUDE PORTIONS OF EXPERT REPORT
AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

and that such legal questions ***cannot*** be clarified "by the statistician." Declaration of Benjamin P. Smith ("Smith Decl."), submitted herewith, Ex. 1 ("Epstein Dep.") at 152:18-24. Instead, Dr. Epstein's opinion is that, to the extent the governing statute is found to require measurement of certain information that Plaintiffs ignore, Plaintiffs' sample will be riddled with measurement error. In other words, Dr. Epstein identifies certain facts and assumptions that—he and Plaintiffs' own expert agree—must be provided at the *outset* of survey design, as opposed to Plaintiffs' cart-before-the-horse proposal which simply ignores any and all alternatives that may cast doubt upon their adopted methodology.

Plaintiffs also absurdly claim that Dr. Epstein relies upon "unreliable, objectionable, and prejudicial documents." However, the documents Dr. Epstein relies upon are California's *own* sworn interrogatory responses and a spreadsheet relied upon by Plaintiffs' expert witness that proves Plaintiffs' sample is infected with measurement error. Such documents are wholly proper for Dr. Epstein to consider in his rebuttal report.

Finally, Plaintiffs falsely claim that Dr. Epstein is offering legal opinions on materiality and scienter. In fact, Dr. Epstein's opinion is that the State's statistical methodology "does not account for" the False Claims Act's ("FCA") materiality and scienter elements, and that any statistically valid assessment of FCA liability as a whole would require an assessment of materiality and scienter. Epstein Report, ¶ 24; Epstein Dep. at 145:3-146:6. Thus, in this regard, Dr. Epstein is merely noting *Plaintiffs' own concession* that their statistical sample does not account for materiality or scienter, not any so-called "legal conclusion." *See* ECF No. 202 at 8 n.2.

Dr. Epstein's opinions concern generally accepted principles of statistical design based on authoritative scholarly publications—the same as those relied upon by Plaintiffs' expert—and more than 25 years of experience in the field of economics, statistics, and econometrics. The Motion should be denied on all grounds.

## II.   RELEVANT FACTUAL BACKGROUND

The State and Relator allege that Rite Aid submitted false claims concerning prescriptions

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S OPP. TO PLFS.' MTN. TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

for certain, but not all, Code 1 diagnosis-restricted drugs to Medi-Cal for reimbursement. Plaintiffs propose to use a sample of 1,904 claims created by the United States Attorney's Office for the Eastern District of California ("USAO"), in conjunction with the State and government contractors, during the pre-intervention investigation to extrapolate its findings of alleged Code 1 regulatory violations to three separate claims universes totaling approximately 500,000 claims. *See* ECF No. 131 at 2-3.

The Court ordered the parties to engaged in Phase 1 discovery, focused on Plaintiff's proposed 1,904 sample and Plaintiffs to serve their sampling expert report "at the earliest feasible point" in Phase 1. ECF No. 128 at 5. On July 27, 2018, the State served the "Expert Report No. 1 of Michael J. Petron, CPA, CFE" upon Rite Aid, along with anonymized Medi-Cal claims universes. *See* ECF No. 196-1 ("Petron Report"). Subsequently, the Court ordered Rite Aid to serve a rebuttal "Sampling Methodology Expert Report" and to file a single "Motion Challenging Plaintiffs' Sampling Methodology and Design" during Phase 1, with opposition and reply memoranda to follow suit. ECF Nos. 137, 176, 193.

Rite Aid served the "Report No. 1 of Dr. Roy J. Epstein PhD" on Plaintiffs on February 15, 2019. ECF No. 201 ("Epstein Report" [redacted]). Dr. Epstein's expert report contains his opinions in rebuttal to the expert report and testimony of Plaintiffs' retained sampling expert Michael J. Petron, CPA, CFE. *See* ECF No. 196-1 (7/25/2018 Petron Report); ECF No. 196-2 ("Petron Dep.").

On April 15, 2019, Rite Aid filed its Motion to Exclude Plaintiffs' Proposed Sampling Methodology. ECF No. 195 ("Sampling Motion"). The Sampling Motion sets forth relevant factual background that is incorporated by reference, but not repeated, here. *Id.* at 2-11. On May 15, 2019, Plaintiffs filed their Opposition to the Rite Aid's Sampling Motion, which merely confirmed their failure to follow the precepts of total survey design advocated by their own expert, Mr. Michael Petron, and which contained untimely and previously-undisclosed evidence in a failed attempt to cure the defects inherent in their sample methodology. *See* ECF No. 205 ("Opposition"); ECF No. 208 (Rite Aid's Motion to Exclude and Strike Untimely Evidence).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF.'S OPP. TO PLFS.' MTN. TO
EXCLUDE PORTIONS OF EXPERT REPORT
AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

Now, Plaintiffs file this Motion as another attempt to support the State's invalid sampling methodology despite the failure of their Opposition and late-disclosed evidence to do so.

## III. LEGAL STANDARD

Under Rule of Evidence 702 and the *Daubert I* standard, "[t]he court must conduct a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Pertinent evidence based on scientifically valid principles will satisfy those demands." *Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1020 (E.D. Cal. 2011) (internal citations and quotation marks omitted), *quoting Daubert I*, 509 U.S. at 592–593, 597. Thus, courts will only exclude expert testimony if it is irrelevant or unreliable. *City of Pomona v. SQM N. Am. Corp.,* 750 F.3d 1036, 1053 (9th Cir. 2014).

## IV. DR. EPSTEIN'S OPINIONS ARE RELIABLE AND RELEVANT UNDER RULE 702

Plaintiffs contest the reliability and relevance of Dr. Epstein's opinion because, they claim, he does not have sufficiently particularized experience working within the pharmaceutical industry and because his opinions are based on faulty legal premises. Plaintiffs are wrong on each claim.

*First,* Plaintiffs allege that Dr. Epstein's opinions are invalid because Dr. Epstein does not have "specialized knowledge" about how to evaluate what is a false claim in this action. However, Dr. Epstein never claims he has such specialized knowledge—indeed, quite the opposite. *See* Epstein Dep. at 241:23-25 ("I really can't offer an opinion on what's a false claim and what's not"). In fact, Dr. Epstein only opines that, in order to design a valid sample (or "survey"), a *statistician* must consider and understand, at the *outset* of sample design, the objective of the sample and the measurement procedures to be used to "test" the sample units. *See* Epstein Report, ¶¶ 38, 69; Petron Report, ¶¶ 10, 17. Unquestionably bound up in these issues are eventual interpretations of fact and law by the Court—regarding both the applicable Medi-Cal regulations and the elements of a FCA violation—that necessarily affect the "total survey design" principles that must be established at the outset. *See Monroe*, 766 F. Supp. 2d at 1023-24

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF.'S OPP. TO PLFS.' MTN. TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

(rejecting argument that statistical expert's lack of medical or epidemiological expertise renders testimony inadmissible because expert's "*findings are all reported in the language of a statistician… [and] he is an expert in applying statistical principles relevant to the design and interpretation* of epidemiological studies.") (emphasis added).

In this regard, Dr. Epstein's knowledge, skill, experience, and training undoubtedly qualify him to testify as an expert on the validity of the State's proposed sampling methodology. *See* Fed. R. Evid. 702 (permitting expert testimony when the "expert's scientific, technical or other specialized knowledge will help with trier of fact to understand the evidence"). Nor do Plaintiffs truly even dispute his qualifications as a statistician or economist. *Cf.* Motion at 9 ("Because an expert must be qualified to offer 'helpful' testimony, the question of qualification is case specific, requiring Dr. Epstein to have qualifications and knowledge to qualify as a 'measurement' expert"). Indeed, with more than 30 years of experience the field of economics, Dr. Epstein's published work on statistics and econometrics includes peer-reviewed articles and a book.[2] Epstein Report, Attachment 1 at A-2–A-4 ("Epstein C.V.").[3] Dr. Epstein was a National Science Foundation Fellow at Yale University, where he received his Ph. D. in economics.[4] Shortly thereafter, Dr. Epstein started his career in academia as an assistant professor of economics at the University of Illinois at Chicago. Since that time, he has held senior positions as

---

[2] Econometrics is the application of statistics to economic data. *See* Epstein Report, ¶ 1, n.1; Epstein Dep. at 17:22-23.

[3] Plaintiffs assert that Dr. Epstein lacks the required specialized knowledge because Dr. Epstein has not worked specifically with pharmacies and government healthcare compliance. Motion at 10. This is not true. The State willfully ignores the fact that Dr. Epstein does have experience working with economics as it relates to the pharmaceutical industry. Epstein Report, Attachment 1 at A-5 ("Epstein C.V."). Plaintiffs also assert that Dr. Epstein lacks the required specialized knowledge because he "has not designed any sampling methodology in [False Claims Act] investigations." Motion at 10. With this assertion, the State is suggesting that the bar for being a credible expert on statistical sampling is to have designed a statistical sample in the exact type of case at hand. That suggestion is absurd. Further, again the State conveniently overlooks that Dr. Epstein's experience and an expert with a False Claims Act ("FCA") case when making this assertion. Epstein Report, ¶2.

[4] Dr. Epstein also attended the Graduate School of Business at the University of Chicago returning scholar program to study finance and accounting for two years.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF.'S OPP. TO PLFS.' MTN. TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

an economist, principal and director in several national economic consulting firms, including Lexecon, Analysis Group/Economics and LECG, LLC. Dr. Epstein also served as an economic advisor on antitrust matters to the European Commission, and has worked on damages in complex litigation matters *including FCA matters*. Dr. Epstein is now an Adjunct Professor of Finance at the Carroll School of Management at Boston College, teaching econometrics at the graduate level. Dr. Epstein also has an independent economic consulting practice. In sum, Dr. Epstein's credentials as an economics and econometrics expert cannot seriously be challenged.

*Second,* the State argues that Dr. Epstein's measurement criteria are unreliable because they rest on insufficient facts and data. Motion at 9. The State supports this assertion with various factual allegations, such as that Dr. Epstein failed to consult Rite Aid about their Code 1 policies and procedures, and that Dr. Epstein did not consider Rite Aid's use of claim override codes. *Id.* at 10.[5] While the State lists documents that Dr. Epstein purportedly did not review, and questions Dr. Epstein purportedly did not ask, they fail to establish any correlation between the alleged "insufficient facts" and the any alleged deficiency in Dr. Epstein's opinion on matters of statistical validity, including his opinion that measurement procedures must be establish at the outset of sample design. Moreover, Plaintiffs' argument that Dr. Epstein relied on insufficient facts is legally irrelevant to the question of admissibility. Plaintiffs cite no case *excluding* expert testimony due to "insufficient facts," because they cannot.[6] Courts in this circuit have routinely held that, "it is not the role of the trial court to evaluate the correctness of facts underlying one

---

[5] In this regard, Plaintiffs are accusing of Dr. Epstein of not having considered information and developed opinions regarding pharmacy practice and procedure that, they alternatively argue, he is not qualified to give.

[6] Plaintiffs cite to *General Elec. V. Joiner,* 522 U.S. 136, 146 (1997) to support their statement that, "[t]here is a huge analytical gap between the data and [Dr. Epstein's] measurement criteria." Motion at 11. *General Electric* held that appellate courts should apply an abuse of discretion standard when reviewing trial court's decision to admit or exclude expert testimony under *Daubert*. 522 U.S. at 138-39. And, the expert's "speculative" opinions there—which relied upon *animal* studies for conclusions regarding *humans'* exposure to chemicals (*id.* at 143-44)—bear no resemblance to the opinions presented here by Dr. Epstein, based on generally accepted statistical authorities cited widely by experts in the field, *including Plaintiffs' own expert. See* Sampling Motion at 4.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF.'S OPP. TO PLFS.' MTN. TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

expert's testimony." *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1147–48 (N.D. Cal. 2003), *aff'd*, 471 F.3d 1293 (Fed. Cir. 2006). Rather, "[t]he proper way for a party to challenge an expert in such a situation . . . is through cross-examination of the expert." *IGT v. All. Gaming Corp.*, No. 2:04-CV-1676-RCJ-RJJ, 2008 WL 7084606, at *4 (D. Nev. Oct. 21, 2008). Thus, Plaintiffs' argument that Dr. Epstein's opinion should be excluded based on "insufficient facts" is without legal footing. *Third,* Plaintiffs allege that the portions of the Epstein Report are irrelevant because he relied upon "unreliable, objectionable and prejudicial documents." Motion at 12. These "unreliable, objectionable and prejudicial documents" are the State's *own* discovery responses and the so-called "Poulson Analysis," which was an analysis of the alleged falsity of claims prepared by the United States Attorney's Office for the Eastern District of California ("USAO"), and that Plaintiffs' expert reviewed in connection with the preparation of his report.[7] Epstein Report, ¶ 51; ECF No. 204-1 (Petron Report, Ex. 2.0), at 18 (listing "RA Stat Sample Summary & Projection - 2016-07-26.xlsx" under "Documents Considered"); Petron Dep. at 17:24-18:6.

Moreover, it is well established that an expert may rely upon the type of evidence reasonably relied upon by other experts in the field in forming opinions. *Carson Harbor Village Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001). This includes inadmissible facts or data if experts in the particular field would reasonable rely on those kinds of facts or data in forming an opinion on the subject. Fed. R. Evid. 703. Experts may rely on information prepared by other experts. *Travelers Prop. Cas. Ins. Co. v. Electrolux Home Prod. Inc.*, No. CV 12-05112-DMG

---

[7] As Dr. Epstein notes in his report, the Poulson Analysis "contains assessments of the Code 1 compliance for many of the sample claims in the Petron Report." Epstein Report, ¶ 51. As Dr. Epstein observed, for numerous claims, this USAO's analysis contradicts the findings of alleged falsity by the State's preliminary analysis produced to Rite Aid in this litigation, demonstrating the pervasive effect of measurement error inherent in the State's methodology. *Id.* ¶ 53 ("Regardless of which [analysis] is ultimately correct (a determination I understand would be reserved for later in the litigation), the relevant point here is that the process of classification itself is subject to error that a sampling methodology must take into account."). Thus, Dr. Epstein concludes, "[t]hese samples, where California has switched its assessment of a particular claim from compliant to false in the context of this litigation, are examples of measurement error that illustrate critical deficiencies in California's methodology." *Id.* ¶ 61.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF.'S OPP. TO PLFS.' MTN. TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

(EX), 2013 WL 12114615, at *4 (C.D. Cal. June 7, 2013).  Here, the State argues that the Poulson Analysis is not the type of evidence reasonably relied upon by other experts, yet cannot explain why this evidence *was provided to and "considered" by its own expert.*  Motion at 12; ECF 204-1 at 18.  Courts have recognized the ability of an expert to use similar documents.  *See e.g., Donovan v. Mazzola,* 716 F.2d 1226, 1233 (9th Cir. 1983) (holding that expert testimony was properly based on a chart prepared from sources that an expert would ordinarily rely on).

*Fourth* the State argues that Dr. Epstein's opinions on measurement error either constitute or hinge upon a "wrong legal conclusion."  This is false.  Likely having this Motion in mind while deposing him, the State asked Dr. Epstein several questions designed to "bait" him into "admitting" that he was providing legal opinions.  *See* Epstein Dep. 16:8-17, 90:20-91:25, 102:3-16, 123:17-124:7, 129: 14-21, 145:3-146:14, 148:12-17, 152:3-24, 234:4-5.  Each time, Dr. Epstein explained that he was *not* offering a legal opinion.[8]

Dr. Epstein is instead offering opinions about the validity of Plaintiffs' statistical methodology, which is plainly permitted under the Federal Rules of Evidence and case law interpreting them.  *U.S. ex rel. Ruckh v. Genoa Healthcare, LLC*, No. 8:11-CV-1303-T-23TBM, 2015 WL 1926417, at *4 (M.D. Fla. Apr. 28, 2015) ("no universal ban on expert testimony based on statistical sampling applies in a *qui tam* action").

Plaintiffs cite no case to support their argument because they cannot point to a single case that involves a comparable fact pattern.  Courts will exclude expert testimony on the grounds that it usurps the role of the trial judge in determining relevant law when "the expert's report reads more like a legal brief than an expert opinion... [with] numerous citations to federal court opinions, [agency] case law, and the Code of Federal Regulations."  *CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1234-35 (E.D. Cal. 2005) (internal citations and quotation marks omitted).  The Epstein Report hardly resembles such an improper "legal brief."

Nor do Dr. Epstein's opinions "hinge" on any legal conclusion.  Dr. Epstein proffers no

---

[8] For example, the State asked: "So if the legal standard has to be qualify – clarified first – by whom?"  Dr. Epstein replied, "Well, not by the statistician."  *Id*. at 152:18-23

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S OPP. TO PLFS.' MTN. TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

opinion that a Code 1 "review" is required at any particular time or any opinion as to how the key relevant regulation, Cal. Code Regs., tit. 22, §51476 should be interpreted.  He instead opines that it is necessary to know, at the outset of *any* statistical analysis, what data is to be assessed and how measurements are to be taken.  Here, Plaintiffs simply assume that only one piece of data—the electronic version of a prescription record maintained in Rite Aid's computer system—need be assessed and that, based solely on this record, a reliable measurement can be made as to whether a given claim is or is not Code 1 compliant.  Unlike merely estimating the color of black or white chips in an urn, a measurement procedure few could disagree on, Dr. Epstein shows that approaches to measuring Code 1 compliance differ widely.  Epstein Report, ¶ 73 ("unlike the simple scenario in which one may easily observe and classify chips as 'black' or 'white,' in this scenario each 'chip,' or claim, could be characterized by a unique spectrum of different considerations that the statistician must consider in his survey design.").  The disparity regarding measurement procedures is best exemplified by the disagreement between the State's purported preliminary analysis and the USAO's Poulson Analysis of the Code 1 compliance of a number of sample claims.  *Id.* ¶ 53.  The relevant insight Dr. Epstein provides here is that neither the State nor its expert *even consider* the data to be measured or the means of making the measurements in their analysis.[9]  *Id.*, ¶ 13.

      Dr. Epstein has not offered legal conclusions.  Rather, he has confined his opinions to his expertise, and those opinions are directly relevant to facts that must be resolved in this case.

## V. DR. EPSTEIN DOES NOT PROVIDE LEGAL OPINIONS ON SCIENTER OR MATERIALITY

      Plaintiffs incorrectly argue that Dr. Epstein offers "impermissible legal conclusions" on the issues of scienter and materiality.  Motion at 16.  To the contrary, Dr. Epstein's opinions relate to his expertise on proving and estimating damages using statistical sampling.

---

[9] Further, to the extent other data is determined by the Court to be relevant for assessment—including, for example, paper records of prescriptions, other prescriptions filled at the same time for the same condition, or historical dispensing and prescription records preceding the prescription or refill—the measurement error infecting Plaintiffs' methodology is even more pronounced.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S OPP. TO PLFS.' MTN. TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

Dr. Epstein's opinion is that the State's statistical methodology "does not account for the FCA's materiality and scienter elements," and that any statistically valid assessment of FCA liability as a whole would require an assessment of materiality and scienter, which Plaintiffs **concede** that their sample does not assess. Epstein Report, ¶ 24; Epstein Dep. at 145:3-146:6; ECF No. 202 at 8, n.2. During Dr. Epstein's deposition testimony, the State again prodded Dr. Epstein to opine on scienter and materiality in hopes of achieving its intended result. Each time, Dr. Epstein resisted. For example:

> Q: Is your statistical opinion – from your expert – from your expertise, if we were to ask you, Dr. Epstein, We would like to present scienter not by statistical evidence, we're using other evidence, are we – are we okay with that?
> * * *
> THE WITNESS: I think it depends – it sounds like it depends entirely on what the legal – on what – on, legally, what you have to show to prove scienter.
> Q: I see. So for – with respect to this case, **do you have an opinion, or would you have the same answer?**
> A: At present – those are two questions. At present, I think I have the same opinion. **I don't have an opinion, and it's the same answer:** *The legal standard has to be clarified first.*
> Q: So if the legal standard has to be qualify – clarified first – by whom?
> A: ***Well, not by the statistician***.

Epstein Dep. at 152:3-24 (emphasis added) (objection omitted); *see also id*. at 148:12-17 (Q: "Is it your opinion that only statistical evidence can prove materiality in an FCA matter?" A: "I think that's really more a legal – it sounds more like a legal question than a statistics question.")

Despite Plaintiffs' best efforts to fabricate them for purposes of this Motion, Dr. Epstein offers *no* opinions regarding either: (1) the proper legal interpretation of the FCA's scienter and materiality elements, or (2) any other improper legal conclusion. Dr. Epstein's statistical opinions regarding the information and data a *statistician* needs at the outset of sample design are proper, reliable, and helpful to the Court.

## VI. CONCLUSION

Plaintiffs' Motion to Exclude Portions of Expert Report and Testimony of Roy J. Epstein, Ph. D. should be denied.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEF.'S OPP. TO PLFS.' MTN. TO EXCLUDE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB

| | |
|---|---|
| Dated: June 14, 2019 | MORGAN, LEWIS & BOCKIUS LLP |
| | By */s/ Benjamin P. Smith* |
| | Benjamin P. Smith |
| | Attorneys for Defendant |
| | RITE AID CORPORATION |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEF.'S OPP. TO PLFS.' MTN. TO
EXCLUDE PORTIONS OF EXPERT REPORT
AND TESTIMONY OF DEF.'S EXPERT
Case No. 2:12-cv-01699-KJM-EFB