1   XAVIER BECERRA
    Attorney General of California
2   VINCENT DICARLO
    Supervising Deputy Attorney General
3   BERNICE L. LOUIE YEW, State Bar No. 114601
    Deputy Attorney General
4   E-mail:  Bernice.Yew@doj.ca.gov
    EMMANUEL R. SALAZAR, State Bar No. 240794
5   Deputy Attorney General
    E-mail:  Emmanuel.Salazar@doj.ca.gov
6    2329 Gateway Oaks Drive, Suite 200
     Sacramento, CA 95833-4252
7    Telephone:  (916) 621-1835
     Fax:  (916) 274-2929
8
    *Attorneys for State of California*

9

10   IN THE UNITED STATES DISTRICT COURT

11   FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

| UNITED STATES OF AMERICA, et al., *ex rel.* LOYD F. SCHMUCKLEY, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>RITE AID CORPORATION,<br><br>Defendant. | 2:12-CV-1699 KJM EFB<br><br>**PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT RITE AID CORPORATION'S MOTION TO EXCLUDE AND STRIKE UNTIMELY EVIDENCE AND EXPERT OPINION SUBMITTED WITH PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' PROPOSED SAMPLING METHODOLOGY** |
|---|---|
| STATE OF CALIFORNIA *ex rel.* LOYD F. SCHMUCKLEY, JR.,<br><br>Plaintiff,<br><br>v.<br><br>RITE AID CORPORATION,<br><br>Defendant. | Hearing Date:  June 28, 2018<br>Hearing Time:  10:00 a.m.<br>Courtroom: 3<br><br>ECF Nos. 195, 204, 205, 208 |

26

27

28

i

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES…………………………………………………………………..iii

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..............................................................1

    I.    California Fully Disclosed All Known Information and  Known Documents in Its Possession, Custody, and Control relating to the Sampling Methodology and Design as of the Time of the Disclosures.....................................................................1

    II.    California in Good Faith Attempted to Facilitate Rite Aid's Discovery relating to Its Defenses to the Sampling Methodology and Design ............................................3

    III.    Rite Aid Delayed or Did Not Conduct Further Discovery relating to the Sampling Methodology and Design ........................................................................................5

    IV.    California Supplies the Declarations to Correct the Record Made in Rite Aid's Motion to Exclude the Sampling Methodology .........................................................8

FEDERAL RULES OF CIVIL PROCEDURE .......................................................................9

ARGUMENT ........................................................................................................................10

    I.    California Does Not Proffer Any of the Declarants as Statistical Experts or Statistical Consultants ............................................................................................10

    II.    The Lien Declaration was Filed in Response to Rite Aid's Counsel Michael Eagan's Declaration (ECF No. 196) .......................................................................10

    III.    The Information Contained in the Meixner, Gonzales and Yew Declarations Are Not "New".............................................................................................................10

        A.    The Meixner Declaration Explained the Contents of California's Disclosures .................................................................................................10

        B.    The Information Contained in the Gonzales Declaration relating to the Symmetry Was Known to Rite Aid as Early as July 2018 ........................11

        C.    The Information Contained in the Gonzales and Yew Declarations relating to the Selection of NDCs Was Not and Should Not Be a Surprise to Rite Aid...........................................................................................................12

    IV.    California Fully Disclosed Everything Relating to the Selection of NDCs It Knew and Had at the Time of the Disclosures and Produced the Declarations in Response to Rite Aid's Motion to Exclude the Sampling Methodology ...............................13

    V.    The Information Contained in the Gonzales and Yew Declarations Are Not Material to the Validity of the Sampling Methodology and the Question Whether the Parties Should Resample ....................................................................................14

    VI.    The Purpose of Phasing Discovery Was To Allow the Parties To Get the Statistical Sampling Methodology Right Before Moving On To the Merits of the Case........15

CONCLUSION .....................................................................................................................16

ii

# TABLE OF AUTHORITIES

**CASES**

*Auto Indus. Pension Trust Fund v. Tractor Equip. Sales, Inc.*,
73 F. Supp. 3d 1173 (N.D. Cal. 2014)……………………………………….…..11

*Dhaliwal v. Singh*,
2014 U.S. Dist. LEXIS 89670, 2014 WL 2957310 (E.D. Cal. 2014)..................................... 13

*Estate of Gonzales v. Hickman*,
2007 U.S. Dist. LEXIS 84390, 2007 WL 327635 (C.D. Cal. 2007)................................. 8, 13

*Hoffman v. Cty. of Los Angeles*,
2017 U.S. Dist. LEXIS 215055 (C.D. Cal. 2017)................................................. 11

*Lanard Toys Ltd. v. Novelty, Inc.*,
375 F. Appx. 705 (9th Cir. 2010).............................................. 9

*Losee v. City of Chico*,
2016 U.S. Dist. LEXIS 61277 (E.D. Cal. 2016)…………………………………....16

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014)................................................. 10

**FEDERAL RULES**

Fed. R. Evid. 26(a)(1)(A) ................................................. 9, 10

Fed. R. Evid. 26(e)(1)(A) ................................................. 9, 10

Fed. R. Evid. 37(c)(1) ................................................. 9, 10

**INTRODUCTION**

Defendant Rite Aid Corporation ("Rite Aid") moves this Court for an order striking and excluding the declarations of Grant Lien ("Lien") (ECF No. 204-14), Marilyn Meixner ("Meixner") (ECF No. 204-5), Marco Gonzales ("Gonzales") (ECF No. 204-15), and Bernice L. Louie Yew ("Yew") (ECF No. 204-17) in support of the joint Opposition to Rite Aid Corporation's Motion to Exclude Sampling Methodology (ECF No. 202), filed by Plaintiff-Intervenor State of California ("California") and Relator Loyd F. Schmuckley Jr. ("Relator", and together with California, "Plaintiffs"), as "untimely-produced evidence and undisclosed expert opinion." ECF No. 208 at 2. California opposes the motion on the grounds that (I) California does not proffer any of the declarants as statistical experts or statistical consultants, (II) the substance contained in the Declarations are nothing new, (III) the information contained in the Declarations are not material to the issue of sampling methodology, (IV) California fully disclosed everything relating to the sampling methodology it knew and had at the time of the disclosures, (V) the information contained in the Gonzales and Yew Declarations are not material to the validity of the sampling methodology, and (VI) the purpose of phasing discovery was to see whether the current statistical methodology is viable before moving on to the merits of the case. Based on the foregoing and as explained more fully below, this Court should deny Rite Aid's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because Rite Aid omits or mischaracterizes pertinent events during the discovery process in this matter, California provides the factual and procedural background below.

**I.    CALIFORNIA FULLY DISCLOSED ALL KNOWN INFORMATION AND  KNOWN DOCUMENTS IN ITS POSSESSION, CUSTODY, AND CONTROL RELATING TO THE SAMPLING METHODOLOGY AND DESIGN AS OF THE TIME OF THE DISCLOSURES.**

On May, 29, 2018, the Court issued a Status (Pretrial Scheduling) Order, ECF No. 128, adopting the parties' request to conduct discovery in phases. Id. at pp. 3-4. The first phase of discovery was to address statistical sampling, and the second phase of discovery would address

1

1    all other discovery. Id. at pp. 4-5.  In connection with the first phase of discovery (statistical

2    sampling), the Court stated:

3        At the earliest feasible point during this stage of discovery, plaintiffs will make
         disclosures concerning their statistics experts and the design of the statistical
4        sample so that Rite Aid can conduct discovery concerning the same.  Rite Aid
         will file any motions directed toward the viability of statistical sample during this
5        stage of discovery so that preparation of the case for trial will not be significantly
         delayed if it becomes necessary to redraw the statistical sample.
6

7        On July 27, 2018, California served the Petron Report and materials, which explained the

8    relevant features of the sampling methodology completed by the Government.[1]  Pertinent here, Mr.

9    Petron reported the following excerpted facts in support of his opinion that the sampling methodology

10   is statistically valid:

11       • I was provided with the U.S. DOJ sample frames and original populations. There were
           three categories of sample frames named: 1) Off Formulary, 2) Diagnosis Related, and
12         3) Symmetry. These sample frames were created through a variety of different
           procedures. The Off Formulary and the Diagnosis Related populations where created
13         by matching California Rite Aid Medi-Cal claims data with a particular list of National
           Drug Codes ("NDC"). All drugs which are on the NDC list are classified as Code 1
14         diagnosis restricted drugs. A subset of the NDC list was identified as drugs that are
           commonly prescribed and dispensed outside the approved Code 1 diagnosis restriction.
15         Exhibit 3.1. The Rite Aid Medi-Cal claims that matched with this subset of NDCs was
           created and referred to as the  Off Formulary sample frame. All other Rite Aid Medi-
16         Cal claims that matched NDCs on the original list, Exhibit 3.2, and not on the Off
           Formulary list, Exhibit 3.1, were used to create the Diagnosis Related sample frame.
17         Claims in the Off Formulary and Diagnosis Related sample frames were restricted to
           January 1, 2007 to December 31, 2014.  Lastly, only paid claims were allowed into the
18         sample frame.

19       • The third sample frame was named Symmetry. It is my understanding that the California
           Department of Health Care Services uses a third party rules based software program,
20         named Symmetry, that identifies Medi-Cal claims where a drug has been prescribed to a
           particular beneficiary whose claim history does not support the use of the prescribed drug.
21         The output from this software program for the time period 2010 through 2013 was used to
           create the Symmetry sample frame.
22

23

24   ECF No. 204-1 at 6-7.

25

26   _____

     [1] California also produced on June 19, 2018, the anonymized claims data, the RAT-
27   STATS number generator, and the random seeds.  ECF No. 159 at ¶ 5.  On September 11, 2018,
     California produced the raw non-anonymized claims data upon court approval of the amendments
28   to the existing HIPAA Qualified Protective Order.  Id. at ¶ 5, 8.

                                                         2

Also on July 27, 2018, California supplied *all* information known to California at the time to Rite Aid's Interrogatory Nos. 1 and 2 (which sought step-by-step details of the selection of the "sample universes" and "sample sets" and names of persons involved) and *all* known documents in California's possession, custody, or control responsive to Request for Production of Documents Nos. 1 and 2 (which sought documents related to the selection of the sample sets and Symmetry sample).[2] ECF No. 204-4, at 15-17; ECF No. 204-5 at ¶ 4.  California also identified Gonzales of DHCS and David Poulson of the USAO, among others, and their particular involvements in the sampling process. ECF No. 204-4, at 15-17.  In full disclosure, California informed Rite Aid it did not know at the time the "full extent of the process in finalizing the lists of NDCs." *Id.*

## II.   CALIFORNIA IN GOOD FAITH ATTEMPTED TO FACILITATE RITE AID'S DISCOVERY RELATING TO ITS DEFENSES TO THE SAMPLING METHODOLOGY AND DESIGN.

On August 23, 2018, California and Rite Aid's counsel Tera Heintz, Michael Eagan, and Elaine Fenna had a meet-and-confer call to discuss the ongoing discovery between the parties, where California observed that Rite Aid seemed to not understand the materials produced on July 27, 2018. Declaration of Emmanuel R. Salazar, filed concurrently herewith, ("Salazar Decl.") ¶ 3.  California therefore offered to facilitate informal interviews or draft declarations to address Rite Aid's questions or concerns. *Ibid.*  In response, Rite Aid, stated it would like to depose witnesses. *Ibid.*

On August 24, 2018, in connection with Interrogatory Nos. 1 and 2, California wrote, in part, "What we stated in our response was all we know and all that was relayed to California's sampling expert Michael Petron."  Moreover, California explained,

> [W]e believe that the selection of drugs that would comprise the universe is not relevant to the determination of whether the sampling methodology in this matter is statistically valid. *Does your expert contend that it is?  And if so, how?* Related, as stated in our complaint, more than 10 million pharmacy claims are submitted each year to Medi-Cal.  The government is reasonably entitled to and practically must factor different criteria to determine and narrow the affected universe of claims that were prone or susceptible to a provider's alleged fraud and that could be subjected to sample testing. [¶]  Notwithstanding, California is willing to stipulate to allow Rite

_____

[2] Among documents produced are the original list of more than 15,000 Code 1 drugs (which included all the Code 1 drugs that had hard, soft, and hybrid (treated as soft) edits, as well as the two final NDC lists used to filter the originally extracted claims data of Rite Aid paid claims for dispensing Code 1 drugs and create the Off-Formulary and Diagnosis-Related sample frames.  ECF No. 204-5 at 2:17-18, 5:11-12 and ¶ 6.

3

Aid to depose at any time the persons involved with the drug selection process in connection with the claim universe.

Salazar Decl., Exh. A, Aug. 24, 2018 Letter from California to Rite Aid.

On August 27, 2018, California emailed Rite Aid's counsel to facilitate a meet-and-confer conference with DHCS so that Rite Aid could conduct third-party discovery on DHCS, where California specifically advised, "Notably, as we have explained, we do not represent DHCS and DHCS is not a party in this matter.  Nor is DHCS privy to matter-related information.  Hence, DHCS may not understand the terms that Rite Aid used in its document requests served on [Bureau of Medi-Cal Fraud and Elder Abuse ('BMFEA')]."  Salazar Decl., Exh. B, Aug. 27, 2018 Email from California to Rite Aid.  On August 30, 2018, California and Rite Aid's counsel had another call regarding the ongoing discovery between the parties, where both parties mutually agreed to hold off on discovery of other data materials relating to the claims universe.  Salazar Decl., ¶ 6 and Exh. C, August 31, 2018 Letter from California to Rite Aid.

As early as September 7, 2018, California emailed Rite Aid inviting it to participate in a call with DHCS-Office of Legal Services to discuss third-party DHCS discovery in this matter.  Salazar Decl., Exh. D, Sep. 2018 Email Thread among Counsel.  While Rite Aid and California had agreed to hold off on any discovery between the parties relating to "claims universe," Rite Aid wanted to add among topics to discuss with DHCS discovery regarding it.  *Id.*, Sep. 14, 2018 email.  On September 19, 2018, in response to Rite Aid's subpoena on DHCS, California emailed,

As discussed last Monday, with the goal of reasonably tailoring the broad document requests, BMFEA is open and DHCS has said it will cooperate to depositions of non-party DHCS PMKs with respect to particular subject matters, e.g., pharmacy audits, TAR approval processes, etc. What dates are we targeting? Anticipating upcoming holidays, we'd like to clear participants' schedules well in advance.

BMFEA also opines that conducting these PMK depositions first (before serving document subpoenas) would be a cost-effective, targeted, and expedient means to facilitate additional and necessary discovery.

Salazar Decl., Exh. E, Sep. 19, 2018 email from California to Rite Aid's Counsel.

Given California's observations that Rite Aid seemed *not* to understand the materials produced in connection with the sampling methodology and DHCS not being privy to the ongoing

4

litigation, on October 9, 2018, California emailed Rite Aid's counsel requesting that Rite Aid include California and Relator in any communications with DHCS or its retained counsel, or any third-party relating to the scope of third-party discovery.  Salazar Decl., Exh. F, Oct. 9, 2018 Email from California to Rite Aid's Counsel.  Despite Plaintiffs' requests, Rite Aid excluded Plaintiffs from its communications with DHCS and the USAO.  Salazar Decl., ¶ 10.

On November 8, 2019, Rite Aid moved to extend by two months the discovery deadlines specifically to conduct written and deposition discovery to DHCS and the USAO, which the Court granted on December 12, 2019.  ECF Nos. 148 at 10, 176.

### III. RITE AID DELAYED OR DID NOT CONDUCT FURTHER DISCOVERY RELATING TO THE SAMPLING METHODOLOGY AND DESIGN.

On November 30, 2018, Rite Aid extensively deposed California's statistical expert Michael Petron.  Relevant here, Mr. Petron testified regarding how certain NDCs were used to identify the relevant claims comprising the Off-Formulary and Diagnosis-Related sample frames from which samples would be randomly selected for testing of the Code 1 allegations (Salazar Decl., Exh. G, Petron Dep. 19:23-31:6, 67:2-7, 72:9-73:11, 76:2-77:2, 77:19-82:8, 82:19-83:8); hard edits versus soft edits (*id.* 73:12-74:22, 76:2-9); removal of certain drug classes from the NDC lists (*id.* 74:25-75:15); the Symmetry software, the Symmetry claims output, Symmetry replication issues, Symmetry sample's sampling validity, and the immateriality of the prevalence of certain drugs or towns in the Symmetry output (*id.* 31:13-35:18, 221:14-222:10, 242:9-13, 243:19-244:17, 245:4-247:20, 250:23-252:8, 252:19-254:3, 254:17-255:16); and his understanding of the involvement of Marco Gonzales (*id.* 221:2-13, 240:20-241:16, 242:9-21).

Despite knowing as early as 2015, ECF No. 43-1 at ¶ 5, and as of July 27, 2018 through California's responses to Interrogatory Nos. 1 and 2, about the USAO's involvement in the statistical sampling in this matter, Rite Aid did not issue a Touhy request to the USAO until January 8, 2019.  Salazar Decl., Exh. H, Jan. 8, 2019 Letter from Rite Aid's Counsel to the USAO.

On February 15, 2019, Rite Aid served the Report No. 1 of Dr. Roy J. Epstein, PhD ("Epstein Report").  ECF No. 201.  The Epstein Report showed that Dr. Epstein understood what Mr. Petron

5

1  stated in his deposition regarding these topics.  ECF No. 201 at ¶, 81.  Regarding Symmetry, Dr.

2  Epstein only concluded,

3          Regardless of the number of false claims that may be projected for the Symmetry
           universe, the skew in the data towards a small number of drugs in predominantly
4          small towns raises significant questions of whether the sample accurately
           represents any relevant general pattern of conduct by Rite Aid on a state-wide
5          basis. It also raises questions of whether there are location-specific or drug-
           specific factors that should be taken into account in the sample design analysis.
6

7

8  *Id.* at ¶ 80.  As to the Off-Formulary and Diagnosis-Related sample frames, Dr. Epstein only

9  concluded, "These considerations again raise the question whether the underlying universes

10  contain claims that are representative of Rite Aid's overall business and volume for dispensing."

11  *Id.* at ¶ 83.  Notably, while Dr. Epstein noted that "[a]dditional discovery would be needed to

12  understand whether such specific factors are present and reflect unique, and perhaps isolated,

13  issues rather than any overall pattern of non-compliance by Rite Aid stores state-wide," *Id.* at ¶

14  80, Rite Aid did not conduct any further discovery relating to these matters nor disclosed data

15  relating to Rite Aid's overall business, volume of drugs dispensed, or overall Medi-Cal business

16  to support his observations.[3]  Salazar Decl., ¶ 13.

17          On April 10, 2019, Plaintiffs deposed Dr. Epstein, where he, relevant here, testified about

18  the following facts or opinions:

19          Q.  Okay. If I read your report correctly, it is your opinion that
        California's sampling methodology and design in this matter is invalid because
20      the symmetry sample is not representative of the symmetry sample frame with
        respect to the drug selected?
21          A.  The same point: I -- I don't think my report is stated in that way.

22  Salazar Decl., Exh. I, Epstein Dep. 28:4-11.

23          Q:      Okay. Moving on.  If – if I read your report correctly, it is your
        opinion that California's sampling methodology and design in this matter is
24      invalid because the Symmetry sample is not representative of the Symmetry
        sample frame with respect to the Rite Aid store location selected?
25          MR. SMITH:  Asked and answered.
26

27          [3] As stated in ECF No. 205 at 15-16, California believes these conjectural "red flags"
    based on unsupported comparisons *beyond* the sample frames are immaterial to the issue of
    sampling validity because the Government's sampling objective is the estimation of the number
28  of false claims *in* the sample frames.

6

1    THE WITNESS:  I would like to look at the exact language I used on that
2    point, actually, if that's okay.
          MR. SALAZAR:
3          Q:      Sure.
          (Whereupon, the witness reviews the material provided.)
4          THE WITNESS: So I -- I don't say that the Symmetry sample is invalid.  I
say it has some peculiar patterns that raise concerns in my mind, or I could call
5    them "red flags." [¶]  But at this point, it's – it's hard to say more, because Mr.
Petron wasn't able to explain in much detail how the Symmetry sample was
6    arrived at.  So whether these red flags end up being real signs of invalidity or
whether there's some more benign explanation for them, at this point, I don't
7    know.  But these are observations of – that the Symmetry sample is – does raise
red flags.
8          BY MR. SALAZAR:
9          Q:  Is that – will you provide the same answer with respect to the
Symmetry sample's representativeness from the sample frame with respect to the
10   drug selected?
          A:  Yeah, between the drug select – in regarding the Symmetry sample
11   between the drug – the particular drugs included, which are few – just a few types
of drugs, really, and the striking geographic distribution of those claims, I would
12   like to – I – if I were the finder of fact, I would like to know more about that
before proceeding further.
13

14   Salazar Decl., Exh. I, Epstein Dep. 105:22-107:14.

15        Q:  --I'm just asking whether – what is it – what else do you need to make
16   an expert opinion as to the representativeness of the Symmetry sample from the
sample frame?
17        A:  Oh, I think the Symmetry sample is revealing what we know about the
Symmetry frame anyways, that it's a small number of drugs drawn frequently
18   from – very disproportionately from towns that are small.
          Q:  Okay.  So let me just point – point-blank ask you.  Is a Symmetry
19   sample representative of the Symmetry sample frame?
          A:  Yes.
20

21   Salazar Decl., Exh. I, Epstein Dep. 108:9-22.
          Q:  Okay.  If I read your report correctly, is it your – is it your opinion that
22   California's sampling methodology and design in this matter is invalid because
the diagnosis related in [Off]-Formulary samples are not representative of the
23   populations of California cities and towns?
          MR. SMITH:  Vague.
24        THE WITNESS:  I said, again, that dis – the geographic distribution of
25   these claims is, frankly, a little perplexing.
          BY MR. SALAZAR:
26        Q:  So similar to what you said before, it just raises red flags to you?
          A:  The geographic distribution does, yes.
27        Q.  As to the geographic distribution.  So – but let me as you point-blank
then.  So with respect to the – so let me backtrack.  So you understand the
28

7

diagnosis-related samples were stratified to A, B, and C?  Is that your
understanding?
    A:  Yes.
    Q:  And then [Off]-formulary samples were stratified into D, E, and F?
    A:  Yes.
    Q:  Okay.  So with respect to the sample frame A, are you contending that
the sample taken for – from that Symmetry – I mean – I'm sorry – from that
sample frame A is not representative?
    A:  The samples are representative of the corresponding frames.
    Q.  And this is applicable to A, B, C, D, E, F, -- this opinion you just
mentioned?
    A.  Yes, yes.

Salazar Decl., Exh. I, Epstein Dep. 108:23-110:10.

**IV.   CALIFORNIA SUPPLIES THE DECLARATIONS TO CORRECT THE RECORD MADE IN
RITE AID'S MOTION TO EXCLUDE THE SAMPLING METHODOLOGY.**

Despite Dr. Epstein's admissions that the sampling methodology is *not* invalid due to selection

of drugs to be studied, and that the samples in this matter are in fact representative of the sample

frames to which Plaintiffs intend to extrapolate, *id.*; Salazar Decl., Exh. G 236:6-24, 238:15-239:1,

on April 15, 2019, Rite Aid moved to exclude the sampling methodology the Government employed

during the pre-intervention investigation (as opposed to "proposed" in this litigation) because Rite Aid

purportedly did not obtain additional information regarding "why or how certain NDCs were

excluded" in creating the Off-Formulary and Diagnosis-Related universes and because Rite Aid could

not replicate the original Symmetry data pull in creating the Symmetry universe.  ECF No. 195 at 6-7.

In the motion, Rite Aid reserved the right to supplement the record before the Court if and when new

discovery is obtained from Plaintiffs, the DHCS and/or the USAO.  *See* ECF No. 195 at fn. 7.  In this

regard, on April 30, 2019, Rite Aid emailed Plaintiffs with a deposition subpoena purportedly for

David Poulson of the USAO.  Salazar Decl., ¶ 16.

On May 15, 2019, California filed its Opposition to ECF No. 195, providing (1) the Lien

Declaration in response to Rite Aid's counsel's declaration regarding third-party DHCS discovery, (2)

the Meixner Declaration to explain to the Court the extensive contents of the July 27, 2018

production, and (3) the Gonzales and Yew Declarations in response to Rite Aid's argument relating to

a claimed lack of purportedly needed information.  ECF No. 205, fn. 8.  The contents of the Gonzales

and Yew Declarations were gathered and prepared in response to the April 15, 2019 Motion (ECF No.

8

1   195) and the April 30, 2019 Poulson Subpoena. The four Declarations were approved on May 15,

2   2019, and accordingly served and filed concurrently with ECF No. 195.[4]

3   ## FEDERAL RULES OF CIVIL PROCEDURE

4            Rule 26(a) requires a party to provide the name and, if known, the address and telephone

5   number of each individual likely to have discoverable information—along with the subjects of

6   that information—that the disclosing party may use to support its claims or defenses, unless the

7   use would be solely for impeachment;" and a copy—or a description by category and location—

8   of all documents and tangible things that the disclosing party has in its possession, custody, or

9   control and may use to support its claims or defenses, unless the use would be solely for

10  impeachment.  Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  Moreover, "A party who has made a disclosure

11  under Rule 26(a)—or who has responded to an interrogatory, request for production, or request

12  for admission—must supplement or correct its disclosure or response: (A) in a timely manner if

13  the party learns that in some material respect the disclosure or response is incomplete or incorrect,

14  and if the additional or corrective information has not otherwise been made known to the other

15  parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).

16           "If a party fails to provide information or identify a witness as required by Rule 26(a) or

17  (e), the party is not allowed to use that information or witness to supply evidence on a motion, at

18  a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ.

19  P. 37(c)(1).  "Among the factors that may properly guide a district court in determining whether a

20  violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party

21  against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the

22  likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely

23  disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. Appx. 705, 713 (9th Cir.

24  2010).  "A district court has wide discretion in controlling discovery. . . . [T]hat discretion is

25  _____

26  [4] Given that (a) Plaintiffs were excluded from the meet-and-confer efforts between Rite Aid and the USAO and between Rite Aid and DHCS, (b) Dr. Epstein opined that the sample frames were representative (and not invalid due to selection of drugs or failure to replicate Symmetry), and (c) Rite Aid did not *notice* any deposition subpoena until May 31, 2019, to California, Rite Aid seemed to have abandoned its purported concern about the selection of drugs or inability to replicate the Symmetry data pull.

9

1    particularly wide when it comes to excluding witnesses under Rule 37(c)(1)." *Ollier v.*

2    *Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) (Citations omitted.).

3                                  **ARGUMENT**

4    **I.    CALIFORNIA DOES NOT PROFFER ANY OF THE DECLARANTS AS STATISTICAL
           EXPERTS OR STATISTICAL CONSULTANTS.**

5

6          While the Court ordered Plaintiffs to make disclosures concerning their statistics experts,

7    ECF No. 128 at 5, Mr. Lien, Ms. Meixner, Mr. Gonzales, and Ms. Yew were not consulted and

8    are not proffered as *statistics* experts in this matter.  They may be "experts" in other fields, like,

9    e.g., Mr. Gonzales may be an expert in "health informatics" and Medi-Cal pharmacy claims data,

10   policies, and related computer program implementation, but not in statistics.

11         Contrary to Rite Aid's motion, therefore, California did not fail to disclose and did not

12   belatedly disclose any *statistical* expert opinion in these declarations.  Rite Aid's motion therefore

13   should be denied.

14   **II.   THE LIEN DECLARATION WAS FILED IN RESPONSE TO RITE AID'S COUNSEL
           MICHAEL EAGAN'S DECLARATION (ECF NO. 196)**

15         Grant Lien is the attorney representing the Department of Health Care Services in

16   connection with Rite Aid's third-party discovery.  As Mr. Lien states in his declaration, he was

17   correcting for the record Rite Aid's statement in its motion (ECF No. 195) that "DHCS

18   contradicts the State's explanation about how the sample universes were created," ECF No. 204-

19   14 at ¶ 2, and that he "did not comment about Mr. Gonzales' whereabouts, contrary to Rite Aid's

20   counsel's assertion."  *Id.* at fn. 1.  The contents of Mr. Lien's Declaration are outside the scope of

21   mandatory disclosures under Rule 26(a) or mandatory supplemental responses under Rule 26(e).

22   California is justifiably permitted to address opposing counsel's (mis)statement of facts.  The

23   Lien Declaration is therefore not excludable under Rule 37.

24   **III.  THE INFORMATION CONTAINED IN THE MEIXNER, GONZALES AND YEW
           DECLARATIONS ARE NOT "NEW".**

25

26         **A.    The Meixner Declaration Explained the Contents of California's
                  Disclosures.**

27         Ms. Meixner is a BMFEA Investigative Auditor Supervisor.  She verified California's

28   July 27, 2018 Responses to Rite Aid's Special Interrogatories regarding the sampling

                                       10

1   methodology.  ECF No. 204-4 at 31.  Rite Aid did not at all notice her deposition or any

2   California 30(b)(6) witness relating to the sampling methodology.  Salazar Decl., ¶ 15.

3          Upon reading the Meixner Declaration, we learn that it was prepared to basically correct

4   the record made by Rite Aid in ECF No. 195 about the purported lack of information and

5   documents California has thus far supplied in connection with the  sampling methodology.  There

6   is nothing new or belated in the Meixner Declaration.  The Court, therefore, should deny Rite

7   Aid's motion in connection with the Meixner Declaration.  *See Hoffman v. Cty. of Los Angeles*,

8   2017 U.S. Dist. LEXIS 215055 at *6 (C.D. Cal. 2017) (denying motion to exclude because

9   defendants should not have been surprised and did not seek to depose the witness over the past

10  eight months).  *See also Auto Indus. Pension Trust Fund v. Tractor Equip. Sales, Inc.*, 73 F. Supp.

11  3d 1173, 1183 (N.D. Cal. 2014) (holding failure to disclose harmless when the other party "easily

12  could have" inquired more into certain statements).

13          **B.    The Information Contained in the Gonzales Declaration relating to the
                    Symmetry Was Known to Rite Aid as Early as July 2018**

14
15          The Gonzales Declaration contains information regarding the data pull requested by

16  BMFEA involving the Symmetry software.  Rite Aid claims that the information relating to

17  Symmetry was belatedly disclosed and prejudiced its ability to conduct discovery.  Not so.

18          Rite Aid has known since at least July 27, 2018 that "[DHCS] uses a third party rules

19  based software program, named Symmetry, that identifies Medi-Cal claims where a drug has been

20  prescribed to a particular beneficiary whose claim history does not support the use of the

21  prescribed drug" and that "the output from this software program [was] for the time period 2010

22  through 2013."  ECF No. 204-1 at 7.  As of November 30, 2018, Rite Aid also learned that

23  replicating the same Symmetry data pull today for the claims existing from 2010 to 2013 would

24  be "laborious" and "expensive."  Salazar Decl., Exh. G, Petron Dep. 246:3-19.

25          Moreover, California disclosed Marco Gonzales and his role as the DHCS contractor who

26  provided the Symmetry claims data to BMFEA in response to California's request.  ECF No. 204-

27  4, at 15-17; ECF No. 204-5 at ¶ 4.  For unjustifiable reasons, Rite Aid in its motion admits it did

28

11

1  not notice his deposition, ECF No. 208 at 10, which was purportedly its original plan shared with

2  Plaintiffs and the Court.  *See* ECF No. 148 at 10.

3      The Court should therefore deny Rite Aid's motion relating to the facts stated in the

4  Gonzales Declaration regarding Symmetry.  *Estate of Gonzales v. Hickman*, 2007 U.S. Dist.

5  LEXIS 84390, 2007 WL 327635, * 6 (C.D. Cal. 2007) (finding that "belated disclosure of reports

6  was harmless" because "their substance was available" at a much earlier date).

7      **C.    The Information Contained in the Gonzales and Yew Declarations relating
          to the Selection of NDCs Was Not and Should Not Be a Surprise to Rite
8          Aid.**

9      On July 27, 2018, California produced, among other things, (a) the list of 15,324 NDCs

10  that had Code 1 restrictions dated June 2014, (b) the list of drug classes that DHCS considered

11  may be subject to abuse, be prescribed off its approved FDA use, or be prescribed inconsistent

12  with the Code 1 restrictions, and (c) the final "Off Formulary" NDC List and the "Diagnosis-

13  Related" NDC List that were used to capture the claims that would comprise the "Off Formulary"

14  and "Diagnosis-Related" sample frames.  ECF No. 204-5, at 7:3-7, 10:1-11.

15      California also disclosed the role of Mr. Gonzales in the creation and finalization of the

16  NDC lists.  California specifically identified Mr. Gonzales as a person who had information

17  relating to the "sample universe."  ECF No. 204-4, at 15-17.  Specifically, California stated,

18  "Gonzales, Duc Nguyen, an employee of Xerox, and David Poulson ("Poulson") of the U.S.

19  Attorney's Office for the Eastern District of California, finalized two lists of national drug codes

20  ("NDC") that were Code 1 diagnosis-restricted drugs that would be used for the pre-intervention

21  investigation in this matter. . . . The final NDC lists are Exhibits 3.1 ("Off Formulary NDC List")

22  and 3.2 ("Diagnosis Related NDC List") to the Expert Report No. 1 and are in the CD

23  accompanying Expert Report No. 1."  ECF No. 204-4, at 16.  California also, in full candor,

24  disclosed as of July 27, 2018, "We do not know the full extent of the process in finalizing the lists

25  of NDCs. We understand that some Code 1 diagnosis-restricted drugs, such as drugs relating to

26  pregnant women, were not included in the final NDC lists."  *Ibid.*

27      During his deposition, Mr. Petron explained the process of the selection of NDCs.  He was

28  extensively questioned on how certain NDCs were used to identify the relevant claims comprising the

12

1    Off-Formulary and Diagnosis-Related sample frames from which samples would be randomly

2    selected for testing of the Code 1 allegations.  Salazar Decl., Exh. G, Petron Dep. 19:23-31:6, 67:2-7,

3    72:9-73:11, 76:2-77:2, 77:19-82:8, 82:19-83:8.  He was asked about hard edits versus soft edits.  *Id.*

4    73:12-74:22, 76:2-9.  He was also questioned about removal of certain drug classes from the NDC

5    lists.  *Id.* 74:25-75:15.

6            Based on the foregoing, the Court should deny Rite Aid's motion with respect to the facts

7    in the Gonzales and Yew Declarations relating to the selection of the NDCs.  *Estate of Gonzales*

8    *v. Hickman*, 2007 U.S. Dist. LEXIS 84390, 2007 WL 327635, *6 (finding that belated disclosure

9    of report was harmless because the substance was available at a much earlier date);  *Auto Indus.*

10   *Pension Trust Fund*, 73 F. Supp. 3d at 1183 (holding failure to disclose harmless when the other

11   party "easily could have" inquired more into certain statements); *Dhaliwal v. Singh*, 2014 U.S.

12   Dist. LEXIS 89670, 2014 WL 2957310, *7 (E.D. Cal. 2014) (holding that a "technical violation

13   of Rule 26" was harmless when moving party was not diligent in seeking to take the deposition of

14   a witness).

15   **IV.   CALIFORNIA FULLY DISCLOSED EVERYTHING RELATING TO THE SELECTION OF
           NDCS IT KNEW AND HAD AT THE TIME OF THE DISCLOSURES AND PRODUCED THE
16         DECLARATIONS IN RESPONSE TO RITE AID'S MOTION TO EXCLUDE THE SAMPLING
           METHODOLOGY.**

17
             California fully disclosed and verified all known information and known documents in its
18
     possession, custody or control to show that the sampling methodology is valid.  California also
19
     informed Rite Aid where further information might be obtained if Rite Aid believed it was
20
     missing information relevant to its defense, i.e., DHCS and the USAO.  ECF No. 204-4, at 17.
21
     Because Rite Aid's counsel seemed to not understand the sampling methodology, California
22
     offered to allow Rite Aid to informal interviews and offered to draft declarations relating to the
23
     sampling methodology.  Salazar Decl., ¶ 3.  California also facilitated third-party discovery by
24
     introducing Rite Aid's counsel and DHCS attorneys as well as meeting and conferring on the
25
     scope of Rite Aid's document requests.  Salazar Decl., Exhs. D & E.  California also met with
26
     DHCS to allow Rite Aid to depose its subject matter experts for depositions, per Rite Aid's
27
     request.  Salazar Decl., Exhs. D & E.
28

                                                    13

1    Moreover, to facilitate the third-party process and avoid any potential misunderstandings

2   between Rite Aid and DHCS or the USAO, California asked to be included in Rite Aid's meet-

3   and-confer efforts with either entity.  Salazar Decl., Exh. F.  Rite Aid, however, did not include

4   California in any such communications.  Salazar Decl., ¶ 10.

5    All the while, California thought that Rite Aid had all that it thought it needed because (a)

6   California believed the necessary information was all provided to Rite Aid, (b) Mr. Petron opined

7   that the selection of NDCs was not material to the validity of the sampling methodology, (c) Dr.

8   Epstein, while observing "red flags," concluded that the selection of NDCs were also not material

9   to the validity of the sampling methodology, (d) Rite Aid did not notice any further deposition as

10   it had originally said it intended to do, and (e) Rite Aid did not include Plaintiffs in its

11   communications with DHCS and the USAO regarding its third-party discovery.

12    Not until Rite Aid filed its April 15, 2019 motion did Plaintiffs learn that the selection of

13   the NDCs was an ongoing concern to Rite Aid.  Also, on April 30, 2019, for the first time, Rite

14   Aid issued (but did not notice) a subpoena to David Poulson of the USAO.  Prompted by these

15   two April 2019 documents, California met with Marco Gonzales, DHCS attorneys, and the

16   USAO to prepare the Gonzales and Yew Declarations to cure any perceived or actual prejudice

17   Rite Aid claims to have suffered.  Upon final approvals, which occurred on May 15, 2019,

18   California served the Gonzales and Yew Declarations, concurrently with and cited in footnote 8

19   of ECF No. 205, filed on May 15, 2019.

20
21   **V.    THE INFORMATION CONTAINED IN THE GONZALES AND YEW DECLARATIONS ARE
     NOT MATERIAL TO THE VALIDITY OF THE SAMPLING METHODOLOGY AND THE
     QUESTION WHETHER THE PARTIES SHOULD RESAMPLE.**

22    Last but not least, the contents contained in the Gonzales and Yew Declarations relating to

23   the selection of NDCs and the replicability of the Symmetry claims output that both led to the

24   creation of the sample frames are immaterial to the issues concerning the validity of the sampling

25   methodology or whether California should resample.

26    Dr. Epstein testified, "I just wouldn't – I don't know that you can use the term 'right or

27   wrong' in picking the universe."  Salazar Decl., Exh. I, Epstein Dep. 135:1-11.  To the question,

28   "Can the Government select which particular claims they would like to include in a particular

14

1   sample frame that they would like to investigate?", Dr. Epstein answered, "I think anybody is free

2   to pick a universe.  The question is how do you – what inferences do you draw in that universe."

3   *Id.* 135:17-23.

4         Thus, so long as the intended extrapolation is limited to the estimation of false claim in the

5   respective sample frame and not beyond, the contents of the Gonzales and Yew declarations are

6   indeed immaterial to sampling validity.  As Mr. Petron testified, "I am going to take a sample of a

7   sample frame and I will extrapolate that sample to that sample frame."  Salazar Decl., Exh. G,

8   Petron Dep. 236:6-24.  He added, "I can offer an opinion about what the universe is, what the

9   sample is, and then extrapolate from the sample to the universe.  What people, basically what

10  attorneys argue after that I leave to the attorneys."  *Id.* 238:15-239:1.

11        With respect to Symmetry, Mr. Petron testified, "[The Symmetry claims output] is a set of

12  claims which folks at [DHCS] believe represents claims that have a higher likelihood of a false

13  claim.  Whether or not that likelihood bears out or not, that's going to be determined with the

14  sample.  There is not going to be a oh, I don't understand what's really happening or they did it

15  right or they did it wrong.  It doesn't – it frankly just doesn't matter."  Salazar Decl., Exh. G,

16  Petron Dep. 246:3-247:8

17        Because the contents of the Gonzales and Yew Declarations are not relevant to the

18  question regarding the validity of the sampling methodology, as stated by both California's and

19  Rite Aid's statistical experts, they are immaterial.  The Court, therefore, should deny Rite Aid's

20  motion.

21  **VI.   THE PURPOSE OF PHASING DISCOVERY WAS TO ALLOW THE PARTIES TO GET THE
22        STATISTICAL SAMPLING METHODOLOGY RIGHT BEFORE MOVING ON TO THE
      MERITS OF THE CASE.**

23        The original purpose of the discovery phasing was to determine early whether Plaintiffs

24  can proceed with the statistical sample employed during the several years of pre-intervention

25  investigation or Plaintiffs need to resample.  The Court and all parties have invested significant

26  years and resources gathering and evaluating evidence relating to the current statistical sample.

27  The only prejudice Rite Aid claims it has suffered is an inability to seek "full" discovery

28  concerning the declarations and documents produced subsequent to its filing of its April 15, 2019

15

1   motion.  The Court has not set a trial date.  While Plaintiffs believe that they have fully complied

2   with and gone beyond their obligations in order to assist Rite Aid to understand the materials

3   relating to the sampling methodology and obtain the information it has said it needs, and that Rite

4   Aid has not suffered any prejudice as a result of any alleged fault of Plaintiffs, if the Court wishes

5   to modify the scheduling order to accommodate Rite Aid's request to conduct discovery

6   concerning the subject declarations, it has the discretion to do so.  *See Losee v. City of Chico*,

7   2016 U.S. Dist. LEXIS 61277, *2 (E.D. Cal. 2016) (allowing extension of discovery in the

8   interest of justice).

9                                                    **CONCLUSION**

10          The contents of the declarations are not statistical expert opinions.  They were primarily

11   addressed to correct the record before the Court.  California timely disclosed all it knew and had

12   relating to the sampling methodology.  California supplied the declarations at the earliest

13   opportunity upon approval.  Moreover, the contents of the Lien, Gonzales, and Yew Declarations

14   are immaterial to the issue of sampling validity.  Based on the foregoing, the Court should deny

15   Rite Aid's motion, ECF No. 208.

16
                    Dated: June 14, 2019                     Respectfully submitted,
17                                                           XAVIER BECERRA
                                                             Attorney General of California
18
                                                             */s/ Emmanuel R. Salazar*
19                                                           _____

20                                                           EMMANUEL R. SALAZAR
                                                             Deputy Attorney General
21                                                           *Attorneys for Plaintiff State of California*

22                  Dated: June 12, 2019                     WATERS &KRAUS LLP

23                                                           */s/ Wm. Paul Lawrence II (as authorized on 6/14/19)*

24                                                           _____
                                                             WM. PAUL LAWRENCE II
25                                                           *Attorneys for Loyd F. Schmuckley, Jr.*

26

27

28

                                                             16

1                                   **PROOF OF SERVICE**

2   I am over the age of 18 and not a party to this action.  My business address is:  2329 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833.

3

4   A true and correct copy of the foregoing document entitled:

5   **PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT RITE AID CORPORATION'S MOTION TO EXCLUDE AND STRIKE UNTIMELY EVIDENCE AND EXPERT OPINION SUBMITTED WITH PLAINTIFFS' OPPOSITION TO DEFENDANT'S**

6   **MOTION TO EXCLUDE PLAINTIFFS' PROPOSED SAMPLING METHODOLOGY**

7   was served in the manner stated below:

8   **SERVED BY CM/ECF SERVICE**:  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 135, on 6/14/2019, I served the following persons and/or entities by the Court's CM/ECF service:

9

10   Eric W. Sitarchuk
Kelly A. Moore
Benjamin P. Smith

11   Michael Q. Eagan
Morgan, Lewis & Bockius, LLP

12   One Market, Spear Street Tower
San Francisco, CA 94105-1596

13

14   Catherine J. Swann
United States Attorney's Office
501 I Street, Suite 10-100

15   Sacramento, CA 95814

16   Michael L. Armitage
Wm. Paul Lawrence

17   Charles S. Segal
c/o Waters & Kraus

18   3141 Hood Street, Suite 700
Dallas, TX 75219

19

20   Jennifer L. Bartlett
Brian P. Barrow
Bartlett Barrow LLP

21   225 S. Lake Avenue, Suite 300
Pasadena, CA 91101

22

23   I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

24

25   6/14/2019            Sharon Brecht                */s/ Sharon Brecht*

26      *Date*                *Printed Name*               *Signature*

27

28