XAVIER BECERRA
Attorney General of California
VINCENT DiCARLO
Supervising Deputy Attorney General
BERNICE L. LOUIE YEW, State Bar No. 114601
Deputy Attorney General
E-mail: Bernice.Yew@doj.ca.gov
EMMANUEL R. SALAZAR, State Bar No. 240794
Deputy Attorney General
E-mail: Emmanuel.Salazar@doj.ca.gov
 2329 Gateway Oaks Drive, Suite 200
 Sacramento, CA 95833-4252
 Telephone: (916) 621-1835
 Fax: (916) 274-2929

*Attorneys for State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel.* LOYD F. SCHMUCKLEY, JR.,<br><br>          Plaintiffs,<br><br>     **v.**<br><br>RITE AID CORPORATION,<br><br>          Defendant. | 2:12-CV-1699 KJM EFB<br><br>**EXHIBIT A TO DECLARATION OF EMMANUEL R. SALAZAR** |
| STATE OF CALIFORNIA *ex rel.* LOYD F. SCHMUCKLEY, JR.,<br><br>          Plaintiff,<br><br>     v.<br><br>RITE AID CORPORATION,<br><br>          Defendant. | |



*XAVIER BECERRA*  
*Attorney General*

State of California  
**DEPARTMENT OF JUSTICE**

BUREAU OF MEDI-CAL FRAUD AND ELDER ABUSE  
2329 GATEWAY OAKS DRIVE, SUITE 200  
SACRAMENTO, CA 95833-4252

Telephone: (916) 621-1835  
Facsimile: (916) 274-2929  
Emmanuel.Salazar@doj.ca.gov

August 24, 2018

**VIA EMAIL ONLY**

Tera M. Heintz  
Michael Q. Eagan  
MORGAN, LEWIS & BOCKIUS, LLP  
One Market, Spear Street Tower  
San Francisco, CA 94105-1596

Wm. Paul Lawrence, II  
WATERS & KRAUS, LLP  
37163 Mountville Road  
Middleburg, VA 20117

RE: *State of California, et al., ex rel. Loyd F. Schmuckley, Jr. v. Rite Aid Corp.*  
No. 2:12-cv-1699 KJM EFB (E.D. Cal.)

Dear Counsel:

We provide this letter in our continued meet-and-confer efforts relating to Rite Aid's Special Interrogatories, Set One, and Request for Production of Documents, Set One.

**General objections**

The stated general objections apply to each response. *Does Rite Aid prefer that we amend our responses by copying and pasting the general objections to each response?*

**Objections to definitions**

"CODE 1 DRUGS". We have narrowed and applied our interpretation of CODE 1 DRUGS, as stated in our response. Any extension beyond our interpretation, to us, would lead to discovery of irrelevant materials and would be overly burdensome to California.

"YOU," "YOUR," AND "STATE". We have narrowed and applied our interpretation, as stated in our response. In this action, the Bureau of Medi-Cal Fraud & Elder Abuse (BMFEA) under the Office of the Attorney General represents the State of California, as provided under

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 2


the California False Claims Act, Cal. Gov't Code § 12652(a), and our legislative mandate, Cal. Gov't Code § 12528(a).  We do not represent any state department, division, or political subdivision; no state department, division, or political subdivision is our client.

**Responses to Rite Aid's Interrogatories, Set One**

*Response to Interrogatory No. 1*

First, we never contended DHCS is a client.  We therefore have not claimed and are not claiming an attorney-client privilege over communications with DHCS.  Rather, our communications with DHCS during our confidential investigation and during this litigation are protected by the work-product doctrine and investigative privilege.  Furthermore, our communications with the U.S. Attorney's Office, relator, and relator's counsel are confidential and protected under the common-interest privilege, joint investigation/prosecution privilege, and work-product doctrine.  Relator's communications with relator's counsel are confidential and protected under the attorney-client privilege and, if communicated with California during our investigation and in this litigation, are similarly protected under common-interest privilege, joint investigation/prosecution privilege, and work-product doctrine.

Second, there is no waiver of any privilege.  What we stated in our response was all we know and all that was relayed to California's sampling expert Michael Petron.

Third, we believe that the selection of drugs that would comprise the universe is not relevant to the determination of whether the sampling methodology in this matter is statistically valid.  *Does your expert contend that it is?  And if so, how?*  Related, as stated in our complaint, more than 10 million pharmacy claims are submitted each year to Medi-Cal.  The government is reasonably entitled to and practically must factor different criteria to determine and narrow the affected universe of claims that were prone or susceptible to a provider's alleged fraud and that could be subjected to sample testing.

Notwithstanding, California is willing to stipulate to allow Rite Aid to depose at any time the persons involved with the drug selection process in connection with the claim universe.

*Responses to Interrogatory No. 3, 4, 5, 6, 7, 8, 9 and 13*

We think we have answered these Interrogatories as straightforward, current, and complete as we can under the circumstances.  *See also* our past productions of medical records and pharmacy records and the cover letters enclosed therewith, identifying the sample claims that we believe are false and the grounds therefor.  *Please explain how we can better respond to this Interrogatory under the circumstances so we may be able to consider how to best move forward.*

**Rite Aid's Responses to Rite Aid's Request for Production, Set One**

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 3

*Privilege Objection*

We have explained in the above our objection based on privilege.  Regarding your suggestion of creating a privilege log, we cannot at this time agree to a 45-day timeline.  A timeline will depend on the scope of potentially responsive documents.  *See also* below Responses to Request for Production Nos. 40 and 42.

*Response to Request for Production No. 1*

If Rite Aid insists on obtaining non-anonymized data, we require amending the HIPAA QPO.  Rite Aid's proposed revision of only including personal identifying information (PII) as covered under the HIPAA QPO is inadequate.

The PII of hundreds of thousands of beneficiaries that are part of the claim universe (Medi-Cal claims data) implicate privacy concerns greater in scope and magnitude than the PII of several hundreds of beneficiaries that are part of the sample (medical records).  The parties stipulated to the February 8, 2018 HIPAA QPO to expressly address the privacy concerns relating to the latter.  The parties also stipulated that the February 8, 2018 HIPAA QPO does not "confer blanket protections."  Nothing prohibits the parties to reasonably amend the February 8, 2018 HIPAA QPO to address the former.

With Rite Aid's demand to obtain non-anonymized Medi-Cal claims data, we require Rite Aid and its attorneys and experts to treat the PII just as they would and must respectively as a "covered entity" and "business associates" under HIPAA.  These terms must be included in the amended HIPAA QPO.

On July 18, 2018, we provided Rite Aid with a draft, also attached herein for your convenience, of the proposed amendments to the HIPAA QPO.  While we will need to obtain BMFEA and DHCS approval of any further proposed changes thereto, we believe we may be able to delete proposed amendment no. 5 which addresses anonymization.  *Notify us if the draft without amendment no. 5 is acceptable, and we will seek and/or facilitate the requisite approvals.  Otherwise, please track your proposed changes in the draft.*

*Response to Request for Production No. 2*

*See* Response to Request for Production No. 1.

*Response to Request for Production No. 3*

We believe that compiling, preparing, and producing medical records, some of which are voluminous, for sample claims that California will not pursue as a "false claim" based on the beneficiary's diagnosis would be overly burdensome.  Notably, we may decide not to pursue the sample claim as a "false claim" not necessarily because the beneficiary actually had the qualifying Code 1 diagnosis at the time of dispensing.  For example, sometimes the medical

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 4

records in our possession and custody are from providers that were not the actual prescriber related to the sample claim. As another example, some do not contain the relevant time period and the provider had already purged the records for the relevant time period.

*Please explain therefore why it would be relevant to Rite Aid's defense to obtain medical records for sample claims that California will not pursue as a "false claim" based on falsity regarding the beneficiary's diagnosis.*

Moreover, the review and examination of underlying pharmacy and medical records is ongoing. Logically, we will not be able to determine what sample claims are "compliant" or "contradictory" until we conclude the ongoing review and examination.

Nevertheless, with or without review and examination of the medical records obtained by third-party subpoenas, per our agreement, on an ongoing basis, we have produced and will continue to serve copies of any and all such medical records. We also, on an ongoing basis, have disclosed and will continue to disclose the copies of medical records for sample claims that we will contend are false based on a lack of a qualifying Code 1 diagnosis.

*Response to Request for Production No. 4*

*See* Response to Request for Production No. 3.

*Response to Request for Production No. 5*

*See* Response to Request for Production No. 3.

*Response to Request for Production No. 6*

As explained above, we are not pursuing this California False Claims Act ("CFCA") action on behalf of DHCS. BMFEA has a separate and independent mandate under Cal. Gov't Code §§ 12528(a) and 12652(a). DHCS is not a client; we do not claim an attorney-client privilege over our communications with DHCS. The work-product doctrine and investigative privilege protects from disclosure our impressions and opinions from our communications with DHCS.

Second, DHCS is not "the only State of California agency with an interest in any potential recovery" resulting from a highly probable finding of Rite Aid's CFCA liability. Generally, allocation of proceeds from CFCA actions follows Cal. Gov't Code § 12652, subds. (g) and (j). The United States' share of proceeds follows the Federal Medical Assistance Percentages (FMAP) and the Deficit Reduction Act (DRA). Relator under the CFCA and the federal FCA is also entitled to a share of proceeds.

Third, we do not understand what Rite Aid meant as respects Michael Eagan's statement, "It is inherently inequitable for the State to obtain and rely upon certain selected DHCS records

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 5

to prosecute its action . . . ." We believe we have cited in our complaint the documents we plan to offer as evidence in this action. With respect to DHCS, those documents are publicly available, such as Medi-Cal regulations, manuals and the Contract Drug List (CDL), or are documents already available to Rite Aid, such as Medi-Cal provider agreements, CMC agreements, and the CDL. We currently do not plan to offer as evidence a DHCS document that is not already available to Rite Aid. *Please cite examples if Rite Aid believes we are missing anything.*

Related, to the extent Rite Aid generated and has possession, custody and control of the documents it seeks by this request, in our view, it would be inherently inequitable to burden California to try to obtain these documents from DHCS to benefit Rite Aid. What is most egregious is that Rite Aid has not even disclosed one example of such related documents to guide California yet expects BMFEA to blindly carry out for Rite Aid a massive fishing expedition on a separate state agency.

Fourth, we do not have direct access to these documents. We have to navigate and go through DHCS. As the MOU between DHCS and BMFEA provides, any cooperation from DHCS must be founded upon a good-faith, reasonable belief that complying with a request would be useful in carrying out BMFEA's investigations. In this case, while we have some obligation to evaluate potential defenses before initiating and continuing to prosecute an action, we are not and will not conduct Rite Aid's overall defense.

In connection with Rite Aid's TAR-based defense, as discussed in our opposition to Rite Aid's motion to dismiss, we believe Rite Aid's reliance on its TAR-based arguments and past case experience dealing with TARs is misplaced. *See also United States v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1050 (C.D. Cal. 2016). The falsity here lies on Rite Aid's false use of Code 1 override codes, where Rite Aid affirmed that it met the Code 1 diagnosis requirements but, in fact, it did not.

Notwithstanding, to further our meet-and-confer effort, as stated, we are willing to stipulate to allow Rite Aid to subpoena DHCS to seek potentially responsive documents and/or conduct a deposition relating to this request. We nonetheless reserve all rights to quash any such subpoena or move for a protective order. DHCS may also seek to quash or move for a protective order.

To avoid unnecessary motion practice, we have again reached out and further discussed with DHCS a potential meeting with Rite Aid will at minimum provide Rite Aid with an opportunity to narrowly tailor its subpoena at the outset. DHCS has reconsidered and will participate in such a call with Rite Aid. We will inform you of DHCS's and our available dates.

*Finally, if Rite Aid identifies particular sample claims and provides related documents that may support its TAR-related arguments, BMFEA may be able to request and obtain from DHCS TAR-related documents for these specified sample claims.*

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 6

*Response to Request for Production No. 7*

The production is all we have in our possession, custody and control and that may be potentially responsive to the request. We only have these pertinent pages; we do not have the whole CDLs. We will not perform for Rite Aid. We are not aware of any online repository.

Moreover, Rite Aid should have copies of these Code 1 restrictions and should have regularly updated its computer-based dispensing program whenever Medi-Cal publishes updates to the CDL. *Did Rite Aid fail to keep or update the Code 1 restrictions in its computer-based dispensing system?*

*Response to Request for Production No. 8*

*See* Response to Request for Production No. 7.

*Response to Request for Production No. 9 - 16*

*See* Response to Request for Production No. 6.

*Response to Request for Production No. 17*

*See* Response to Request for Production No. 3.

Also, discovery is still on its early stages with respect to this request, and we will certainly identify responsive documents upon Rite Aid's further production of potentially responsive documents. Nonetheless, California's complaint also cites additional documents on which California plans to rely to prove scienter. *See* Response to Interrogatory No. 5.

*Response to Request for Production No. 18*

*See* Response to Request for Production No. 3.

*Response to Request for Production No. 19*

*See* Response to Request for Production No. 3.

Also, discovery is still on its early stages with respect to this request, and we will certainly identify responsive documents upon Rite Aid's further production of potentially responsive documents. Nonetheless, California's complaint also cites additional documents on which California plans to rely to prove materiality. *See* Response to Interrogatory No. 6.

*Response to Request for Production No. 20*

Case 2:12-cv-01699-KJM-EFB   Document 217-1   Filed 06/14/19   Page 8 of 11

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 7

*See* Response to Request for Production No. 6.

*Response to Request for Production No. 21*

We do not understand your objection to our response here. We provided all potentially responsive documents in our possession, custody or control.

*Response to Request for Production No. 22*

*See* Response to Request for Production No. 3.

*Response to Request for Production No. 23-29*

*See* Response to Request for Production No. 6.

*Response to Request for Production No. 31*

*See* Response to Request for Production No. 6.

Note that we only have access to paid claims data; we do not have access to denied claims data. In addition, the only data field that may identify a TAR from our accessible paid claims data are the associated TAR Control Numbers (TCN). We do not understand how the claims data showing the TCN would help Rite Aid's defense. The TAR control number would not show the reason for granting the underlying TAR. Moreover, the underlying TAR may be for a different drug, which may or may not be a CODE 1 DRUG included in the claim universe in this action.

Also note that while there may be approved TCNs associated with certain other claims for the beneficiary for the corresponding CODE 1 DRUG prescribed by the same prescriber, California may not be pursuing that sample claim as a false claim because Rite Aid performed and documented the requisite Code 1 review and the prescriber actually prescribed the Code 1 drug for the qualifying Code 1 diagnosis restriction. Hence, the TAR beneficiary CDR that may be produced would become irrelevant.

Moreover, in order for California to produce non-redacted and non-anonymized Medi-Cal claims data, we need an amended HIPAA QPO, as explained and proposed above. Without an amended HIPAA QPO, the beneficiary CDRs we will produce will redact PII.

Nevertheless, the TAR-related data requested here is new to us and has not been provided to any expert. Rite Aid also has been able to match prescriptions to the sample claims without PII and with only the date of service, store information, and prescription number. *Can Rite Aid further explain its "necessity" for PII in connection with the TAR-related data?*

We will serve next week a first batch of responsive beneficiary claim detail reports

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 8

(CDRs). We will continue to prepare the rest of the available beneficiary CDRs and will produce them on a rolling basis. We believe we will be able to complete production of potentially responsive documents by the end of October.

*Response to Request for Production No. 32*

*See* Response to Request for Production No. 6.

Note that we only have access to paid claims data; we do not have access to denied claims data. In addition, the only data field that may identify a TAR from our accessible paid claims data are the associated TAR Control Numbers (TCN). We do not understand how the claims data showing the TCN would help Rite Aid's defense. The TCN would not show the reason for granting the underlying TAR. Moreover, the underlying TAR may be for a different drug, which may or may not be a CODE 1 DRUG included in the claim universe in this action.

*Notwithstanding, before we can evaluate the burdens on our computer system and our staff and determine whether we can adequately respond to Rite Aid's request, Rite Aid must identify the data fields and the data query to properly extract the requested Medi-Cal claims data.*

Finally, in order for California to produce anonymized Medi-Cal claims data, we need an amended HIPAA QPO, as explained and proposed above.

*Response to Request for Production No. 33*

*See* Response to Request for Production Nos. 6, 31 and 32.

*Response to Request for Production No. 34*

*See* Response to Request for Production Nos. 6, 31, and 32.

More importantly here, we do not have the capacity to run this enormous data request in connection with the claim universe. This process will involve extracting, reviewing and preparing for production the beneficiary CDRs of more than 200,000 beneficiaries. It will take years and will halt BMFEA's data extractions for all other fraud investigations.

We therefore can and will only review and prepare for production beneficiary CDRs in connection with the sample. We believe we already have almost all (around 95%) of the beneficiary CDRs in our possession and custody. We will obtain the beneficiary CDRs for the beneficiaries in our sample that we do not currently have in our possession and custody. Note that the review and preparation for production of the planned first batch of beneficiary CDRs in our possession and custody have already taken more than 3 days. This involved reviewing the beneficiary CDRs related to 341 sample claims and preparing for production the responsive beneficiary CDRs. It would have taken significantly longer if we still had to first obtain the

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 9

beneficiary CDRs.  Thus, we will not obtain any beneficiary CDR beyond our sample.

*Response to Request for Production No. 35*

*See* Response to Request for Production Nos. 6.

*Response to Request for Production No. 37*

*See* Response to Request for Production 3.

*Response to Request for Production No. 38*

We will further review this request and will respond, if necessary, in connection with objections relating to pending court seals and law enforcement investigations.

*Response to Request for Production No. 39*

The medical records produced on April 5, May 5, June 13, and July 31 each included reports of investigations and declarations that detail our process of obtaining the medical records.  In addition, the medical records also included certifications or affidavits from the custodians of the respective medical records.  Such certifications or affidavits are also included in the medical records produced on April 5, May 7, June 12, and July 31.

We will go through each of these past productions and identify the Bates stamp numbers of the reports, declarations, certifications and affidavits.  We will do the same, moving forward, with any future related productions.

*Response to Request for Production No. 40*

The request as currently drafted only included relator and did not include his counsel.  Other than the pre-filing complaint, we do not have any further documents relating to communications between BMFEA and relator.

Rite Aid, in its August 10, 2018 letter, newly indicated that this request seeks documents relating to communications between BMFEA and relator's counsel.  Please serve a new request reflecting so and we will officially address it then.

Note that our communications with relator's counsel are privileged under the common-interest doctrine, joint investigation/prosecution privilege, work–product doctrine and attorney-client privilege.  We doubt whether we would be required to create a privilege log for all such communications between us and relator's counsel.  That would be overly burdensome and has no other purpose but to harass plaintiffs.  We may consider creating a privilege log if Rite Aid proposes manageable keywords or search terms and narrows the scope of this request.

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 24, 2018
Page 10

*Response to Request for Production No. 41*

*See* Response to Request for Production No. 6.

*Response to Request for Production No. 42*

*See* Response to Request for Production No. 6.

We apologize for any confusion.  Our August 7, 2018 production is and should be in response to Request for Production Nos. 40 and 43, not 42.

        Sincerely,

        */s/ Emmanuel R. Salazar*

        EMMANUEL R. SALAZAR
        Deputy Attorney General
        Bureau of Medi-Cal Fraud and Elder Abuse

For    XAVIER BECERRA
       Attorney General