XAVIER BECERRA
Attorney General of California
VINCENT DICARLO
Supervising Deputy Attorney General
BERNICE L. LOUIE YEW, State Bar No. 114601
Deputy Attorney General
E-mail: Bernice.Yew@doj.ca.gov
EMMANUEL R. SALAZAR, State Bar No. 240794
Deputy Attorney General
E-mail: Emmanuel.Salazar@doj.ca.gov
  2329 Gateway Oaks Drive, Suite 200
  Sacramento, CA 95833-4252
  Telephone: (916) 621-1835
  Fax: (916) 274-2929

*Attorneys for State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, et al., *ex rel.* LOYD F. SCHMUCKLEY, JR., Plaintiffs, v. RITE AID CORPORATION, Defendant. | 2:12-CV-1699 KJM EFB<br><br>**EXHIBIT C TO DECLARATION OF EMMANUEL R. SALAZAR** |
|---|---|
| STATE OF CALIFORNIA *ex rel.* LOYD F. SCHMUCKLEY, JR., Plaintiff, v. RITE AID CORPORATION, Defendant. | |

EXHIBIT C TO DECLARATION OF EMMANUEL R. SALAZAR (2:12-CV-1699 KJM EFB)



| | |
|---|---|
| **XAVIER BECERRA**<br>*Attorney General* | **State of California**<br>**DEPARTMENT OF JUSTICE** |

BUREAU OF MEDI-CAL FRAUD AND ELDER ABUSE
2329 GATEWAY OAKS DRIVE, SUITE 200
SACRAMENTO, CA 95833-4252

Telephone: (916) 621-1835
Facsimile: (916) 274-2929
Emmanuel.Salazar@doj.ca.gov

August 31, 2018

**VIA EMAIL ONLY**

Tera M. Heintz
Michael Q. Eagan
Elaine Fenna
MORGAN, LEWIS & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596

Wm. Paul Lawrence, II
WATERS & KRAUS, LLP
37163 Mountville Road
Middleburg, VA 20117

RE:  *State of California, et al., ex rel. Loyd F. Schmuckley, Jr. v. Rite Aid Corp.*
No. 2:12-cv-1699 KJM EFB (E.D. Cal.)

Dear Counsel:

We provide this letter in our continued meet-and-confer efforts relating to Rite Aid's Special Interrogatories, Set One, and Request for Production of Documents ("RFP"), Set One.

**Cross-Motions to Compel**

Regarding the parties' cross-motions to compel and California's motion for a protective order, we believe there are a host of issues that still require and may be resolved by further meet-and-confer efforts, as outlined below.  *See* Fed. R. Civ. P. 37(d)(1)(B).  We therefore ask that we allow this whole month of September for the parties to produce any further responsive documents within their respective possession, custody, or control; supplement responses to contention interrogatories; further meet and confer about Rite Aid's document requests on BMFEA; and meet with DHCS representatives regarding Rite Aid's requests that seek documents within DHCS's possession, custody, or control.  By the first week of October, the parties will have ample opportunity to evaluate the status of the production requests and interrogatories, the success or failure of our continued meet-and-confer efforts, and the need, if

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 31, 2018
Page 2

any, to file any motion to compel, which hearing we believe should be reasonably scheduled for October 31, 2018.

**Rite Aid's Pharmacy Records and Any Other Record Supporting Its Defense relating to the Sample Claims (CA RFP Nos. 1 and 2)**

On October 26, 2017 and May 9, 2018, California requested Rite Aid's pharmacy records relating to the sample claims. On June 6, 2018, after extensive meet and confer efforts, Rite Aid responded that with respect to electronic prescription copies it would take roughly 8 weeks to complete production and with respect to hard-copy prescriptions it would "endeavor" to complete within 3 months. During these times, we had asked the rationale for Rite Aid's timeline and delay in producing records relating to electronic prescriptions when Rite Aid could easily access these records from Rite Aid's computer-based dispensing system. We also had asked for the reasons why Rite Aid would require such a long time to gather records relating to hard-copy prescriptions. Moreover, we had reiterated the scope of these requests include TAR-related documents.

To this day, while we have, in good faith, allowed Rite Aid to follow its proposed completion dates, Rite Aid has not explained its timeline and reasons for delay. Nor has Rite Aid provided any pharmacy documents to support its TAR-related defense.

Yesterday, Rite Aid asserts it will produce another installment today and that its production is still ongoing. Yet Rite Again again has not provided us with a timeline of its ongoing production and the reasons therefor. All this while, Rite Aid is aggressively imposing undue discovery burdens on us and on DHCS, particularly with respect to its TAR-related defense. Ten months have elapsed since our service of RFP No. 1, and four months have passed since our service of RFP No. 2. Under the circumstances, we believe Rite Aid's conduct is dilatory and evasive.

*If Rite Aid plans to produce additional hard-copy documents that it would like California to consider in our prescription-records review, Rite Aid should now have a better understanding of its time constraints and inform us when such production will be completed and the rationale therefor. If Rite Aid has no other document, including TAR-related documents, to produce for specific sample claims, it should state so in its response, identifying the applicable sample claim. We demand Rite Aid provide this information by noon on Wednesday, September 5. Otherwise, we will be forced to file a motion to compel.*

**Rite Aid's Pharmacy Records and Any Other Record Supporting Its Defense relating to the Claim Universe (CA RFP Nos. 3 to 7)**

On June 29, 2018, California propounded RFP Nos. 3-7 requesting Rite Aid's pharmacy records relating to the claim universe. In its objections and responses, Rite Aid declined to produce any responsive documents. Rite Aid has agreed to hold off on discovery of other data materials relating to the claims universe. Reserving and not waiving any and all rights and

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 31, 2018
Page 3

claims, given Rite Aid's agreement to hold of on discovery of other data materials relating to the claims universe and if Rite Aid agrees to our proposed motion-to-compel schedule, we will likewise hold off on and revisit the need to file a motion to compel production on these requests.

**Non-Anonymized Data and California's Motion for Protective Order**

Based on our call yesterday, Rite Aid contends that it needs non-anonymized data in order to **(1)** request data from DHCS and **(2)** validate the sampling methodology.

As respects **(1)**, Rite Aid claims that in order for it to subpoena claims data from DHCS it will need BIC or SSN information.  At this stage, without waiving its right to obtain information relating to the claim universe, Rite Aid has agreed to currently focus its discovery on the sample claims and hold off on requests regarding the claim universe.  In this regard, Rite Aid already has the BIC and/or SSN information relating to the 1,904 sample claims.  Rite Aid already pulled the information in response to California's Request for Production Nos. 1 and 2.  Thus, even assuming Rite Aid's claim that it needs BIC or SSN information before it can subpoena claim information from DHCS is legitimate, Rite Aid has no present need for non-anonymized data to serve this purpose.

As respects **(2)** (relating to Rite Aid's RFP No. 1), Rite Aid claims that in order for it to validate the sampling methodology it must have the non-anonymized data (SSNs), which was used in conjunction with other numeric information (i.e., date of service and claim control number) to sort the non-Symmetry strata in selecting the respective non-Symmetry samples.  In response, California stated it will **(a)** produce the specified non-anonymized data in connection with the claim universe and sampling selection if Rite Aid agrees to **(i)** the Medi-Cal claims data use agreement or **(ii)** the proposed amendments to the qualified HPO, which included an express statement declaring or affirming that Rite Aid is a "covered entity" and its attorneys and experts are "business associates" under HIPAA, or **(b)** schedule an inspection of the anonymization process in order for Rite Aid to see how the SSNs were converted to anonymized numbers and confirm that the anonymization process did not affect the sorting of the claim universe and the sample selection.

Rite Aid rejected all the above options and rather proposed changes to the existing HIPAA qualified protective order ("QPO").  DHCS and BMFEA must separately approve any amendments to the QPO that address privacy concerns relating to Medi-Cal claims data.  We still have not heard from DHCS.  Notwithstanding, it is BMFEA's position that in order for BMFEA to produce non-anonymized data to Rite Aid, we need a protective order that in addition to Rite Aid's proposed changes, expressly provides that Rite Aid is a "covered entity" under HIPAA, Rite Aid's counsel and experts in this litigation are "business associates" under HIPAA, and that PII includes SSNs, beneficiary names, and dates of birth.  *See also* California Civil Code §§ 1798.3(b), 1798.24.  We can obtain such protective order either by submitting a stipulation of the parties' agreement or by a Court finding upon hearing of California's motion

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 31, 2018
Page 4

for a protective order.[1]

*Please let us know by Tuesday, September 4, 2018, how Rite Aid would like to proceed regarding the protective order.*

**Non-Claim Related Documents within DHCS' Possession, Custody, or Control**

Our position that BMFEA does not have possession, custody or control over these non-claim related documents (RFP Nos. 6-16, 41-42) remains and does not change. We find no practical value to further argue about the provisions of the MOU and implications of *Novartis (ex rel. Kester)*. We are prepared to submit the issue before the Court.

Notwithstanding, Rite Aid seems to be considering issuing a subpoena to DHCS relating to these such documents. Consistent with our stated position, BMFEA, of course, will not object to such a subpoena on the ground based on receipts of multiple, successive subpoenas from Rite Aid to DHCS.

Accordingly, consonant with our past invitations, we believe a conference call with DHCS would benefit Rite Aid's crafting of a reasonably tailored subpoena relating to RFP Nos. 6-16, 41-42. DHCS and BMFEA have been and are prepared to engage with Rite Aid in this effort. Rite Aid in our call yesterday declined. Rite Aid's follow-up email, however, pleasantly seems to suggest that it is considering to so engage at this time.

*If the above are accurate and acceptable, please notify us at the earliest of your available dates and times in the next two weeks and we will schedule accordingly.*

**Claim Detail Reports**

Rite Aid asserts that it needs the claim detail reports ("CDRs") of the sample beneficiaries to **(1)** determine whether the beneficiary did not have the qualifying Code 1 diagnosis at the time of dispensing and **(2)** evaluate its unarticulated and unexplained TAR-related defense.

As respects **(1)**, this rationale would only apply to sample claims that California suspects is false related to the prescriber's diagnosis of the beneficiary. We have already identified and compiled a list of such potential sample claims, which totaled 597.[2] That list was emailed to Rite Aid on February 2, 2018. Subject to an acceptable amended HIPAA QPO as explained above, we will produce by September 28, 2018, the beneficiary CDRs listing all Medi-Cal paid non-pharmacy claims for the sample claims included in the list.

---

[1] Since relator is not a "covered entity" under HIPAA, in order for relator and his counsel to receive a copy of the non-anonymized data, they must sign the Medi-Cal claims data use agreement, which will not need court intervention.

[2] Remember we reviewed almost all of the beneficiary CDRs' non-pharmacy claims to identify whether the beneficiary had the qualifying Code 1 diagnosis. If we found none, we suspected the sample claim as false and sought to obtain medical records to establish the diagnosis or condition for which the prescriber prescribed the drug.

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 31, 2018
Page 5

      As respects **(2)**, reserving and without waiving any right or claim, notwithstanding that Rite Aid has not explained the relevance and its relative access to TAR documents, this rationale, viewed in the most expansive sense of Rite Aid's TAR-related defense, may apply only to sample claims where Rite Aid had submitted a pharmacy TAR.  In this regard, again subject to an acceptable amended HIPAA QPO as explained above, we will produce by September 28, 2018, the beneficiary CDRs listing all Rite Aid pharmacy claims that have a TAR Control Number ("TCN").

      As mentioned before, we may only be able to complete these CDR productions by September 28, 2018, if Rite Aid agrees to our proposed motion-to-compel schedule described above.  Otherwise, we will have to abide by our original estimate that completion of such productions will be by the end of October.

**Contention Interrogatories**

      The review of prescription records and medical records is ongoing.  We also just received today and therefore have not yet had the opportunity to look at Rite Aid's production of close to one gigabyte of documents supposedly responsive to RFP Nos. 1 and 2.

      Subject to the stated objections in our responses to pertinent interrogatories, by September 28, 2018, we will supplement our responses and supply Rite Aid's requested "spreadsheet" that will identify the sample claims that we believe are false and would fall under (i) (failure to review) and (ii) (failure to document).  By October 31, 2018, we will further supplement our responses and supply Rite Aid's requested "spreadsheet" that will identify the sample claims that we believe are false and would fall under (i), (ii), and/or (iii) (relating to qualifying diagnosis).  We will further supplement our responses as we continue our review of the prescription records and medical records, which we hope to finalize by the end of the year.  Logically, we may only be able to complete these tasks by the anticipated deadlines if Rite Aid agrees to our above-proposed motion-to-compel schedule.

**Privileged Communications in Connection with the Sampling Methodology**

      We have identified and produced all documents in our possession, custody, or control relating to the sampling methodology, including those in connection with the selection of drugs.  We thus do not believe there are any underlying documents within our possession, custody, or control relating to the selection of drugs other than the Expert Report Exhibits 3.1 and 3.2.

      Rite Aid may nonetheless subpoena the persons outside BMFEA and involved in the sample selection.  Without waiving our claim of privilege, Rite Aid may seek from these persons particularized documents relating to the identification and selection of drugs in connection with the sampling methodology.  We or the subpoenaed parties may thereafter be able to address any claim or waiver of privilege whatsoever and provide a privilege log, where applicable.

MORGAN, LEWIS & BOCKIUS, LLP, et al.
August 31, 2018
Page 6

**Privileged Communications with Relator**

  We asked Rite Aid to issue a new RFP to include relator's counsel; Rite Aid has not done so.  We requested Rite Aid to supply search terms or keywords to narrow the search of documents potentially responsive to RFP Nos. 41 and 43; Rite Aid has not responded.  We therefore cannot provide any estimate relating to a privilege log.

       Sincerely,

       */s/ Emmanuel R. Salazar*

       EMMANUEL R. SALAZAR
       Deputy Attorney General
       Bureau of Medi-Cal Fraud and Elder Abuse

  For  XAVIER BECERRA
      Attorney General