# EXHIBIT 1

# EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT

 2             EASTERN DISTRICT OF CALIFORNIA

 3  UNITED STATES OF AMERICA, and      )
    the STATES OF CALIFORNIA, et al., )
 4  ex rel., LOYD F. SCHMUCKLEY, JR., ) Case No.
                                       )
 5            Plaintiffs,              ) 2:12-cv-01699-KJM-EFB
                                       )
 6          vs.                        )
                                       )
 7  RITE AID CORPORATION,              )
                                       )
 8            Defendant.               )
    _____   )
 9                                     )
    STATE OF CALIFORNIA, ex rel.,      )
10  LOYD F. SCHMUCKLEY, JR.,           )
                                       )
11            Plaintiffs,              )
                                       )
12          vs.                        )
                                       )
13  RITE AID CORPORATION,              )
                                       )
14            Defendant.               )
    _____   )
15

16

17    VIDEOTAPED DEPOSITION of ROY J. EPSTEIN, PH.D.

18             Boston, Massachusetts

19           Wednesday, April 10, 2019

20

21

22
      Pages:  1 - 256
23
      Reported by:  Cindy L. Sebo, RMR, CRR, RPR, CSR, CCR,
24    CLR, RSA, LiveDeposition Authorized Reporter

25    Assignment Number: J3695260
```



ROY J. EPSTEIN, PH.D.                                    April 10, 2019
USA vs RITE AID                                                      2

1                        April 10, 2019

2                          9:45 a.m.

3

4

5

6            Videotaped Deposition of ROY J. EPSTEIN,

7    PH.D., held at the law offices of:

8

9

10

11               Morgan, Lewis & Bockius, LLP

12                    One Federal Street

13               Boston, Massachusetts 02110

14

15

16

17

18

19            Pursuant to notice, before Cindy L. Sebo,

20   Registered Merit Reporter, Certified Real-Time

21   Reporter, Registered Professional Reporter, Certified

22   Shorthand Reporter, Certified LiveNote Reporter,

23   Real-Time Systems Administrator, LiveDeposition

24   Authorized Reporter and Notary Public.

25



ROY J. EPSTEIN, PH.D.                                    April 10, 2019
USA vs RITE AID                                                      3

```
 1   APPEARANCES:

 2     CALIFORNIA DEPARTMENT OF JUSTICE

 3     For the Plaintiffs United States of America and

 4     State of California:

 5             2329 Gateway Oaks Drive, Suite 200

 6             Sacramento, California 95833-4252

 7             916.621.1821

 8     BY:   EMMANUEL RAMON SALAZAR, ESQUIRE

 9     BY:   BERNICE L. LOUIE YEW, ESQUIRE

10             emmanuel.salazar@doj.ca.gov

11             bernice.yew@doj.ca.gov

12     BARTLETT BARROW LLP

13     For the Relator Loyd F. Schmuckley, Jr.:

14             225 Lake Avenue, Suite 300

15             Pasadena, California 91101

16             626.432.7234

17     BY:   BRIAN P. BARROW, ESQUIRE

18             brian@bartlettbarrow.com

19                   -and-

20     WATERS KRAUS & PAUL, LLP

21             37103 Mountville Road

22             Middleburg, Virginia 20137

23             214.357.6244

24     BY:   WM. PAUL LAWRENCE, II

25             PLAWRENCE@WATERSKRAUS.COM
```



ROY J. EPSTEIN, PH.D.                                         April 10, 2019
USA vs RITE AID                                                          4

```
1    APPEARANCES (Continued):

2      MORGAN, LEWIS & BOCKIUS LLP

3      For the Defendant:

4              One Market, Spear Street Tower

5              San Francisco, California 94105-1596

6              415.442.1289

7        BY:   BENJAMIN P. SMITH, ESQUIRE

8              benjamin.smith@morganlewis.com

9                     -and-

10             101 Park Avenue

11             New York, New York 10178-0060

12             ELAINE V. FENNA, ESQUIRE

13             elaine.fenna@morganlewis.com

14

15

16

17      ALSO PRESENT:

18             DEANE CARSTENSEN, Videographer

19             MICHAEL J. PEIREN, CPA, DFE, STOUT

20

21

22

23

24

25
```



ROY J. EPSTEIN, PH.D.                                        April 10, 2019
USA vs RITE AID                                                          6

```
1              P R O C E E D I N G S

2

3          THE VIDEOGRAPHER:  Okay.  Good

4    morning.  This is Tape Number 1 to the

5    videotaped deposition of                          09:44

6    Dr. Roy J. Epstein, in the matter of

7    United States versus Rite Aid Corporation.

8          This case is being heard before the

9    U.S. District Court, Eastern District of

10   California, and the case file number is    09:44

11   2:12-cv-01699-KJM-EFB.

12         This deposition is being held at

13   1 Federal Street, Boston, Massachusetts, on

14   April 10th, 2019.  The time on the video

15   monitor is 9:45 a.m.                              09:45

16         My name is Deane Carstensen, and I

17   am the videographer today, here with the

18   court reporter, Cindy Sebo.

19         Counsel and appearances will be

20   stated on the stenographic record.          09:45

21         Will the reporter please swear in

22   the witness?  And then we may proceed.

23           ROY J. EPSTEIN, PH.D.,

24   after having been first duly sworn, was

25     examined and testified as follows:           09:45.
```



1   don't think it went much further than that.                09:58

2  BY MR. SALAZAR:

3       Q.    And throughout your engagement, were

4  there any other things that were asked of you with

5  respect to the scope of services that you will be       09:58

6  providing to Morgan Lewis?

7       A.    No.

8       Q.    Did Morgan Lewis instruct you not to

9  do something in this matter?

10      A.    No.                                              09:58

11      Q.    In this matter, were you asked to

12  provide a legal -- legal opinion?

13      A.    No.

14      Q.    Were you asked to opine on what types

15  of evidence would suffice each element of an FCA       09:59

16  cause of action?

17      A.    No.

18      Q.    Were you asked to provide an expert

19  opinion on pharmacy practices?

20      A.    No.                                              09:59

21      Q.    In this matter, were you asked to

22  provide a medical opinion as to whether certain

23  diagnoses notated in the pharmacy records meets

24  the qualifying Code 1 condition?

25      A.    No.                                              09:59



ROY J. EPSTEIN, PH.D.                                    April 10, 2019
USA vs RITE AID                                                      17

1          Q.     Were you asked to provide an expert          09:59
2    opinion regarding a pharmacy's compliance to
3    Code 1 regulations?
4          A.     No.
5          Q.     How about Medi-Cal -- Medi-Cal               09:59
6    spelling M-E-D-I, dash, capital C-A-L -- how about
7    Medi-Cal requirements with respect to Code 1
8    regulations?  Were you asked to provide an expert
9    opinion on that?
10         A.     No.                                          10:00
11         Q.     Your background is in econometrics; is
12   that right?
13         A.     In part, yes.
14         Q.     Were you asked to provide an
15   econometric opinion?                                      10:00
16         A.     No.
17         Q.     And just to be clear, can you define
18   for us your understanding when I use the term
19   "econometrics"?
20         A.     Sorry.  What's the question?                 10:00
21         Q.     How do you define "econometrics"?
22         A.     Econometrics is the application of
23   statistics to economic data.
24         Q.     So you're not providing expert opinion
25   on the application of statistics to data in this         10:00



ROY J. EPSTEIN, PH.D.                                    April 10, 2019
USA vs RITE AID                                                    90

```
 1    NexGen screen for that prescription, and if the      12:02
 2    Court only looks to that to the exclusion of any
 3    other source of information, then it sounds like
 4    the -- that would be a decision that -- looking at
 5    information from other prescriptions or even from    12:03
 6    that same prescription from a different point of
 7    time, because it might have been filled earlier as
 8    well, the Court may disregard that.
 9              On the other hand -- I mean, another
10    possibility is that the -- the Code 1 review was     12:03
11    carried out, but for whatever reason, it's not
12    captured in the screenshot that's in the NexGen
13    system.
14              So depending on how intensively and
15    how broadly the finder of fact wants to review       12:03
16    these claims, I think you can have a range of
17    outcomes, ranging from looking very narrowly at
18    that one screenshot to something based on a
19    broader set of information.
20         Q.   So if there is a variance of the           12:03
21    potential -- results on how a court would decide
22    those legal issues, are you saying, then, that
23    you're reserving your opinions with respect to the
24    validity of the current sampling methodology and
25    design that California has developed in this case?   12:04
```



```
 1        MR. SMITH:  Misstates evidence;          12:04
 2   incomplete hypothetical.
 3        THE WITNESS:  I don't know if I
 4   get -- would use those words.  Given -- at
 5   the moment, I am not aware of a specific       12:04
 6   list of criteria that should be measured or
 7   assessed for evaluating whether a
 8   prescription is valid or not in terms of
 9   the Code 1 documentation.  I just haven't
10   seen such a list of criteria.                  12:04
11        So -- so what I am suggesting is
12   that my reading of Mr. Petron's report --
13   and he's not terribly specific either, but
14   if he's suggesting that the only
15   information that should be considered is       12:05
16   the -- the actual screenshot, for example,
17   that's included in NextGen, I'm saying that
18   is a very narrow information base.  And it
19   may well be that the finder of fact is
20   interested in a broader information base.      12:05
21        And when I'm giving examples in my
22   report, I'm giving examples in my report
23   where -- to suggest that the finder of fact
24   may well find that the -- the broader
25   information that I've identified might be      12:05
```



```
 1            information that they may find relevant.          12:18

 2    BY MR. SALAZAR:

 3        Q.    Okay.  So earlier, you mentioned that

 4    you were not tasked to provide legal opinion in

 5    this matter, but it seems like you are basing your  12:18

 6    opinions on the range and the timing of what we

 7    need to be sample testing based on your own

 8    reading of the regulation here.

 9                How does that comport with your

10    earlier testimony?                                  12:18

11                MR. SMITH:  Vague.

12                THE WITNESS:  Because as I said

13    before, the statistician is supposed to

14    identify a -- a plan to collect information

15    sufficient to answer the question of               12:19

16    interest.

17    BY MR. SALAZAR:

18        Q.    And for you, the question of

19    interest --

20                MR. SMITH:  Don't interrupt.            12:19

21                MR. SALAZAR:  Oh, I'm sorry.

22                MR. SMITH:  I don't think he was

23    done.

24    BY MR. SALAZAR:

25        Q.    Oh, I -- are you -- are you not done?     12:19
```



| | | |
|---|---|---|
| 1 | some sense, the -- the -- the conceptual | 01:23 |
| 2 | next stage is to try to go from your sample | |
| 3 | back up to the universe. | |
| 4 | BY MR. SALAZAR: | |
| 5 | Q.    To the universe? | 01:23 |
| 6 | A.    Yeah. | |
| 7 | Q.    Okay.  You used the term "population." | |
| 8 | Is there a difference with your usage | |
| 9 | of "universe" and "population"? | |
| 10 | A.    To me -- there's different | 01:24 |
| 11 | terminology.  To me, it's all the same.  Whether | |
| 12 | it's "population," "universe," "sample frame," | |
| 13 | it's all -- | |
| 14 | Q.    Okay. | |
| 15 | A.    -- I view those terms as | 01:24 |
| 16 | interchangeable. | |
| 17 | Q.    Thanks. | |
| 18 | Okay.  So let's just go through this | |
| 19 | one by one and try to see whether we can come up | |
| 20 | with a plan here. | 01:24 |
| 21 | So with -- Step Number 1 is to | |
| 22 | identify the question to be answered. | |
| 23 | What would be the question to be | |
| 24 | answered in your opinion in this matter? | |
| 25 | MR. SMITH:  Calls for speculation; | 01:24 |



| | | |
|---|---|---|
| 1 | calls for a legal conclusion. | 01:24 |
| 2 | THE WITNESS:  I think the | |
| 3 | statistician in this case is trying to | |
| 4 | assist the finder of fact to determine | |
| 5 | whether -- you know, I think, ultimately, | 01:25 |
| 6 | as Mr. Petron says, the -- the incidents of | |
| 7 | false claims in the universe. | |
| 8 | BY MR. SALAZAR: | |
| 9 | Q.    I see. | |
| 10 | Okay.  And I think -- I think we're in | 01:25 |
| 11 | that same vein, but I think we have a difference | |
| 12 | of opinion as to the definition of "false claim." | |
| 13 | I think I've told you, with respect to | |
| 14 | California, the falsity that we are -- the | |
| 15 | question that we would like to answer is whether | 01:25 |
| 16 | the pharmacy associate, before dispensing the | |
| 17 | Code 1 drug, performed the review, verification | |
| 18 | and documentation prior to submitting that claim | |
| 19 | for payment to the Medi-Cal system. | |
| 20 | That's our -- that's the question that | 01:25 |
| 21 | we want to answer. | |
| 22 | So is your -- do you think that -- if | |
| 23 | you were to design a sample, do you have a | |
| 24 | different question that would be answered? | |
| 25 | MR. SMITH:  Vague. | 01:26 |



1          complete, but if -- if your -- if your                01:32

2          assumption is that -- say, a -- this

3          example we talked about with E-74, that --

4    BY MR. SALAZAR:

5          Q.    Okay.                                           01:32

6          A.    -- this -- this earlier prescription

7    is just 100 percent irrelevant and any notation on

8    that prescription is 100 percent irrelevant, then

9    you're basically saying that my -- my suggestion

10   is irrelevant.                                              01:32

11         And I don't know of a way to, you

12   know, resolve that here other than that these are

13   two different ways of looking at the problem.

14         Q.    Okay.  So but if -- if -- if your

15   suggestion would be irrelevant, does that -- what   01:32

16   is your opinion about the validity of the sampling

17   unit that we have selected?

18         MR. SMITH:  Calls for a legal

19         conclusion.

20         THE WITNESS:  That -- that really --          01:33

21         well --

22   BY MR. SALAZAR:

23         Q.    Again, let me try to make it easy for

24   you.

25         A.    Yeah.                                           01:33



ROY J. EPSTEIN, PH.D.                                       April 10, 2019
USA vs RITE AID                                                        145

```
 1          A.    Well, if you would like to rephrase,

 2   please go ahead.                                            01:56

 3          Q.    Yeah.  Well, the way I read your

 4   opinion is that you're saying that the

 5   sampling -- the -- the -- the sample methodology    01:56

 6   and design is invalid because we're not testing

 7   materiality as well.

 8                Is that your opinion?

 9          A.    I don't think the report says that.

10          Q.    Oh, okay.  That's not your opinion?    01:56

11          A.    Well, let's see what the report says

12   about materiality.

13                (Whereupon, the witness reviews the

14                 material provided.)

15                THE WITNESS:  Okay.  So what I say     01:57

16   is in Paragraph 73 in -- in summary,

17   really, is that a complete analysis of the

18   samples should include questions of

19   materiality and scienter.

20                And I think exactly what that          01:57

21   analysis would look like would depend on

22   your legal theory of what materiality and

23   scienter should be.

24   BY MR. SALAZAR:

25          Q.    Oh, I see.  I think I'm getting your   01:57
```



ROY J. EPSTEIN, PH.D.                                    April 10, 2019
USA vs RITE AID                                                      146

1    point now.                                                    01:57

2              You're saying that in order for us to

3    yield a statistically valid result for assessing

4    FCA liability, we need to also look at materiality

5    and/or scienter; is that right?                              01:58

6         A.    I believe so, yeah.

7         Q.    But do we need to do statistical

8    sampling for materiality to test materiality?

9              MR. SMITH:   Incomplete hypothetical.

10             THE WITNESS:   I'm not prepared to          01:58

11        give a -- a definitive answer to that at

12        this point, because if there was a -- I

13        think, partly, it depends on what the legal

14        standard is that has to be shown --

15   BY MR. SALAZAR:                                               01:58

16        Q.    Got it.

17        A.    -- so I believe I read in the

18   complaint that California is saying as a result of

19   the conduct that's alleged, they never --

20   California would not have paid any of these          01:58

21   claims -- and forgive me if I'm summarizing it a

22   little too crudely, but California would never

23   have paid the claims; therefore, the conduct is

24   material.

25        Q.    Yeah.   I think the way we framed it is    01:59



ROY J. EPSTEIN, PH.D.                                    April 10, 2019
USA vs RITE AID                                                      148

1   economically not material.                                    02:00

2            But whether that is the right legal

3   framework for this case or not, right now, I can't

4   say.

5        Q.    Okay.  So you're just assuming that?        02:01

6        A.    Well, it's an example of how one might

7   look at it.

8        Q.    Okay.  And there could be various

9   different ways of looking at materiality, I

10  suppose?                                                       02:01

11       A.    I imagine there are.

12       Q.    Is it your opinion that only

13  statistical evidence can prove materiality in an

14  FCA matter?

15       A.    I think that's really more a legal --    02:01

16  it sounds more like a legal question than a

17  statistics questions.

18       Q.    So you don't have any opinion on that

19  question?

20       A.    I think the possibilities could range   02:01

21  from a -- a legal standard, which basically

22  precludes or makes moot any kind of factual

23  investigation of a particular claim, to an

24  alternative legal standard where it's just the

25  opposite, where a particular claim would have to    02:02



ROY J. EPSTEIN, PH.D.                                    April 10, 2019
USA vs RITE AID                                                      152

1            permitted to present evidence?                    02:05

2   BY MR. SALAZAR:

3         Q.    In your statistical opinion -- from

4   your expert -- from your expertise, if we were to

5   ask you, Dr. Epstein, We would like to present      02:05

6   scienter not by statistical evidence, we're using

7   other evidence, are we -- are we okay with that?

8              MR. SMITH:   Same objection.

9              THE WITNESS:   I think it depends --

10        it sounds like it depends entirely on what    02:05

11        the legal -- on what -- on, legally, what

12        you have to show to prove scienter.

13  BY MR. SALAZAR:

14        Q.    I see.

15             So for -- with respect to this case,     02:06

16  do you have an opinion, or would you have the same

17  answer?

18        A.    At present -- those are two questions.

19  At present, I think I have the same opinion.   I

20  don't have an opinion, and it's the same answer:    02:06

21  The legal standard has to be clarified first.

22        Q.    So if the legal standard has to be

23  qualify -- clarified first -- by whom?

24        A.    Well, not by the statistician.

25        Q.    Not by the statistician.                02:06



1    statistically valid conclusion.
2           Do you see that?
3    A.    Yes.
4    Q.    Okay.  Are you talking about legal
5    evidence here?
6           MR. SMITH:  Vague.
7           THE WITNESS:  I'm just talking about
8       the types of information that would, I
9       think, potentially arise when you're
10      collecting information on the specific
11      claims in this case.
12   BY MR. SALAZAR:
13   Q.    Okay.  I see.
14          For the benefit of the evaluator in
15   the assessment of that particular sample claim?
16   A.    Right.
17   Q.    Okay.  And then when you use the term
18   "ambiguous" on Page 13 on the very top, what do
19   you mean by that?
20   A.    I can tell you from some of the
21   screenshots I looked at, sometimes it's hard to
22   decipher the handwriting.  So --
23   Q.    Let me tell you, it was really
24   difficult to read, yes.
25   A.    -- but, you know, the -- the

04:15
04:15
04:15
04:15
04:15
04:15
04:16



```
 1    California should treat that particular sample              04:24
 2    claim where the medication history profile for the
 3    prior years is no longer available?
 4              MR. SMITH:  Incomplete hypothetical.
 5              THE WITNESS:  I -- I really can't              04:24
 6         answer that.  I think the starting point is
 7         to see what information is available, and
 8         then if there are holes or gaps or open
 9         questions, then you have to think
10         what -- you know, what can you do.  And      04:25
11         that might be a case-by-case determination,
12         but I don't know right now.
13    BY MR. SALAZAR:
14         Q.    Okay.  Are you -- are you saying that
15    if the medication profile is incomplete for a        04:25
16    particular beneficiary, California should find
17    that the sample claim connected to that
18    beneficiary is not false?
19              MR. SMITH:  Misstates testimony --
20              THE WITNESS:  No, I --                        04:25
21              MR. SMITH:  -- incomplete
22         hypothetical.
23              THE WITNESS:  -- I -- I cannot -- I
24         really can't offer an opinion on what's a
25         false claim and what's not.                       04:25
```



ROY J. EPSTEIN, PH.D.                                    April 10, 2019
USA vs RITE AID                                                      253

1                 DEPOSITION ERRATA SHEET

2

3   Our Assignment No.:       J3695260

4   Case Caption:            United States v. Rite Aid

5                             Corporation

6

7

8         DECLARATION UNDER PENALTY OF PERJURY

9           I declare under penalty of perjury

10   that I have read the entire transcript of

11   my Deposition taken in the captioned matter

12   or the same has been read to me, and

13   the same is true and accurate, save and

14   except for changes and/or corrections, if

15   any, as indicated by me on the DEPOSITION

16   ERRATA SHEET hereof, with the understanding

17   that I offer these changes as if still under

18   oath.

19

20   Signed on the _14 ½_ day of

21   _May_____, 20_19___.

22

23   

24    ROY J. EPSTEIN, PH.D.

25

*Loyd F. Schmuckley, Jr., et al. v. Rite Aid Corporation*
USDC – E.D. of CA Case No. 2:12-cv-01699-KJM-EFB

**Roy J. Epstein, Ph.D.**
**April 10, 2019 Deposition Corrections**

| Page/Line | Correction |
|---|---|
| 10:6 | Change "Acts on" to "Act judgments on" |
| 34:19 | Add "final" after "the" |
| 66:23 | Change "No." to "No, the music case was not about the FCA." |
| 73:9 | Change "I think I" to "I think I'd" |
| 81:25 | Change "is-- may" to "is-- I may" |
| 88:8 | Delete "every -- those" before "every one of those 700-and-some" |
| 90:13 | Add "Evidence of the review could appear as a paper copy of the prescription or in another source." after "system." |
| 95:16 | Add "or noted on a paper copy of the prescription." after "sample." |
| 96:11 | Add "and all available information as to whether a Code 1 review was conducted." after "times." |
| 105:19 | Change "screening" to "screen" |
| 117:12 | Change "If the -- the" to "The" |
| 117:20 | Change "States" to "State's" |
| 124:6 | Change "incidents" to "incidence" |
| 159:11 | Change "authority" to "authorities" |
| 159:12 | Change "aren't" to "are" |
| 178:5 | Change "inadequate" to "adequate" |
| 182:18 | Change "No." to No, not with this example." |
| 190:24 | Change "even" to "taken" |
| 236:15 | Add "assuming it is allowed," after "sort," |

*Loyd F. Schmuckley, Jr., et al. v. Rite Aid Corporation*
USDC – E.D. of CA Case No. 2:12-cv-01699-KJM-EFB

**Roy J. Epstein, Ph.D.**
**April 10, 2019 Deposition Corrections**

Dated:  May 13, 2019          Signature: _____
                                                    Roy J. Epstein, Ph.D.

2

```
 1                  REPORTER'S CERTIFICATE

 2         I, Cindy L. Sebo, Federally Certified

 3    Shorthand Reporter, do hereby certify that the

 4    deponent was duly sworn and the foregoing testimony

 5    was reported by me and was thereafter transcribed

 6    with computer-aided transcription; that the foregoing

 7    is a full, complete, and true record of said

 8    proceedings.

 9         I further certify that I am not of counsel or

10    attorney for either or any of the parties in the

11    foregoing proceedings and caption named or in any way

12    interested in the outcome of the cause in said

13    caption.

14         The dismantling, unsealing, or unbinding of the

15    original transcript will render the reporter's

16    certificate null and void.

17         In witness whereof, I have hereunto set my hand

18    this day:  April 13, 2019.

19         XXXXX  Reading and Signing was requested.

20    _____  Reading and Signing was waived.

21    _____  Reading and Signing was not requested.

22

23    _____

24         Cindy L. Sebo, RMR/CRR/RPR/CSR/CCR/CLR/RSA

25              LiveLitigation Authorized Reporter
```

