XAVIER BECERRA
Attorney General of California
VINCENT DICARLO
Supervising Deputy Attorney General
BERNICE L. LOUIE YEW, State Bar No. 114601
Deputy Attorney General
E-mail:  Bernice.Yew@doj.ca.gov
EMMANUEL R. SALAZAR, State Bar No. 240794
Deputy Attorney General
E-mail:  Emmanuel.Salazar@doj.ca.gov
  2329 Gateway Oaks Drive, Suite 200
  Sacramento, CA 95833-4252
  Telephone:  (916) 621-1835
  Fax:  (916) 274-2929

*Attorneys for State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel.* LOYD F. SCHMUCKLEY, JR.,<br><br>                              Plaintiffs,<br><br>        v.<br><br>RITE AID CORPORATION,<br><br>                              Defendant. | 2:12-CV-1699 KJM EFB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT RITE AID CORPORATION'S PRIVILEGE LOGS SUBMITTED IN RESPONSE TO THE COURT'S FEBRUARY 26, 2020 BENCH RULING RE: IN CAMERA REVIEW** |
| STATE OF CALIFORNIA *ex rel.* LOYD F. SCHMUCKLEY, JR.,<br><br>                              Plaintiff,<br><br>        v.<br><br>RITE AID CORPORATION,<br><br>                              Defendant. | |

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………….. 3

INTRODUCTION……………………………………………………………………… 6

PRELIMINARY COMMENTS.................................................................................7

1.   After being ordered to submit documents for in camera review, Rite Aid withdrew 66 original claims of privilege as they lacked any support.................................. 7

2.   Rite Aid continues to disobey court orders by redacting portions in documents without explaining them in the privilege logs........................................................ 8

3.   Rite Aid continues to disobey court orders by failing to account for all meeting materials ....................................................................................................... 9

4.   Rite Aid's tactic regarding documents it claims are wholly privileged was inconsistent, making the review very difficult.................................................... 10

5.   Rite Aid's original list of 33 privileged documents grew to 148 (withdrawing privileges in some portions in 66 documents)..................................................... 11

STANDARD OF IN CAMERA REVIEW ............................................................. 12

1.   Attorney-Client Privilege ................................................................................. 13

        (a)      Where legal advice is sought............................................................. 13

        (b)      From a professional legal adviser in his capacity as such..................... 13

        (c)      The communications relating to that purpose...................................... 14

        (d)      Made in confidence .......................................................................... 14

        (e)      Unless the protection be waived ........................................................ 14

2.   Work-Product Doctrine ..................................................................................... 15

ANALYSIS ........................................................................................................ 16

1.   Meeting Minutes .............................................................................................. 16

        (a)      Original redactions lack merit ........................................................... 16

        (b)      Participants were not all attorneys, and not all attorneys provided legal advice ....................................................................................... 16

        (c)      Descriptions of business transactions are not legal advice ................. 19

        (d)      Regulatory, compliance, and litigation updates are not legal advice.................. 19

        (e)      Governance updates are not legal advice ........................................... 20

        (f)      Selection of topics to discuss in board or committee meeting is not work product................................................................................... 20

2.   Business Materials ........................................................................................... 21

3.   Regulatory, Compliance, Legal, and Litigation Updates.................................... 22

        (a)      Litigation Updates ............................................................................ 22

        (b)      Regulatory or Compliance Updates ................................................... 23

4.   Trainings and Presentations ............................................................................. 25

CONCLUSION................................................................................................... 26

1

**TABLE OF AUTHORITIES**

2

CASES

3

*Agster v. Maricopa Cty.*
    422 F.3d 836 (9th Cir. 2005).................................................................................12

4

*Burton v. R.J. Reynolds Tobacco Co.*
    170 F.R.D. 481 (D. Kas. 1997) ...............................................................................14

5

6

*Coastal States Gas Crp. v. Dep't of Energy*
    617 F.2d 854 (D.C. Cir. 1980) ................................................................................25

7

8

*Datel Holdings Ltd. v. Microsoft Corp.*
    2011 U.S. Dist LEXIS 30872 (N.D. Cal. Mar. 11, 2011) ........................................12

9

*Dawe v. Corr USA*
    2008 U.S. Dist. LEXIS 51122 (E.D. Cal. Apr. 23, 2008)........................................12

10

11

*Dolby Labs. Licensing Corp. v. Adobe Inc.*
    402 F. Supp. 3d 855 (N.D. Cal. 2019) ...................................................................18

12

13

*Erickson v. Biogen, Inc.*
    2019 U.S. Dist. LEXIS 120187 (W.D. Wash. 2019) ...............................................14

14

*Garcia v. City of El Centro*
    214 F.R.D. 587 (S.D. Cal. 2003)............................................................................15

15

16

*Holmgren v. State Farm Mut. Auto. Ins. Co.*
    976 F.2d 573 (9th Cir. 1992)..................................................................................15

17

18

*Hynix Semiconductor Inc. v. Rambus Inc.*
    U.S. Dist. LEXIS 11764 (N.D. Cal. Feb. 2, 2008)............................................12, 17

19

*In re Domestic Airline Travel Antitrust. Litig.*
    2020 U.S. Dist. LEXIS 121209 (D.C.D.C. Feb. 25, 2020).................................12, 17

20

21

*In re O'Keeffe*
    2016 U.S. Dist. LEXIS 53572 (D. Nev. 2016) .......................................................13

22

23

*In re Syngenta AG MIR 162 Corn Litig.*
    2017 U.S. Dist. LEXIS 44192 (D. Kas. 2017).............................................. *passim*

24

*In re Veiga*
    746 F. Supp. 2d 27 (D.C.D.C. 2010) .....................................................................11

25

26

*Kaiser Found. Health Plan Inc. v. Abbott Labs., Inc.*
    552 F.3d 1033 (9th Cir. 2009)................................................................................15

27

28

*Kintera, Inc. v. Convio, Inc.*
    219 F.R.D. 503 (S.D. Cal. 2003) ................................................................................15

*Kramer v. Raymond Corp.*
    1992 U.S. Dist. LEXIS 7418 (E.D. Penn. May 29, 1992) .......................................17

*Krueger v. Ameriprise Fin., Inc., LLC*
    2014 U.S. Dist. LEXIS 197161 (D. Minn. 2014) .....................................................13

*Oracle Am., v. Google, Inc.*
    2011 U.S. Dist. LEXIS 96121 (N.D. Cal. Aug. 26, 2011) .......................................12

*Ryskamp v. Looney*
    2011 U.S. Dist. LEXIS 98644 (D. Colo. Sep. 1, 2011) ...........................................23

*Simon v. G.D. Searle & Co.*
    816 F.2d 397 (8th Cir. 1987) ........................................................................14, 16, 17

*Sprint Communs. Co., L.P. v. Comcast Cable Commns., LLC*
    2014 U.S. Dist. LEXIS 16938 (D. Kan. 2014) ........................................................14

*Stevens v. CoreLogic, Inc.*
    2016 U.S. Dist. LEXIS 12420 (S.D. Cal. 2016) ................................................24, 25

*United States ex rel. Stone v. Rockwell International Corporation*
    144 F.R.D. 396 (D. Colo. 1992) ...............................................................................17

*United States v. Amlani*
    169 F.3d 1189 (9th Cir. 1999) ..................................................................................15

*United States v. Chevron Texaco Corp.*
    241 F. Supp. 2d 1065 (N.D. Cal. 2002) ......................................................... *passim*

*United States v. Graf*
    610 F.3d 1148 (9th Cir. 2010) ..................................................................................13

*United States v. Richey*
    632 F.3d 559 (9th Cir. 2011) ....................................................................................13

*United States v. Ruehle*
    583 F.3d 600 (9th Cir. 2009) ....................................................................................14

*Upjohn Co. v. United States*
    449 U.S. 383 (1981) ............................................................................................31, 21

*Von Bulow v. Von Bulow*
    811 F.2d 136 (2nd Cir. 1987) ..............................................................................6, 12

4

*Waymo, LLC v. Uber Tech., Inc.*
    2017 U.S. Dist. LEXIS 190125 (N.D. Cal. 2017)......................................................................12

*Wenzel v. Klamath Cty. Fire Dist. No. 1*
    2016 U.S. Dist. LEXIS 198529 (D. Or. 2016)...................................................... 8, 16, 17

*Wilstein v. San Tropai Condo. Master Ass'n*
    189 F.R.D. 371 (N.D. Ill. 1999)...................................................................................22

*Wit v. United Behavioral Health*
    2016 U.S. Dist. LEXIS 7242 (N.D. Cal. 2016).....................................................................21

**COURT RULES**

Fed. R. Civ. P. 26(b)(3).................................................................................................15

Fed. R. Civ. P. 26(b)(5).................................................................................................12

1

**INTRODUCTION**

2       Plaintiffs State of California  ("California") and Relator Loyd F. Schmuckley, Jr.

3    ("Relator," and together with  California, "Plaintiffs") submit this response to the 137-page

4    privilege log served on April 8, 2020 and 12-page supplemental privilege log served on June 22,

5    2020, that Defendant Rite Aid Corporation ("Rite Aid") submitted in response to the Court's

6    February 26, 2020 bench ruling and related minute orders, ECF Nos. 290, 295, 301, and 311.

7       In this matter, Plaintiffs allege that Rite Aid violated the federal and California False

8    Claims Acts (together, "FCA") by knowingly submitting false claims arising out of Code 1

9    violations.  *See* ECF No. 319, Order (denying Rite Aid's motion to exclude Plaintiffs' sampling

10   methodology) at 2.  Plaintiffs intended to prove the FCA element of scienter by showing that Rite

11   Aid "like an ostrich buried its head in the sand."  ECF No. 134, Order (denying Rite Aid's motion

12   to dismiss) at 8; ECF No. 319, Order at 11 ("[P]laintiffs will use 'universal' evidence applicable

13   to all false claims to prove the elements of materiality and scienter.").  In its defense, Rite Aid

14   denied, among other things, it had the requisite scienter and claimed it was only a "holding

15   company" that did not operate pharmacy business in California.  ECF No. 75, Complaint-in-

16   Intervention at ¶¶ 6, 107 (alleging "knowing" submissions); ECF No. 147, Amended Answer at

17   ¶¶ 6, 107 (denying allegations) and 13th Affirmative Defense (improper party).  Given the

18   parties' fundamental dispute, California set out to obtain relevant board meeting agendas,

19   minutes, tabs, binders, and appendices (collectively, "board materials") that would prove whether

20   Rite Aid as to Code 1 violations "buried its head in the sand" and whether it truly was a holding

21   company that did not operate pharmacy business in California.

22       Overall, as we have explained in California's pending motions for sanctions, ECF Nos.

23   275, 289, 303, 307, and as we shall further show below, Rite Aid continues its obfuscatory,

24   dilatory, and sanctionable conduct—this time, in making the review of its claimed privileges as

25   difficult as possible only to find that Rite Aid "construe[s] expansively a privilege, in

26   contravention of the search for truth, on the most meager of records."  *See Von Bulow v. Von*

27   *Bulow*, 811 F.2d 136, 146 (2nd Cir. 1987).

28

Before we address the substance of Rite Aid's privileges, Plaintiffs will first provide

preliminary comments on Rite Aid's productions and privilege logs.

## PRELIMINARY COMMENTS

**1.    After being ordered to submit documents for in camera review, Rite Aid withdrew 66 original claims of privilege as they lacked any support.**

During the meet-and-confer process, California had explained that a large portion of Rite

Aid's claims of privilege seemed overbroad and unsupported.  *See*, *e.g.*, ECF No. 288-3 at pp. 4-

5, Jan. 24, 2020 Letter from California to Rite Aid's counsel.  Rite Aid, however, declined to

further meet-and-confer about privileges, decided to file an opposition to the motion for

sanctions, ECF No. 286, and sternly held on to its claims of privilege.  Given Rite Aid's

insufficient earlier privilege logs and Rite Aid's sanctionable conduct, *see*, *e.g.*, ECF Nos. 273,

275, and 303, on February 26, 2020, the Court ordered Rite Aid to submit the purported

privileged materials for in camera review with declaration(s) showing factual and legal basis

supporting the asserted privileges.  Ordered to show its cards, Rite Aid had no choice but to

withdraw 66 original claims of privilege.  It unredacted select portions from 31 meeting agendas,

26 meeting minutes, and 9 tabs, and Rite Aid identified these withdrawals in their April 8, 2020

privilege log.[1]  Moreover, we find that Rite Aid also later unredacted other portions of certain

documents but failed to identify them in the privilege log.  They are:

- 4/13/2011 Board Meeting, Minutes, redaction in RA124192 to RA124193 was later unredacted in the 6/23/2011 Board Meeting, Tab 1, RA140619 to RA140620;

- 9/20-21/2011 Board Meeting, Minutes, redaction in RA118758 was later unredacted in the 1/18/2012 Board Meeting, Tab 1, RA127582;

- 9/18/2013 Board Meeting, Minutes, redaction in RA124234 was later unredacted in the 1/22/2014 Board Meeting, Tab 1, RA126307; and

---

[1] The 31 agendas were Ct. Binder Tab Nos. 1, 4, 7, 10, 14, 17, 19, 21, 23, 25, 28, 30, 32, 34, 37, 40, 42, 45, 48, 51, 54, 57, 60, 63, 65, 68, 71, 74, 77, 80, 83.  The 26 minutes were Ct. Binder Tab Nos. 2, 5, 8, 11, 15, 18, 20, 22, 24, 26, 29, 31, 33, 35, 38, 41, 43, 46, 49, 52, 55, 69, 72, 75, 78, and 81.  The 9 tabs were Binder Tab Nos. 50, 59, 70, 73, 79, 82, 142, 143 and 148.

- 4/16/2014 Board Meeting, Minutes, redaction in RA118764 was later unredacted in the 6/18/2014 Board Meeting, Tab 1, RA125507, and the redaction in RA118770 was later unredacted in the 4/8/2020 reproduction of RA118770.

A review of the unredacted documents confirms, as California earlier suspected, that Rite Aid's original claims of privilege lacked any support. To us, Rite Aid's original claims of privilege were made in bad faith as they were only geared to prevent Plaintiffs from discovering relevant information regarding, among other things, Rite Aid's corporate structure and scienter.

This misconduct also casts serious doubt on the legitimacy of Rite Aid's pending claims of privilege, as we shall explain further below. *See Wenzel v. Klamath Cty. Fire Dist. No. 1*, 2016 U.S. Dist. LEXIS 198529 at *16 (D. Or. 2016) ("[T]he complete absence of anything resembling a privileged communication in these disclosed documents raises questions as to the legitimacy of other claims for privilege contained in the log, especially when all the entries in the log purportedly fell under the exact same statements of privilege.").

Nevertheless, despite withdrawing its unsupported claims of privilege, Rite Aid failed to produce to Plaintiffs unredacted versions of two documents, which are as follows:

- 4/11/2007 Board Meeting, Agenda (Ct. Binder Tab No. 1); and
- 1/28/2015 Board Meeting, Minutes (Ct. Binder Tab No. 49).

The Court should order Rite Aid to produce these two documents, unredacted.

**2. Rite Aid continues to disobey court orders by redacting portions in documents without explaining them in the privilege logs.**

Rite Aid produced two documents with redactions but failed to explain in the privilege logs the factual and legal basis supporting the redactions. They are:

- 4/11/2012 Board Meeting, Tab 1, RA118799 (produced without claim of privilege); and
- 10/1/2014 Board Meeting, Minutes (Ct. Binder Tab No. 46), RA124247, middle of the page.

///
///

8

Because Rite Aid failed to comply with the orders requiring Rite Aid to provide the factual and legal basis supporting its claims of privilege, the Court should order Rite Aid to produce these two documents unredacting the portions where Rite Aid failed to support its redaction.

**3.    Rite Aid continues to disobey court orders by failing to account for all meeting materials.**

Rite Aid originally produced privilege logs on December 20, 2019, January 10, 2020, and February 8, 2020.  Instead of building from the original logs, Rite Aid submitted new privilege logs served on April 8, 2020 and June 22, 2020.  Since California had complained about the lack of organization in Rite Aid's past productions and in the privilege logs, making the earlier document review difficult, it would have been a sign of good faith if Rite Aid resequenced the entries in a more orderly way, such as by the board meeting date and as listed in the agenda; it did not.

In order to see whether Rite Aid complied with the court orders, California again had to spend significant time re-identifying the sequence and re-confirming the contents of the documents by the date of the board meetings (if knowable) and by their placement in their respective board meeting agenda (where available).  To us, Rite Aid's tactics made it very difficult to determine whether Rite Aid accounted for, i.e., produced to Plaintiffs or listed in a privilege log, all documents (tabs, exhibits, appendices, and binders) related to the board meetings, pursuant to prior Court orders.  Upon examination, with significant time and resources spent, California finds that Rite Aid failed to account for all related board materials, in contravention of Court orders, ECF Nos. 258, 301, and 311.

Rite Aid did not account for the following 6 materials:

- 9/20-21/2011 Board Meeting, Tab 1, Approval of Prior Minutes (only received one page, RA127014);

- 9/20-21/2011 Board Meeting, Tab 6, Executive Session, Election of Michael Regan, Lead Director, to Executive Committee, Board Composition and Electronic Board Books;

- 4/15/2015 Board Meeting, Tab 4, Nominating & Governance Committee Report;

1  •  4/15/2015 Board Meeting, Tab 5, Designate Date for 2015 Annual Meeting of
2  Stockholders;

3  •  4/15/2015 Board Meeting, Tab 7, Executive Session-Goals & Objectives; and

4  •  10/27-28/2015 Board Meeting, Tab 2, Project Victoria Update.

5  In addition, Rite Aid failed to account for the binders referenced in tabbed committee

6  meeting minutes approved by the Board of Rite Aid Corporation.  These binders were referenced

7  in the following 15 materials:

8  •  4/11/2007 Board Meeting, Tab 1 (Ct. Binder Tab No. 139);

9  •  1/21/2010 Board Meeting, Tab 1 (produced without claim of privilege);

10  •  4/14/2010 Board Meeting, Tab 1 (produced without claim of privilege;

11  •  4/13/2011 Board Meeting, Tab 1 (produced without claim of privilege);

12  •  6/23/2011 Board Meeting, Tab 1 (produced without claim of privilege);

13  •  6/20/2012 Board Meeting, Appx. (Ct. Binder Tab no. 94);

14  •  9/19/2012 Board Meeting, Appx. (Ct. Binder Tab No. 95);

15  •  4/17/2013 Board Meeting, Appx. (Ct. Binder Tab No. 101);

16  •  6/19-20/2013 Board meeting, Appx. (Ct. Binder Tab No. 133);

17  •  9/18/2013 Board Meeting, Appx. (Ct. Binder Tab No. 105);

18  •  1/22/2014 Board Meeting, Appx. (Ct. Binder No. 109);

19  •  4/16/2014 Board Meeting, Appx. (Ct. Binder No. 135);

20  •  6/18/2014 Board Meeting, Appx. (Ct. Binder No. 111);

21  •  10/1/2014 Board Meeting, Appx. (produced without claim of privilege); and

22  •  1/28/2015 Board Meeting, Appx. (Ct. Binder No. 115).

23  Because Rite Aid disobeyed the Court orders, the Court should order Rite Aid to produce the

24  above-listed materials without redaction.

25  **4.  Rite Aid's tactic regarding documents it claims are wholly privileged was
       inconsistent, making the review very difficult.**
26

27  The Court has admonished that "the mere fact that a document might contain some text

28  that's privileged doesn't give you the right to withhold the entire document." *See* ECF No. 272 at

10

PLS.' RESP. TO DEF.'S PRIVILEGE LOGS SUBMITTED IN RESP. TO
THE COURT'S FEB. 26, 2020 BENCH RULING RE: IN CAMERA REV.

1   12:25-13:3.  *See also United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D.

2   Cal. Mar. 25, 2002); *In re Veiga*, 746 F. Supp. 2d 27, 43, n. 19 (D.C.D.C. 2010) ("Respondent

3   should, at the bare minimum, be aware of his obligation to redact and produce non-privileged

4   portions of responsive documents.").  Notwithstanding, Rite Aid still broadly claimed privileges

5   by withholding or redacting entire documents when perhaps only few distinguishable parts of the

6   documents may seemingly be privileged.

7          Again Rite Aid's tactics seemed geared to complicate discovery and hide the truth.  Rite

8   Aid applied different approaches regarding documents it claims are "completely privileged."  In

9   some instances, Rite Aid assigned Bates stamp numbers and produced the document with whole

10  redactions of the entire document.  Such documents are listed in Appendix A.  In other instances,

11  Rite Aid did not assign any Bates stamp numbers and withheld the entire documents from

12  production to Plaintiffs.  *See, e.g.*, Ct. Binder Tab Nos. 3, 6, 9, 12, 13, 16, 27, 86, 87, 97, 107,

13  114, 118, 119, 121, 123, 124, 125, 129, 130, 131, 137, 144, 145, and 147.  These practices are

14  inconsistent and untenable when other similar materials show that Rite Aid can redact purportedly

15  privileged content and disclose non-privileged content.  *See, e.g.*, Ct. Binder Tab No. 53.  In some

16  of these materials, Rite Aid, in fact, kept "background" information clearly boxed away and

17  separate from "updates."  *Id.*

18         Furthermore, Rite Aid's privilege log lists "Previous Bates Nos.," where it indicates

19  "None" in many instances.  Rite Aid should have Bates stamped all the documents and also

20  supplied in its privilege log the Bates stamp numbers of the documents.  This would have made it

21  easier for the Plaintiffs to evaluate whether Rite Aid accounted for all board materials.  This

22  would also have made it easier for the Court to identify and order Rite Aid to produce specific

23  Bates stamp numbers or portions that do not merit any privilege, and, if so ordered, for Plaintiffs

24  to ensure that Rite Aid had complied with such an order.

25  **5.     Rite Aid's original list of 33 privileged documents grew to 148 (withdrawing
           privileges in some portions in 66 documents).**

26

27         Rite Aid failed to timely serve all privilege logs relating to agendas and minutes by the

28  court-ordered deadline of December 20, 2019.  ECF No. 260.  At that time, Rite Aid only listed

11

PLS.' RESP. TO DEF.'S PRIVILEGE LOGS SUBMITTED IN RESP. TO
THE COURT'S FEB. 26, 2020 BENCH RULING RE: IN CAMERA REV.

1   33 claims of privilege.  Rite Aid later listed more privileges on January 10, 2020, and on February

2   18, 2020.  After some clarification from the Court, Rite Aid again added more privilege claims on

3   April 8, 2020 and on June 22, 2020.  In sum, the total list grew to 148 claims of privilege

4   (withdrawing privileges in some portions in 66 documents).

5           The Court should find that Rite Aid's untimely production of privilege logs as originally

6   ordered to be completed on December 20, 2019, waived the privileges.  *See*, *e.g.*, *Waymo, LLC v.*

7   *Uber Tech.*, *Inc.*, 2017 U.S. Dist. LEXIS 190125 at *11-13 (N.D. Cal. 2017) (finding waiver of

8   privilege when defendant failed to timely assert privileges per court order).

9           We now turn to the substance of Rite Aid's pending claims of privilege.

10                          **STANDARD OF IN CAMERA REVIEW**

11          "Where there are federal question claims and pendent state law claims present, the federal

12   law of privilege applies." *Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005).  The party

13   claiming the privilege or protection has the burden to supply sufficient information to assess the

14   applicability of the privilege or protection without revealing the information which is privileged

15   or protected.  Fed. R. Civ. P. 26(b)(5)(A).  "That burden is not, of course, discharged by mere

16   conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the

17   existence of the relationship, and any spurious claims could never be exposed." *Von Bulow*, 811

18   F.2d at 146 (citation omitted).  A party risks waiving any asserted privileges if the assertions are

19   unsupported by a privilege log that complies with Rule 26(b)(5).  *Dawe v. Corr USA*, 2008 U.S.

20   Dist. LEXIS 51122 at *17 (E.D. Cal. Apr. 23, 2008).  In this regard, "[a] vague declaration that

21   states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the

22   document should be found privileged."  *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 U.S. Dist

23   LEXIS 30872 (N.D. Cal. Mar. 11, 2011) (quoting *Hynix Semiconductor Inc. v. Rambus Inc.*, U.S.

24   Dist. LEXIS 11764 at *21-22 (N.D. Cal. Feb. 2, 2008); *see also Oracle Am.*, *v. Google, Inc.*, 2011

25   U.S. Dist. LEXIS 96121 at *13 (N.D. Cal. Aug. 26, 2011) (finding an attorney's affidavit

26   insufficient to establish privilege where the attorney did not testify that the document was

27   "connected to the work he requested . . . as part of the provision of legal advice he describes in his

28   declaration"); *In re Domestic Airline Travel Antitrust. Litig.*, 2020 U.S. Dist. LEXIS 121209 at

1   *45 (D.C.D.C. Feb. 25, 2020) (finding problematic issues where proponent "fail[ed] to correlate

2   his declaration's wholly conclusory assertions of privilege—which are nothing more than empty

3   recitations of the applicable legal standard devoid of factual context—with any specific

4   communication or communications [citations omitted].").

5   **1.      Attorney-Client Privilege**

6       "A party asserting the attorney-client privilege has the burden of establishing the existence

7   of an attorney-client relationship and the privileged nature of the communication." *United States*

8   *v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).  "Because it impedes the full and free discovery of

9   the truth, the attorney-client privilege is strictly construed." *Id.*  The Ninth Circuit applies an

10  eight-factor test to determine whether communications are covered by the attorney-client

11  privilege: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his

12  capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by

13  the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the

14  legal adviser, (8) unless the protection be waived.  *Id.*

15          (a)     Where legal advice is sought

16      "The attorney-client privilege protects confidential communications between attorneys and

17  clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d

18  559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

19  "Confidential" does not equate to "privileged." *In re O'Keeffe*, 2016 U.S. Dist. LEXIS 53572 at

20  *11 (D. Nev. 2016) ("[A] general interest in protecting confidentiality does not equate to

21  privilege.").  "Underlying facts are not protected by the privilege." *Upjohn Co.*, 449 U.S. at 395-

22  396.  Simple editing or "word-smithing" by counsel is also not legal advice.  *See Krueger v.*

23  *Ameriprise Fin.*, *Inc.*, *LLC*, 2014 U.S. Dist. LEXIS 197161 at *38-39 (D. Minn. 2014).

24          (b)     From a professional legal adviser in his capacity as such

25      When communications for which the privilege has been asserted involve in-house counsel,

26  the entity asserting the privilege must make a clear showing that the speaker made the

27  communications for the primary purpose of obtaining or providing legal advice.  *See United*

28  *States v. Chevron Texaco Corp.*, 241 F. Supp. 2d at 1076.  Where a communication contains both

                                                13

1   legal advice and business advice, attorney-client protection only applies if the legal advice

2   predominates over the business advice; the privilege does not apply where legal advice is merely

3   incidental to business advice.  *Id.*  Moreover, where a given communication contains both

4   privileged and non-privileged information, the party asserting the privilege may bear the burden

5   of "segregat[ing] the privileged information from the non-privileged information."  *Id.*

6              (c)        The communications relating to that purpose

7         "[N]either the acts or services performed by an attorney during the course of his

8   representation, nor the scope of representation, are within the attorney-client privilege because

9   they are not 'communications.'"  *Sprint Communs. Co.*, *L.P. v. Comcast Cable Commns.*, *LLC*,

10   2014 U.S. Dist. LEXIS 16938 at *21 (D. Kan. 2014).  General topics of attorney-client

11   discussions and ultimate "legal conclusions" of counsel are not protected.  *Id.* at *22-24; *Erickson*

12   *v. Biogen*, *Inc.*, 2019 U.S. Dist. LEXIS 120187 at *7 (W.D. Wash. 2019) ("The topic is not, in

13   and of itself, protected from questioning under the attorney-client privilege").  Thus, for example,

14   the subject matters of an in-house attorney's discussions with company executives are not

15   privileged.  *Sprint Communs. Co.*, *L.P.*, 2014 U.S. Dist. LEXIS 16938 at *21.

16         Moreover, the mere fact that a communication is made directly to an attorney, or an

17   attorney is copied on a memorandum, does not mean that the communication is necessarily

18   privileged.  *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403-404 (8th Cir. 1987).  Notably, the

19   attorney-client privilege does not protect client communications that relate only to business or

20   technical data.  *Id.*

21              (d)        Made in confidence

22         "Drafts of documents to be submitted to third parties, although prepared by counsel, are not

23   generally privileged.  Submission of the document to the third party removes any cloak of

24   privilege."  *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kas. 1997).

25              (e)        Unless the protection be waived

26         The transmission of a communication to a party outside the attorney-client relationship

27   destroys the confidentiality of the communication and therefore the privilege may not be invoked

28   as to that communication.  *See United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009).  The

1   burden of showing that the privilege has not been waived remains with the party claiming the

2   privilege.  "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if

3   the client discloses the substance of an otherwise privileged communication to a third party.'"  *In*

4   *re Syngenta AG MIR 162 Corn Litig.*, 2017 U.S. Dist. LEXIS 44192 at *211-214 (D. Kas. 2017)

5   (citations omitted).

6       Moreover, the attorney-client privilege may be implicitly waived "[w]here a party raises a

7   claim which in fairness requires disclosure of the protected communication."  *Kaiser Found.*

8   *Health Plan Inc. v. Abbott Labs.*, *Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009) (quoting *Chevron*

9   *Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)).  The Ninth Circuit employs a three-

10  part test to determine whether an implied waiver of the attorney-client privilege has occurred:

> First, the court considers whether the party is asserting the "privilege as the result of some affirmative act, such as filing suit."  Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue."  Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense."

15  *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (citations omitted) (quoting *Home*

16  *Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)).

17  **2.       Work-Product Doctrine**

18      The work-product doctrine is a qualified immunity which protects from discovery

19  documents and tangible things prepared by a party or that party's representative in anticipation of

20  litigation. Fed. R. Civ. P. 26(b)(3); *Kintera*, *Inc. v. Convio*, *Inc.*, 219 F.R.D. 503, 507 (S.D. Cal.

21  2003). "The primary purpose of the work product rule is to 'prevent exploitation of a party's

22  efforts in preparing for litigation.'"  *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573,

23  576 (9th Cir. 1992).  Nevertheless, while work product immunity protects documents and tangible

24  things, it generally does not protect the underlying facts contained within the document or

25  tangible thing.  *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003).

26  ///

27  ///

28

15

**ANALYSIS**

**1.     Meeting Minutes**

This category concerns 53 board materials: Ct. Binder Tab Nos. 2, 5, 8, 11, 15, 18, 20, 22, 24, 26, 29, 31, 33, 35, 38, 41, 43, 46, 49, 52, 55, 58, 61, 64, 66, 69, 72, 75, 78, 81, 84, 89, 92, 96, 99, 103, 106, 108, 112, 113, 116, 117, 120, 122, 124, 125, 126, 127, 128, 130, 131, 132, and 139. It also concerns 9 committee meeting materials: Ct. Binder Tab Nos. 94, 95, 101, 105, 109, 111, 115, 133, and 135.  All of which, we believe, do not contain anything relating to the seeking or rendering of legal advice.  The Court therefore should order that Rite Aid produce them without redaction.

(a)     <u>Original redactions lack merit</u>

As previously mentioned, Rite Aid originally redacted portions on all minutes and, when ordered to submit for in camera review, withdrew certain portions because, as it turns out, the redactions did not at all merit a privilege.  The originally redacted contents were simple descriptions of acts of corporate officers—some of which are not even lawyers, general topics, or underlying facts.  None of which constitute confidential communication of legal advice.  E.g., on Ct. Binder Tab No. 2, RA124168, Rite Aid originally redacted and later unredacted "status and development of legal matters," and on Ct. Binder Tab No. 5, on RA124187, Rite Aid originally redacted and later unredacted

> Ms. Sammons called on Mr. Bellezza who proceeded to review the regulatory compliance update as reflected in Tab 2 of the Board meeting presentation binder and to comment on the various committees and subcommittees guiding and overseeing the Company's compliance efforts.  Mr. Strassler provided an update with respect to litigation.

These examples are widespread in the materials and therefore cast serious doubt about the legitimacy of Rite Aid's pending claims of privilege.  *See Wenzel*,  2016 U.S. Dist. LEXIS 198529 at *16.

(b)     <u>Participants were not all attorneys, and not all attorneys provided legal advice.</u>

Minutes of meetings attended by attorneys are not automatically privileged and business documents sent to attorneys are not automatically protected.  *Simon v. G.D. Searle & Co.*, 816

16

F.2d at 403.  The fact that a client chose to channel the work through an attorney rather than through non-legal personnel does not provide the basis for a claim of privilege.  *United States ex rel. Stone v. Rockwell International Corporation*, 144 F.R.D. 396 (D. Colo. 1992).  When an attorney is merely acting as a conduit for information, the privilege does not apply.  *Id.*  Involvement of attorneys in daily business operations, employment decisions, and budgeting exceed the scope of protected "legal counsel" communications.  *See Wenzel*, 2016 U.S. Dist. LEXIS 198529 at *14-15.

When a communication may relate to both legal and business advice, the proponent of the privilege must make a "clear showing" that the "primary purpose" of the communication was securing legal advice.  *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d at 1076.  In these circumstances, the proponent of the privilege should distinguish the legal and business purposes of the document at issue.  *Hynix*, 2008 U.S. Dist. LEXIS 11764 at *20-21; *see also In re Domestic Airline Travel Antitrust. Litig.*, 2020 U.S. Dist. LEXIS 121209 at *34-35 (listing problematic issues with insufficient declarations invoking privileges); *Wenzel*, 2016 U.S. Dist. LEXIS 198529 at *15-16 (finding blanket statements do not provide enough information that communications related to seeking or providing legal advice as the primary purpose as opposed to routine business operations and compliance discussions).  As stated, because of the resulting obstruction to the truth-finding process, the attorney-client privilege is thus construed narrowly.  "This is especially so when a corporate entity seeks to invoke the privilege to protect communications to in-house counsel."  *Kramer v. Raymond Corp.*, 1992 U.S. Dist. LEXIS 7418 at *1 (E.D. Penn. May 29, 1992).

Here, the sole proffered declaration of Mr. Ron Chima provides no help.  In fact, Rite Aid fails to apprise the Court that Rite Aid Corporation's purported in-house attorneys or general counsel, such as Robert Sari, Marc Strassler, and James Comitale, served as secretaries of Rite Aid Corporation and as executive officers (e.g., vice president, secretary or treasurer) of its

///

///

///

17

1  subsidiaries, Thrifty Payless, Inc., and/or Rite Aid Hdqtrs. Corp.[2]  Salazar Decl., Exh. A,

2  RA003728, RA003736, RA003749, RA003760, RA003891, RA003894, RA003900, RA004010,

3  RA004664, RA124439, RA124442, RA124443, RA124445, RA124446, RA124447, RA124453,

4  RA124454 (listing James Comitale as Vice President & Assistant Secretary, as well as board

5  director of Rite Aid Hdqtrs. Corp. and Thrifty Payless, Inc.); RA003746, RA003891, RA004010,

6  RA124438, RA124447 (listing Marc Strassler as Senior Vice President & Assistant Secretary of

7  Rite Aid Hdqtrs. Corp.); RA003752, RA003756, RA003900, RA003906 (listing Robert Sari as

8  Vice President and Secretary of Rite Aid Hdqtrs. Corp. and/or Vice President of Thrifty Payless,

9  Inc.); RA124445, RA124453 (listing Marc Strassler as Executive Vice President, General

10  Counsel and Secretary of Rite Aid Corporation).  As the Court knows, Rite Aid has admitted on

11  the record that Rite Aid Hdqtrs. Corp. and Thrifty Payless, Inc. do not hold their own board

12  meetings.  ECF No. 293 at 33:12-35:1.

13      From these facts and Rite Aid's withdrawn redactions, and with no "clear showing" that

14  contents related to legal and not business advice, we may reasonably infer that these corporate

15  officers reported to Rite Aid Corporation's board and committees primarily about the business

16  affairs of Rite Aid's national and California pharmacy business, and not about any legal advice.

17  As for corporate secretaries who also serve as general counsel, these officers attended board and

18  committee meetings to take minutes and participate as board directors, and not necessarily as

19  lawyers giving legal advice.  Finally, while Rite Aid's Chief Compliance Officer Anthony

20  Belleza, Chima Dec., ¶ 5, may have relayed legal advice from in-house counsel in certain

21  undisclosed circumstances, that possible fact alone may not be used to cloak all other different

22  situations under the attorney-client privilege.  *See Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402

23  F. Supp. 3d 855, 873 (N.D. Cal. 2019).

24  ///

25

26  ---

[2] Declarant Mr. Chima did not apprise the Court that he is also currently a Vice President of
Thrifty Payless, Inc.  Declaration of Emmanuel R. Salazar ("Salazar Decl."), filed concurrently herewith,
27  Salazar Decl. Exh. A, RA003732.  While Mr. Chima describes himself being employed as Rite Aid
Hdqtrs. Corp.'s Vice President, Litigation & Commercial Law, board resolutions do not appear to identify
28  him as such.  He is simply noted as "Vice President."  *Id.*, Exh. A, RA003728.

18

1          (c)     <u>Descriptions of business transactions are not legal advice.</u>

2          Rite Aid also asserted the attorney-client privilege for what appears to be descriptions of

3    business transactions that do not contain legal advice.  The implicated materials are listed in

4    Appendix B.

5          All of these redactions, we believe, relate to descriptions of business transactions, which,

6    while may be sensitive and confidential, are not privileged communications of legal advice.  In

7    our view, the parties' stipulated protective order, ECF No. 185, affords Rite Aid adequate

8    protections for confidential, proprietary, or private information contained in these minutes.

9          (d)     <u>Regulatory, compliance, and litigation updates are not legal advice.</u>

10         Rite Aid claimed many privileges relating to regulatory, compliance and litigation updates.

11   Based on Rite Aid's withdrawal of previously asserted privileges and given the composition of

12   the board, which includes attorneys who primarily serve as secretaries of the board or corporate

13   officers of its subsidiaries, Thrifty Payless, Inc., and Rite Aid Hdqtrs. Corp., we believe that many

14   of these redactions do not pertain to privileged attorney communications relating to the seeking or

15   rendering of legal advice.  Rather, they simply are descriptions of acts of attorneys or officers,

16   underlying factual and business information, and topics of discussions.  Without relating to legal

17   advice, they are not privileged.  *In re Sygenta AG MIR 162 Corn Litig.*, 2017 U.S. Dist. LEXIS

18   44192 at *218.

19         Moreover, Rite Aid generally asserted that these regulatory, compliance, and litigation

20   updates were prepared by, in conjunction with, and at the direction of assorted attorneys,

21   including in-house and outside counsel.  In support, Rite Aid provided Mr. Chima's declaration,

22   which failed to supply any identities of attorneys who purportedly directed any legal advice to be

23   transmitted to the board, failed to show whether these updates were kept confidential, failed to

24   demonstrate whether they were made for the purpose of providing legal advice, and failed to

25   clearly show that the primary purpose of the communication is to render legal advice and not

26   business advice.  Without more, we believe Rite Aid failed to meet its burden of establishing the

27   attorney-client privilege.  *See also A&R Body Specialty & Collission Works*, *Inc. v. Progressive*

28   *Cas.*  at *16 (finding "Legislative, Regulatory & Legal" updates were not privileged).

19

The implicated Ct. Binder Tab Nos. and Bates stamp numbers, where available, of minutes that contain purportedly privileged discussions of regulatory, compliance and litigation updates are listed in Appendix C.  The Court should order these produced without redaction.

(e)     Governance updates are not legal advice.

Likewise, updates relating to purported governance matters do not appear to relate to the seeking or rendering of legal advice.  We list disputed portions of minutes that contain governance updates in Appendix D.  We believe these redactions are not privileged, and the Court should order their production without redaction.

(f)     Selection of topics to discuss in board or committee meeting is not work product.

Rite Aid asserted the work-product protection based on the selection of topics for board or committee discussions in Ct. Binder Tab Nos. 2, 15, 18, 20, 22, 24, 29, 31, 33, 38, 41, 43, 46, 49, 52, 61, 66, 69, 72, 75, 94, 95, 105, 111, 115, 117, 126, 127, and 139.  In support, Mr. Chima declares that Rite Aid Corporation's "legal team exercises discretion in selecting particular matters and issues for presentation and discussion with the board, an activity that reflects the mental impressions of Rite Aid's in-house counsel as to the relative importance and significance of the legal and regulatory matters facing the company."  Apr. 8, 2020 Chima Decl., ¶ 9.

Mr. Chima, however, fails to explain how the selection of discussion matters for the board or its committees is in anticipation of litigation.  In fact, he admitted that the exercise of any such discretion in selecting topics for board or committee discussion is "because of the limited time available."  Apr. 8, 2020 Chima Decl., at 3:10.  These therefore were administrative choices, and they do not reflect any attorney impressions in anticipation of litigation.

Even if the selection of discussion topics was work product, Rite Aid has impliedly waived its protection by putting corporate scienter at issue.  We therefore believe that Rite Aid's claim of work product protection here seems geared to deny Plaintiffs the ability to discover whether Rite Aid had the requisite scienter.  Plaintiffs are entitled to discover whether Rite Aid Corporation knew about the pervasive Code 1 violations in California stores.  Alternatively, Plaintiffs are entitled to discover whether Rite Aid officers or committees were delegated and assigned to manage Code 1 compliance and withheld inculpatory information from the board to protect Rite

20

1  Aid Corporation from liability.  Or, as Mr. Chima's Declaration implies, to avoid wasting the

2  board's time, officers or committees did not bring up "relatively unimportant matters," which, for

3  some reason to Rite Aid, may include the Medi-Cal Code 1 program.  These facts would shed

4  light whether Rite Aid "buried its head in the sand," and Plaintiffs are entitled to discover them.

5  Furthermore, Rite Aid Corporation asserts as an affirmative defense that it is only a holding

6  company that does not own or operate any pharmacy business in California.  At minimum,

7  therefore, information relating to the various subject matters that Rite Aid Corporation discussued

8  in these meetings would be relevant to prove or disprove Rite Aid Corporation's affirmative

9  defense, and it will be grossly unfair to Plaintiffs if Rite Aid Corporation is allowed to hide these

10  facts by claiming that the work-product doctrine protects from disclosure the subject matters

11  submitted to the board.

12  The Court should therefore reject Rite Aid's argument relating to work product here and

13  order Rite Aid to produce the pertinent materials without redaction.

14  **2.     Business Materials**

15  "The privilege does not protect an attorney's business advice."  *United States v. Chevron*

16  *Texaco Corp.*, 241 F. Supp. 2d at 1076.  Corporations may not conduct their business affairs in

17  private simply by staffing a transaction with attorneys.  *Id.* (citing *In re Fischel*, 557 F.2d 209,

18  211 (9th Cir. 1977).  With respect to outside counsel, the mere fact that they were copied does not

19  shield communications not made for the purpose of legal advice.  *Id.* at 1075.

20  As for in-house counsel, because they may operate in a purely or primarily business

21  capacity in connection with many corporate endeavors, the presumption that attaches to

22  communications with outside counsel does not extend to communications with in-house counsel.

23  *Id.* at 1076.  Underlying business transactions or status updates are simply facts that are not

24  privileged legal advice.  *Upjohn Co.*, 449 U.S. at 395-396; *Wit v. United Behavioral Health,* 2016

25  U.S. Dist. LEXIS 7242 at *11-12 (N.D. Cal. 2016) ("Communications with in-house counsel

26  relating only to the business operations of the company are not protected by the attorney-client

27  privilege.").  "When the ultimate corporate decision is based on both a business policy and a legal

28  evaluation, the business aspects of the decision are not protected because legal considerations are

21

1    also involved." *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371 (N.D. Ill. 1999)

2    (citing *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976).

3        Moreover, because some of these business materials were shared with third-parties, such as

4    Citi Bank, Ct. Binder Tab No. 136, they were not kept confidential.  Nonetheless, while these

5    business materials may contain confidential, sensitive, or proprietary statements, they are not

6    privileged; a protective order, such as ECF No. 185, may afford adequate protection.

7        Rite Aid's business materials purportedly containing privileged content are listed in

8    Appendix  E.  We ask the Court to reject the claims of privilege therefor, and order Rite Aid to

9    produce them without redaction.

10   **3.        Regulatory, Compliance, Legal, and Litigation Updates**

11       Rite Aid expansively assserts privilege over many materials that contain a mix of

12   "regulatory," "compliance," "legal," and "litigation" updates.  We incorporate the same concerns

13   discussed in Parts 1.b. and 1.d. of the Analysis and further contend that these materials are not

14   privileged.

15       Preliminarily, Plaintiffs (attempted as best we can to) separate litigation updates from

16   regulatory or compliance updates, and we address each in turn.

17       (a)        Litigation Updates

18       Plaintiffs list the disputed materials containing purportedly privileged litigation updates in

19   Appendix F.

20       Plaintiffs believe that these redactions concerning litigation updates pertain to underlying

21   facts and general topics that are not confidential communications of legal advice.  Based on Rite

22   Aid's withdrawn redactions, the unredacted contents were nothing but simple factual updates of

23   how legal matters were progressing.  Furthermore, regulatory updates, without application to the

24   particular circumstnaces of a corporation, are not legal advice.  *In re Sygenta AG MIR 162 Corn*

25   *Litig.*, 2017 U.S. Dist. LEXIS 44192 at *218.

26       In addition, by their very nature, unless under seal, case proceedings are publicly known.

27   Rite Aid, in fact, provides updates to the SEC and their shareholders about ongoing legal

28   proceedings.  *See*, *e.g.*, Rite Aid Corp. 10-K Filing, available at https://secureir.edgar-

1  online.com/riteaid/fetchFilingFrameset.aspx?FilingID=13376367&Type=HTML&filename=RIT

2  E_AID_CORP_10K_20190425, at pp. 129-135, last accessed on Jul. 19, 2020).[3]  This publicly

3  available report shows that the contents in the board materials are not confidential

4  communications relating to the seeking or rendering of legal advice.

5      The Court should therefore order that Rite Aid produce unredacted versions of these

6  materials that contain litigation updates that render no legal advice.

7      (b)      Regulatory or Compliance Updates

8      Plaintiffs list disputed materials purportedly containing privileged regulatory or compliance

9  updates in Appendix G.  We dispute Rite Aid's claim that they are privileged.

10     First and foremost, statutory, regulatory, or compliance updates, without application to the

11  circumstances of the corporation as a client, do not constitute privileged confidential

---

[3] To illustrate, in its April 25, 2019 10-K filing, Rite Aid Corporation reported:

In June 2013, the Company was served with a Civil Investigative Demand ("CID") by the United States Attorney's Office for the Eastern District of California (the "USAO") regarding (1) the Company's Drug Utilization Review ("DUR") and prescription dispensing protocol; and (2) the dispensing of drugs designated as "Code 1" by the State of California. The Company cooperated with the investigation, researched the government's allegations, and refuted the government's position. The Company produced documents including certain prescription files related to Code 1 drugs to the USAO's office and the State of California Department of Justice's Bureau of Medical Fraud and Elder Abuse ("CADOJ"). In August 2014, the USAO and 8 states' attorneys general declined to intervene in a California False Claim Act ("FCA") action ("Action") filed under seal in the Eastern District of California by qui tam plaintiff Loyd F. Schmuckley ("Relator") based on DUR and Code 1 allegations. In July 2016, the Commonwealth of Massachusetts and the District of Columbia also declined to intervene in the Action. On May 15, 2017, Relator and the CADOJ stipulated to dismiss all DUR-related claims and 18 other state-based claims. On September 21, 2017, the CADOJ filed a sealed complaint-in-intervention in the Action, asserting causes under the FCA, for unjust enrichment and for payment by mistake related to the Code 1 allegations. The Action was unsealed on September 26, 2017. On September 28, 2017, Relator filed a First Amended Complaint under the FCA also concerning the Code 1 allegations. The Company filed a motion to dismiss Relator's and CADOJ's respective complaints in January 2018, the hearing was held on March 23, 2018. On September 5, 2018, the court issued an order denying the motion to dismiss. The case is proceeding with the first stage of discovery, which focuses on plaintiffs' proposed sampling methodology for determining liability and damages. The Company's motion challenging plaintiffs' proposed sampling methodology will be filed in April 2019, and is scheduled to be heard in June 2019. At this stage of the proceedings, the Company is not able to either predict the outcome of this matter or estimate a potential range of loss with respect to this matter and is vigorously defending this lawsuit.

*Id.* at pp. 132-133.

23

1  communications rendering or seeking legal advice.  *In re Sygenta AG MIR 162 Corn Litig.*, 2017

2  U.S. Dist. LEXIS 44192 at *218.  Mr. Chima's declaration fails to ascertain that these such

3  regulatory or compliance updates concerned the "formulation of legal strategy regarding

4  regulatory compliance issues" applied specifically to Rite Aid's pharmacy chain business.  *See*

5  *Ryskamp v. Looney*, 2011 U.S. Dist. LEXIS 98644 at * 25 (D. Colo. Sep. 1, 2011).

6       Second, regulatory or compliance policies that serve as a reference or instructional guide to

7  corporate employees, even if based on the advice of legal counsel, is primarily a "business"

8  policy rather than a "legal" policy.  *Stevens v. CoreLogic, Inc.* 2016 U.S. Dist. LEXIS 12420 at *

9  12 (S.D. Cal. 2016) (citing *In re Domestic Drywall Antitrust Litig.*, 2014 U.S. Dist. LEXIS

10  144263 (E.D. Penn. Oct. 9, 2014).  Thus here, while Rite Aid Corporation asserts that it is only a

11  "holding company" without pharmacy operations in California, board materials show that Rite

12  Aid remained abreast of compliance updates relating to pharmacy operations nationwide and in

13  many states, including California.  From these updates, Rite Aid developed pharmacy compliance

14  policies that pharmacy associates, including technicians and pharmacists, consult and follow

15  consistent with Rite Aid's pharmacy chain business model.  Plaintiffs therefore believe these

16  regulatory and compliance updates were nothing but updates in operating Rite Aid's pharmacy

17  chain business.

18       Third, Plaintiffs question whether these updates were truly provided by attorneys in their

19  capacities as legal advisers.  Other than with impermissibly conclusory statements, Mr. Chima's

20  declaration fails to provide specific identities of attorneys who supposedly wrote pr supplied these

21  updates.  Based on documents received thus far, we believe that Rite Aid officers and employees,

22  who were non-attorneys, actually developed Rite Aid's compliance policies for use throughout

23  the pharmacy chain.  These non-attorney officers and employees consulted with the various

24  federal programs, state pharmacy boards, and state Medicaid programs, such as the California

25  Department of Health Care Services ("DHCS").  For example, as to the Code 1 regulations,

26  compliance policies distributed to pharmacy associates in California stores were written by Rx

27  Operations Manager Scott Jacobson, Vice President of Pharmacy Operations Michael Podgurski,

28  Directors of Third Party Audits Jack Huston and Bruce Anderson, and Vice President of

24

1    Pharmacy Operations Dan Miller, all of whom, we believe, are non-lawyers.  Thus, since Mr.

2    Chima's declaration fails to provide specific identities of lawyers, we highly question whether

3    these such regulatory or compliance updates truly came from attorneys.

4         Fourth, we believe these regulatory or compliance updates are also stored in Rite Aid's

5    "intranet" or "portal," widely available to the whole national pharmacy chain, including lower-

6    level pharmacy associates.  *See Stevens v. CoreLogic, Inc.*, 2016 U.S. Dist. LEXIS 12420 at *15.

7    Plaintiffs therefore question whether these such updates satisfy the "made in confidence" element

8    of the Ninth Circuit's eight-factor test.  *See id.* at *13-15.

9         Based on the foregoing, Plaintiffs therefore ask the Court to order Rite Aid to produce these

10   materials without redaction.

11   **4.       Trainings and Presentations**

12        Rite Aid asserted privileges concerning trainings and presentations made to the board by

13   outside counsel.  The materials relate to Ct. Binder Tab Nos. 86, 87, 97, 107, 114, 118, 119, 121,

14   and 123.

15        Similar to regulatory updates, trainings and presentations are not privileged unless they are

16   applied to the company's circumstances.  *In re Sygenta AG MIR 162 Corn Litig.*, 2017 U.S. Dist.

17   LEXIS 44192 at *218.

18        Even if the court finds upon inspection that the redacted material did in fact consist entirely

19   of legal advice to the members of Rite Aid's board concerning compliance, Rite Aid has failed to

20   carry its burden of showing that Rite Aid protected the confidentiality of the training materials (if

21   true).  Failure to protect privileged documents from general dissemination within the

22   organization, including their use as training materials for lower level employees, would have

23   waived the privileged.  *Coastal States Gas Crp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir.

24   1980) ("Not only has the DOE failed to affirmatively establish confidentiality, but the evidence

25   shows no attempt whatsoever to protect these memoranda within the agency.  The agency has

26   admitted that it does not know who has had access to the documents, and there is undisputed

27   testimony that at least in some regions, copies of the memoranda were circulated to all area

28   offices, filed and indexed for future use, relied on as precedent and used as training materials for

1   new personnel."). Rite Aid's use of the word "training" here seems questionable. One does not

2   normally speak of "training" a board of directors. The Court should therefore consider whether

3   some or all of what was actually presented may actually have been training materials that were

4   used for "precedent and to train lower level employees."

5         In this regard, we believe these presentations were made available to third parties, and not

6   necessarily in confidence specifically requested by or provided to Rite Aid. For example, Rite

7   Aid asserts privilege over a presentation on the New York Office of Medicaid Inspector General

8   ("OMIG") by attorney Eric Sitarchuk of Morgan Lewis, whose websiste,

9   https://www.morganlewis.com/-/media/files/publication/lawflashclient-alert/litigation-

10  lawflash/lit_nyhealthcareindustry_lf_11feb10.pdf (last accessed on Jul. 19, 2020), however,

11  published what appears to have the same content marketed to the public and corporate clients,

12  such as Rite Aid.

13        Finally, trainings or presentations on fraud, waste, and abuse, are relevant to show Rite

14  Aid's requisite scienter. To participate in Medicaid, a provider agrees not to "engage in or

15  commit fraud or abuse." *See*, *e.g.*, ECF No. 318-3, at 9, ¶ 14. Plaintiffs believe these trainings

16  would establish that Rite Aid at minimum knew about its obligations as a Medicaid pharmacy

17  provider to so not engage in or commit fraud or abuse. Yet, it did not consider that its profit-

18  motivated nationwide policies, such as prescription quotas and 15-minute dispensing

19  requirements, actually led pharmacy associates to recklessly disregard Code 1 requirements,

20  resulting in the submission of thousands of false claims to Medi-Cal.

21                              **CONCLUSION**

22        Continuing its obfuscatory, dilatory, and sanctionable conduct, almost all of Rite Aid's

23  assertions of privilege are too expansive yet unsupported by facts and law. Plaintiffs therefore

24  request that the Court order Rite Aid Corporation to produce the disputed materials without

25  redaction.

26  ///

27  ///

28  ///

Respectfully submitted,

Dated: 7/20/2020

XAVIER BECERRA
Attorney General of the State of California

By  */s/ Emmanuel R. Salazar*

Emmanuel R. Salazar
Deputy Attorney General
Attorneys for Plaintiff-Intervenor
STATE OF CALIFORNIA

Dated: 7/20/2020

BARTLETT BARROW LLP

By  */s/ Jennifer Bartlett* (as authorized on 7/20/2020)

Jennifer L. Bartlett
BARTLETT BARROW LLP
225 S. Lake Avenue, Suite 300
Pasadena, California  91101-3009
Tel: (626) 432-7234
E-mail: jennifer@bartlettbarrow.com
www.bartlettbarrow.com
Attorneys for *Qui Tam* Plaintiff
LOYD F. SCHMUCKLEY, JR.

1

**PROOF OF SERVICE OF DOCUMENT**

2

I am over the age of 18 and not a party to this action.  My business address is:  2329 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833.

3

4

A true and correct copy of the foregoing document entitled:

5

**PLAINTIFFS' RESPONSE TO DEFENDANT RITE AID CORPORATION'S PRIVILEGE LOGS SUBMITTED IN RESPONSE TO THE COURT'S FEBRUARY 26, 2020 BENCH RULING RE: IN CAMERA REVIEW**

6

7

was served in the manner stated below:

8

**SERVED BY CM/ECF SERVICE**:  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 135, on 7/20/2020, I served the following persons and/or entities by the Court's CM/ECF service:

9

Eric W. Sitarchuk
Kelly A. Moore

10

Benjamin P. Smith
Ryan P. McCarthy

11

Kevin Papay
Morgan, Lewis & Bockius, LLP

12

One Market, Spear Street Tower
San Francisco, CA 94105-1596

13

Catherine J. Swann

14

United States Attorney's Office
501 I Street, Suite 10-100

15

Sacramento, CA 95814

16

Michael L. Armitage
Wm. Paul Lawrence

17

Charles S. Segal
c/o Waters & Kraus

18

3141 Hood Street, Suite 700
Dallas, TX 75219

19

Jennifer L. Bartlett

20

Brian P. Barrow
Bartlett Barrow LLP

21

225 S. Lake Avenue, Suite 300
Pasadena, CA 91101

22

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

23

24

7/20/2020          Emmanuel R. Salazar          */s/ Emmanuel R. Salazar*

25

_Date_                  _Printed Name_                  _Signature_

26

27

28