XAVIER BECERRA
Attorney General of California
VINCENT DICARLO
Supervising Deputy Attorney General
BERNICE L. LOUIE YEW, State Bar No. 114601
Deputy Attorney General
E-mail:  Bernice.Yew@doj.ca.gov
EMMANUEL R. SALAZAR, State Bar No. 240794
Deputy Attorney General
E-mail:  Emmanuel.Salazar@doj.ca.gov
  2329 Gateway Oaks Drive, Suite 200
  Sacramento, CA 95833-4252
  Telephone:  (916) 621-1835
  Fax:  (916) 274-2929

*Attorneys for State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel.* LOYD F. SCHMUCKLEY, JR., | 2:12-CV-1699 KJM EFB |
| Plaintiffs, | **PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT RITE AID CORPORATION'S MOTION TO CORRECT MISTAKES IN COURT'S ORDER ON RITE AID'S MOTION TO EXCLUDE PROPOSED SAMPLING METHODOLOGY** |
| v. | |
| RITE AID CORPORATION, | |
| Defendant. | Hearing Date:  October 16, 2020 |
| | Hearing Time: 10:00 a.m. |
| | Courtroom: 3 |
| STATE OF CALIFORNIA *ex rel.* LOYD F. SCHMUCKLEY, JR., | ECF No. 329 |
| Plaintiff, | |
| v. | |
| RITE AID CORPORATION, | |
| Defendant. | |

i

**INTRODUCTION**

Defendant Rite Aid Corporation ("Rite Aid") seeks an order correcting two alleged "mistakes" in the Court's July 14, 2020 Order, ECF No. 319, denying Rite Aid's motion to exclude the government's sampling methodology.  ECF No. 195.  The first purportedly deals with a "clerical mistake." ECF No. 329, Def.'s Mem. of Pts. and Auth. at 8.  The second alleges the Court's "adoption" of the government's "amended" sampling objective.  ECF No. 329 at 1.  Rite Aid, however, did not meet and confer with plaintiffs, which is reason alone to deny this motion. *Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Education,* 2017 U.S. Dist. LEXIS 114293, at *17 (E.D. Ca. July 20, 2017).

As to the first alleged mistake, ECF No. 329 at 8, had Rite Aid met with plaintiffs prior to filing this motion, the parties could have come to a mutual understanding of the interpretation of the subject sentence.

As to the second alleged mistake, ECF No. 329 at 15, there are no grounds for correction or reconsideration.  The Court made no clerical mistake.  Rite Aid presents no new facts or law and simply reargues the same points raised in its original motion.  ECF No. 319 at 2.  Further, there is no clear error because the sampling objective remains the same, i.e., to estimate the number, percentage, and payments associated with false claims.  *Id.* at 4.  Finally, Rite Aid fails to show manifest injustice.  *See id.* at 15.  For these reasons, the Court should deny this motion.

**DISCUSSION**

**I.   RITE AID DID NOT MEET AND CONFER PRIOR TO FILING THIS MOTION.**

This Court's Standing Order requires counsel to meet and confer prior to filing any motion.  *See* ECF No. 78-1 at 3.  Neither Rite Aid's notice of motion nor the supporting declaration makes any mention of any meet and confer efforts.  Indeed, Rite Aid's counsel did not engage in any such efforts.  Such discussions may have resolved Rite Aid's concerns.  Accordingly, the Court may deny this motion on the ground that Rite Aid failed to fulfill its meet and confer obligations. *See Morgan Hill Concerned Parents Ass'n*, *supra*, at *16  *See also Ayala v. Sodexo*, *Inc.*, 2016 U.S. Dist. LEXIS 66912, at *5 (E.D. Cal. May 19, 2016).

1

1

2

**II.    THE "CLERICAL MISTAKE" ARISING OUT OF A PURPORTED MISSING PHRASE IS IMMATERIAL TO THE ORDER.**

Rite Aid contends that a sentence at page 19, lines 20-23, of the Order is missing a conjunct.  ECF No. 329 at 8.  Rite Aid moves to correct the "clerical mistake" under Federal Rule of Civil Procedure 60(a).  *Id.*. at i.

Rule 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  Fed. R. Civ. P. 60(a).  It may be used to make an order reflect the actual intentions and necessary implications of the court's decision.  *Robi v. Five Platters*, *Inc.*, 918 F.2d 1439, 1445 (9th Cir. 1990).

Here, the purported missing conjunct is in a nonrestrictive (nonessential) appositive phrase separated by commas, which, if stricken, would not change the meaning of the sentence. Modifying this part of the sentence, therefore, is immaterial to the Order.  Indeed, Rite Aid does not tie the missing phrase into any particular argument or section of its original motion, does not explain how correction would materially change the meaning of the Order, and does not offer any proposed language for the Court's consideration.

To fix Rite Aid's concern, plaintiffs respectfully suggest the Court could easily strike the whole nonrestrictive (nonessential) appositive phrase because doing so would not change the meaning of the sentence.  The subject sentence could thus read as follows:

> Even if, as Rite Aid contends, plaintiffs' methodology presupposes what constitutes a 'false' Code 1 claim, *[appositive phrase omitted]* that is a key factual determination requiring resolution by the factfinder.

**III.    THIS COURT DID NOT MAKE ANY "MISTAKE" REGARDING THE SAMPLING OBJECTIVE.**

**A.    Background**

**1.    Briefings on Original Motion**

"On July 25, 2018, plaintiffs' expert, Michael Petron, submitted a report reiterating that the objective of plaintiffs' statistical sample 'was to estimate the number, percentage, and total payments associated with false claims made by Rite Aid to Medi-Cal for Code 1 drugs.'"  ECF

2

No. 329 at 4 (citing ECF No. 196-1 ¶ 10).  In its original motion, Rite Aid "attacked plaintiffs' originally stated objective for failing to specify the *exact* question to be answered and the specific evidence to be used to determine whether a particular claim was 'false.'"  *Id.* at 5.

In opposition, plaintiffs explained

> Both statistical experts agree that California's objective is to estimate the number of "false claims." *See* Salazar Decl., Exh. A, Petron Rep. ¶ 10; Exh. B, Epstein Dep. 87:2-17. The parties, however, diverge on the legal definition of "false claims."  [¶]  Based on the universal facts, California defined "false claims" in this matter and for purposes of its sampling methodology as Rite Aid's failure to review, verify, and document that the beneficiary had a qualifying Code 1 diagnosis when it submitted a subject claim for payment using override codes.  [Complaint-in-Intervention ("CII")] ¶¶ 98-107.  In contrast, Rite Aid's definition would like to disregard all universal facts and rely solely on its misguided legal interpretation of section 51476(c)(2).  ECF No. 195 at 16.

ECF No. 205, Opp'n to Sampling Mot. at 13.

In reply, Rite Aid claimed that plaintiffs' "amended" "sampling objective, first disclosed in their [o]pposition, has not been validated by any expert and assumes key questions of law not yet adjudicated."  ECF No. 210 at 3.  Rite Aid argued that plaintiffs changed the sampling objective and it was improper.  ECF No. 210 at 3, n. 4.

## 2.   The Hearing and Oral Argument

The Court heard oral argument, stating it was inclined to approve the use of statistical sampling.  ECF No. 246 at 6:24-7:2.  California answered the Court's questions about the sampling objective.  *Id.* at 21:11-22:19.  The Court later turned to Rite Aid's counsel:

> THE COURT: All right. Anything to say in response to the discussion I had with Mr. Salazar about the objective – the definition of the objective?
> MR. SMITH: No, Your Honor.

*Id.* at 25:20-23.  Near the conclusion of the hearing, the Court stated, "As I've already said, I lean towards – my tentative is to allow the sampling as proposed by the state and to approve the stratified random sampling method."[1]  *Id.* at 26:4-7.  The Court nonetheless allowed Rite Aid to

---

[1] The Court during the hearing also ordered supplemental briefings on two narrow issues: (1) whether it is appropriate to use statistical sampling as an evidentiary tool to establish falsity under the FCA and CFCA, ECF No. 246 at 4:13-8:19; and (2) whether the Court should permit

3

1    provide "wrap-up" argument and a 19-page PowerPoint presentation.  *Id.* at 27-36.

2          **3.    The Order at Issue**

3          The Court "[h]aving thoroughly considered the motions, supplemental briefs and argument

4    at hearing," denied Rite Aid's motion to exclude plaintiffs' sampling methodology and approved

5    plaintiffs' use of stratified random sampling.  ECF No. 319 at 2, 16.  The Court stated that Rite

6    Aid's contention that "cluster sampling is a preferred method when a patient's claim history is

7    required . . . ." "may be true, but plaintiffs have continuously argued that, consistent with the

8    sample objective, each individual claim is evaluated in isolation.  Petron Rep. ¶ 14; Opp'n to

9    Sampling Mot. at 20."  ECF No. 319 at 18.  The Court further stated that it "has accepted

10   plaintiffs' representation of this simplified determination process," where cluster sampling

11   becomes "unnecessary" because a patient's history will not help determine whether a Rite Aid

12   associate has fulfilled his or her responsibilities in using an override code to verify a Code 1

13   claim.  *Id.*

14         Unhappy with the result, Rite Aid seeks reconsideration, rearguing that plaintiffs'

15   "amended" sampling objective was improper.  ECF No. 329 at 9-11.  Rite Aid bases its motion on

16   Rules 60(a) and 60(b)(1).  We discuss each basis in turn.

17         **B.    The Court Should Deny the Motion under Rule 60(a) Because the Purported**
           **Error Is Beyond a "Clerical Mistake."**

18
19         Rule 60(a) applies to "clerical mistakes" or a "mistake arising from oversight or

20   omission."  Fed. R. Civ. P. 60(a).  The Ninth Circuit has further explained:

21         The basic distinction between "clerical mistakes" and mistakes that cannot be
           corrected pursuant to Rule 60(a) is that the former consist of "blunders in
22         execution" whereas the latter consist of instances where the court changes its
           mind, either because it made a legal or factual mistake in making its original
23         determination, or because on second thought it has decided to exercise its
           discretion in a manner different from the way it was exercised in the original
24         determination.

25   *Blanton v. Anzalone*, 813 F.2d 1574, 1577 n. 2 (9th Cir. 1987) (emphasis in original).  Moreover,

26   in "deciding whether the district court may alter a judgment pursuant to Rule 60(a), [the] focus is

27   _____

28   use of the Symmetry sample frame given Rite Aid's claim it could not recreate the frame.  *Id.* at
     37:22-38:1.

                                                    4

1    on what the court originally intended to do." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033

2    (9th Cir. 1990).

3         Here, regardless of whether the Court adopted the sampling objective as stated in Petron's

4    report or in plaintiffs' opposition to Rite Aid's motion, the Court's tentative ruling was "to allow

5    the sampling as proposed by the state and to approve the stratified random sampling method."

6    ECF No. 246 at 6:24-7:2, 26:4-7. While the "disconnect" between the sampling objective stated

7    in Petron's report and the opposition brief is a "fair observation" (*id.* at 21:11-18), California

8    explained that was due to the status of early discovery and litigation in the matter. *Id.* at 21:19-

9    22:15; *see also* ECF No. 319 at 16 ("[T]he scope of Petron's report was specifically limited to

10   addressing the question of sampling methodology given the early stages of discovery; thus, any

11   argument related to data collection, analysis and estimation are irrelevant to the validity of

12   Petron's expert opinion."). Given an opportunity to respond, Rite Aid did not dispute California's

13   explanation. The Court, "[h]aving thoroughly considered the motions, supplemental briefs, and

14   arguments at hearing," thus affirmed its tentative ruling approving the sampling methodology.

15   ECF No. 319 at 2, 21.

16        The Court intended to approve the sampling methodology, regardless of whether it adopted

17   the sampling objective stated in the Petron report (which was limited to addressing the question of

18   sampling methodology given the early stage of discovery) or the sampling objective stated in the

19   opposition brief to the original motion (which was in response to Rite Aid's misplaced and

20   premature attacks against data collection, analysis and estimation). The Court therefore cannot

21   grant the relief sought pursuant to Rule 60(a).

22        **C.    The Court Should Deny the Motion under Rule 60(b) Because the Order Is
              Not a "Final" Order.**

23

24        Rite Aid additionally relies on Rule 60(b)(1), but that Rule does not apply here because

25   the Order is not a "final" order. Fed. R. Civ. P. 60(b)(1); *Ali v. Capital One*, 2012 U.S. Dist.

     LEXIS 74790, at * 11 (E.D. Cal. May 30, 2012).

26

27        **D.    Even Applying Pre-Judgment Reconsideration Standards, the Court Should
              Deny the Motion.**

28        While Rite Aid only relies on Rule 60, the Court may also evaluate this motion pursuant

5

1    to proper pre-judgment reconsideration standards.  Even under these standards, however, the

2    motion must still be denied.

3            **1.      Standard of Review**

4            Although the Federal Rules of Civil Procedure do not expressly authorize a motion for

5    reconsideration, a "district court has the inherent power to reconsider and modify its interlocutory

6    orders prior to the entry of judgment[.]" *Smith v. Mass.*, 543 U.S. 462, 475 (2005).  "A court

7    should be loath to revisit its own decisions unless extraordinary circumstances show that its prior

8    decision was clearly erroneous or would work a manifest injustice." *Walsh v. Am. Med.*

9    *Response*, 2015 U.S. Dist. LEXIS 54179, at *2 (E.D. Cal. Apr. 24, 2015) (citing *Christianson v.*

10   *Colt Industries Operating Corp.*, 485 U.S. 800, 817 (1988).  Motions for reconsideration are

11   disfavored and are not the place for parties to make new arguments not raised in their original

12   briefs.  *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 1990).  Neither

13   disagreements with a decision nor recapitulations of rejected arguments are adequate bases for

14   reconsideration.  *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal.

15   2001).  Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of

16   finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.

17   2003).  A reconsideration motion "should not be granted absent highly unusual circumstances."

18   *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999), cert. denied, 490 U.S. 1059 (1989).

19           Reconsideration of an interlocutory order is generally justified where new evidence has

20   become available, there has been an intervening change in controlling law, or it is necessary to

21   correct clear error or prevent manifest injustice.  *Cachil Dehe Band of Wintun Indians v. Cal.*, 649

22   F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255,

23   1263 (9th Cir. 1993)).  The party moving for reconsideration must explain:

24       (1)    when and to what [j]udge . . . the prior motion was made;
25       (2)    what ruling, decision, or order was made thereon;
26       (3)    what new or different facts or circumstances are claimed to exist which
              did not exist or were not shown upon such prior motion, or what other
              grounds exist for the motion; and
27       (4)    why the facts or circumstances were not shown at the time of the prior
              motion.
28

6

1  E.D. Cal. L.R. 230(j).  "To succeed, a party must set forth facts or law of a strongly convincing

2  nature to induce the court to reverse its prior decision." *Knight v. Rios*, No. 09-00823, 2010 U.S.

3  Dist. LEXIS 136459, at *4 (E.D. Cal. Dec. 15, 2010).

4       **2.**    **There Are No New Facts or Law.**

5       This motion did not present any newly discovered evidence or identify an intervening

6  change in law.  *See Cachil Dehe Band of Wintun Indians*, 649 F. Supp. 2d at 1069.  It simply

7  repeated previous arguments.  The Court should therefore deny the motion.  *See Costello v.*

8  *United States*, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991) (denying reconsideration "where the

9  grounds for amendment are restricted to either repetitive contentions of matters which were

10  before the court on its prior consideration or contentions which might have been raised prior to

11  the challenged judgment"); *see also Duarte Nursery*, *Inc. v. United States Army Corps of Eng'rs*,

12  2017 U.S. Dist. LEXIS 43552, at *4-5 (E.D. Cal. Mar. 23, 2017) (citations omitted) (finding

13  reconsideration is "not intended to give an unhappy litigant one additional chance to sway the

14  judge").

15       **3.**    **There Is No Clear Error.**

16       Since this motion presents no new facts or intervening change in law, the remaining

17  question is whether the Court committed clear error.

18       In order for a party to demonstrate the type of clear error necessary for a change, the

19  moving party's arguments "cannot be the same as those made earlier."  *Glavor v. Shearson*

20  *Lehman Hutton, Inc.,* 879 F. Supp. 1028, 1032 (N.D. Cal. 1994) (citing *Backlund v. Barnhart,*

21  778 F.2d 1386, 1388 (9th Cir. 1985).  Clear error occurs when "the reviewing court on the entire

22  [record] is left with the definite and firm conviction that a mistake has been committed."  *Duarte*

23  *Nursery, Inc.*, 2017 U.S. Dist. LEXIS 43552, at *6 (citation omitted).  In order to show clear

24  error, a party moving for reconsideration must "set forth facts or law of a strongly convincing

25  nature to induce the court to reverse its prior decision."  *Id.* (citing *Walsh v. Am. Med. Response*,

26  2015 U.S. Dist. LEXIS 54179, at *4 (E.D. Cal. Apr. 23, 2015) (citation omitted)).  Clear error is

27  "more than just maybe or probably wrong; it must be dead wrong."  *Duarte Nursery*, *Inc.*, 2017

28  U.S. Dist. LEXIS 43552, at *6 (citations and quotation omitted).

7

1   Rite Aid simply rehashes arguments raised in the original motion.  As it did in its reply,

2   Rite Aid argues again that it was not afforded an opportunity to address—and that plaintiffs never

3   demonstrated the reliability of—the amended sampling objective.  ECF No. 329 at 9; *cf.*, ECF

4   No. 210 at 2.  As it did in its reply, Rite Aid argues again that the Court's endorsement of

5   plaintiffs' amended objective presupposes plaintiffs' interpretation of the Code 1 regulation.  ECF

6   No. 329 at 10; ECF No. 210 at 2-3.

7   The Court has thoroughly considered and addressed these issues.  As to the first argument,

8   the Court found that Rite Aid's contention that "cluster sampling is a preferred method when a

9   patient's claim history is required" "may be true, but plaintiffs have continuously argued [since

10  during the pre-intervention investigation in this matter] that, consistent with the sample objective,

11  each individual claim is evaluated in isolation.  Petron Rep. ¶ 14; Opp'n to Sampling Mot. at 20."

12  ECF No. 319 at 18.  As to the second argument, the Court found that "[e]ven if, as Rite Aid

13  contends, plaintiffs' methodology presupposes what constitutes a 'false' Code 1 claim, . . ., that is

14  a key factual determination requiring resolution by the factfinder."  ECF No. 319 at 19.

15  Rite Aid, however, seems to raise for the first time a third argument in this motion.  It

16  contended that plaintiffs' "amended sampling objective, to the extent allowed, will have the effect

17  of shifting the burden regarding falsity to Rite Aid."  ECF No. 329 at 11-12.  This is nothing new,

18  and Rite Aid could have and should have addressed this issue during the pendency of the motion

19  but did not.  *See Costello v. United States*, 765 F. Supp. at 1009 (denying reconsideration where

20  motion is based on "contentions which might have been raised prior to the challenged

21  judgment").

22  California's Complaint-in-Intervention has always alleged requisite falsity in that Rite Aid

23  submitted override codes when it did not, in fact, review, verify, and document that the

24  beneficiary had the Code 1 diagnosis restriction approved for use of the override codes.  *See* ECF

25  No. 114, Cal.'s Opp'n to Mot. to Dismiss at 10 (filed Feb. 23, 2018).  As California had

26  explained in opposing Rite Aid's motion to dismiss:

27      Given the pharmacy board requirements of "maintaining" certain pharmacy
        information on file ([CII] ¶¶ 33), the Code 1 documentation requirements ([CII]

28

8

¶¶ 40-41), and Rite Aid's purported pharmacy business practices in documenting Code 1 reviews and verifications ([CII] ¶¶ 85-87, 89-94), the lack of any such record establish prima facie that Rite Aid pharmacy associates did not perform the requisite Code 1 review, verification, and documentation for the affected sample claims. ([CII] ¶¶ 89-94.) *See Crumb*, at *45-46. *See generally* Fed. R. Evid. 803(6) & (7).

Moreover, many of the third-party prescribers' medical records in connection with the sample claims examined during California's investigation lacked any record of a diagnosis or condition supporting the Code 1 diagnosis restriction at the time of dispensing. ([CII] ¶¶ 103-106.)  The consistent findings again raise prima facie evidence that Rite Aid's pharmacy associates did not perform the requisite Code 1 review and verification for the affected sample claims.  *See* Fed. R. Evid. 803(6) & (7).

ECF No. 114 at 12.  Thus, California has always expressly intended to rely on Federal Rules of Evidence 803(6) and 803(7), which comprise the "business-records" exception rule against hearsay.  *See generally United States v. De Georgia*, 420 F.2d 889, 893 (9th Cir. 1969) ("[I]f a business record designed to note every transaction of a particular kind contains no notation of such a transaction between specified dates, no such transaction occurred between those dates.").  Rite Aid knew this all along.  *See* ECF No. 346, Def.'s Opp'n to Cal.'s Mot. for Order to Show Cause and Sanctions at 19 (Rite Aid claims prescription records it produced during discovery were "inadmissible hearsay.").  Instead of addressing California's plan to rely on the business-records exception, Rite Aid knowingly ignored it during the pendency of the original motion, and now, given the Order, Rite Aid impermissibly attempts to take a "second bite at the apple."  *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2nd. 1998).

### 4.     There Is No Manifest Injustice.

Finally, there is no manifest injustice resulting from the Order.  As the Court observed, "Rite Aid will have ample opportunity as the case moves forward to dispositive motion practice and trial to attack plaintiffs' evaluations of the sample data, including plaintiffs' position that their method is simple and straightforward.  ECF No. 319 at 15.  "At this stage of the litigation, . . . the [Court's] role is to assess the scientific reliability of plaintiffs' chosen methodology, not determine whether that methodology can or will satisfy the legal elements of plaintiffs' case."  *Id.* at 19-20.

9

**CONCLUSION**

The Court properly and adequately addressed the reliability and admissibility of plaintiffs' sampling methodology.  The Court thoroughly considered Rite Aid's challenges to and criticisms of plaintiffs' statistical approach.  Rite Aid has not shown any justifiable basis for reconsideration.  The Court should therefore deny this motion.

Respectfully submitted,

Dated:  October 2, 2020

XAVIER BECERRA
Attorney General of California

/s/ Emmanuel R. Salazar

_____
EMMANUEL R. SALAZAR
Deputy Attorney General
*Attorneys for Plaintiff State of California*

Dated:  October 2, 2020

BARTLETT BARROW LLP

/s/ Brian P. Barrow (as authorized on 10/2/2020)

_____
BRIAN P. BARROW (SBN 177906)
225 S. Lake Avenue, Suite 300
Pasadena, California 91101
*Attorneys for Qui Tam Plaintiff*
*Loyd F. Schmuckley, Jr.*

10

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this action.  My business address is:  2329 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833.

A true and correct copy of the foregoing document entitled:

**PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT RITE AID CORPORATION'S MOTION TO CORRECT MISTAKES IN COURT'S ORDER ON RITE AID'S MOTION TO EXCLUDE PROPOSED SAMPLING METHODOLOGY**

was served in the manner stated below:

**SERVED BY CM/ECF SERVICE**:  Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 135, on 10/2/2020, I served the following persons and/or entities by the Court's CM/ECF service:

Eric W. Sitarchuk
Kelly A. Moore
Benjamin P. Smith
Kevin Papay
Morgan, Lewis & Bockius, LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596

Catherine J. Swann
United States Attorney's Office
501 I Street, Suite 10-100
Sacramento, CA 95814

Michael L. Armitage
Wm. Paul Lawrence
Charles S. Segal
c/o Waters & Kraus
3141 Hood Street, Suite 700
Dallas, TX 75219

Jennifer L. Bartlett
Brian P. Barrow
Bartlett Barrow LLP
225 S. Lake Avenue, Suite 300
Pasadena, CA 91101

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/2/2020 | Sharon Brecht | /s/ Sharon Brecht |
| *Date* | *Printed Name* | *Signature* |