UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America et al., ex rel. Loyd F. Schmuckley, Jr.,<br><br>      Plaintiffs,<br><br>  v.<br><br>Rite Aid Corporation,<br><br>      Defendant. | No. 2:12-cv-01699-KJM-EFB<br><br>ORDER |
| State of California ex rel. Loyd F. Schmuckley, Jr.,<br><br>      Plaintiff,<br><br>  v.<br><br>Rite Aid Corporation,<br><br>      Defendant. | |

   The plaintiffs in this false claims action against Rite Aid move for leave to add new claims and allegations to their complaints. Mot., ECF No. 315. Rite Aid opposes the motion, which is fully briefed. *See* Opp'n, ECF No. 318, Reply, ECF No. 322. The court held a videoconference hearing on October 16, 2020. Jennifer Bartlett, W. Paul Lawrence, and Brian

1

Barrow appeared for the relator plaintiff; Emmanuel Salazar and Bernice Yew appeared for California, which has intervened as a plaintiff; and Benjamin Smith appeared for Rite Aid. For the reasons explained in this order, **the motion is granted**.

## I. BACKGROUND

The court has summarized the background of this litigation in its previous orders. *See, e.g.*, ECF No. 319, 2020 WL 3970201. Only a brief summary is necessary here. California pharmacies can request online reimbursements from Medi-Cal when they sell prescription drugs to Medi-Cal patients. *See id.*, slip op. at 2–3. For some drugs, the pharmacy must confirm that the sale follows Medi-Cal's "Code 1" rules. *Id.* at 3. These rules limit reimbursements for some drugs to patients with specific diagnoses and enforce quantity limits, among other restrictions. *See, e.g.*, Compl. in Interv. ¶ 37, ECF No. 75. Rite Aid has a system for its pharmacists and pharmacy technicians to follow when it sells Code 1 drugs: they must either confirm the restrictions are satisfied or contact the doctor and decide what to do; usually that means prescribing a different drug or asking Medi-Cal to make an exception. *See id.* ¶¶ 83–84.

Loyd Schmuckley, a former Rite Aid pharmacist, filed a complaint in this case on behalf of the United States and California more than eight years ago. ECF No. 1. He alleged Rite Aid's Code 1 system was not working as it claimed. *See id.* ¶ 10. According to his complaint, Rite Aid's pharmacists and technicians were not actually checking, for example, whether the patients actually had an approved diagnosis. *See id.* ¶ 10.h. He pinned the problem on the "enormous pressure" Rite Aid exerted on its pharmacists and technicians to fill prescriptions quickly. *Id.* ¶ 94. Rite Aid makes less money, he alleges, if it takes longer to fill prescriptions, and consulting with doctors takes time. *See id.* ¶¶ 94–95.

For several years after the original complaint was filed, this case remained under seal while California and the United States investigated Schmuckley's allegations. *See* Orders, ECF Nos. 7, 14, 17, 28, 31, 42, 44, 48, 50, 65, 68. Rite Aid cooperated. It responded to several interrogatories and produced documents both on its own behalf and on behalf of its subsidiaries. *See, e.g.*, Salazar Decl. Ex. F, ECF No. 265-6. The United States decided not to intervene, but California did intervene about five years after the case was first filed. ECF Nos. 75, 76.

1    Schmuckley also amended his complaint, and the case was made public, in September 2017.
2    ECF No. 79.

3        After another year or so of motion practice on the pleadings, Rite Aid answered the
4    allegations against it and staked out its defenses.  ECF Nos. 138, 139.  It denied, among other
5    things, that it—"Rite Aid Corporation"—actually manages pharmacies, but admitted its
6    subsidiaries together represent one of the largest drugstore chains in the United States.  *See, e.g.*,
7    Answer ¶¶ 48–51, ECF No. 138.  After further negotiations with the plaintiffs, Rite Aid amended
8    its answers to make clear it intended to argue it was just a holding company and the wrong
9    defendant.  *See* ECF Nos. 146, 147.  The plaintiffs moved to strike that defense, among others.
10   ECF No. 158.  The court resolved that motion, but did not address the wrong-entity defense
11   because the parties agreed to negotiate a resolution on their own.  *See* Order Mot. Strike at 2, 13,
12   ECF No. 278.

13       Unfortunately, those negotiations proved unsuccessful.  Rite Aid offered to substitute one
14   of its subsidiaries, Thrifty Payless, Inc., in the place of the parent company, *see* ECF No. 188, but
15   after the plaintiffs conducted further discovery into Rite Aid's corporate structure, they became
16   convinced that Rite Aid and two of its subsidiaries, Thrifty Payless and "Rite Aid Hdqtrs. Corp.,"
17   were not separate companies in practice.  For example, plaintiffs claim the two subsidiaries have
18   the same address as the parent company, do not pick their own board members and hold no board
19   meetings, do not file their own federal tax documents, generate no financial reports of their own,
20   and mix their own funds in with the parent company's funds.  *See* Proposed Am. Compl. in
21   Intervention ¶ 48, ECF No. 315-1.

22       Schmuckley and California now move for leave to amend their complaints to add the
23   allegations described above, which they contend will allow them to prove (1) Rite Aid and its
24   subsidiaries are jointly and severally liable and (2) Rite Aid is independently liable as an
25   "inadvertent beneficiary" of its subsidiaries' false claims.  *See* Mot. at 8–11 (citing Cal. Gov't
26   Code § 12651(a)(8)).  Rite Aid opposes the motion.  *See generally* Opp'n, ECF No. 318.
27   /////

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) governs amendments to the pleadings.  It provides, "The court should freely give [leave to amend] when justice so requires," and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).  When a court considers a motion to amend, it "must be guided by the underlying purpose of Rule 15—to facilitate decisions on the merits rather than on the pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  But a district court may deny a request for leave to amend if the amendment would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).  Of these factors, prejudice is the focus. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The party opposing a request to amend "bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187.

## III.    DISCUSSION

Rite Aid has not shown the proposed amendments would cause undue prejudice to itself or to the two subsidiaries.  Although new claims against new defendants can impose an "acute threat of prejudice," that threat is minimal when the case "is still at the discovery stage with no trial date pending." *See DCD Programs*, 833 F.2d at 187–88.  As Rite Aid concedes, "there is still time to complete discovery." Opp'n at 14; *see also* Stip. & Order, ECF No. 386 (providing, among other deadlines, that fact discovery will not close until December 2021 and that dispositive motions will not be heard until October 2022).  The court can also further adjust the schedule and discovery if necessary to avoid prejudice; no trial date has been set.  The threat of prejudice is even lower here because the proposed amended complaints assert the same theory of false claims Rite Aid has long been combatting on behalf of the whole organization.  Its subsidiaries would fight no new battles, at least not on any new front.  Rite Aid also argues the proposed amendments would subject it to further discovery about organizational structures and relationships, but that discovery appears to have set in long ago; the plaintiffs had been

4

investigating Rite Aid's corporate structure for at least a year at the time the pending motion was briefed. *See* Opp'n at 7. If additional discovery becomes unduly burdensome and expensive, Rite Aid and its subsidiaries have other avenues for seeking relief. *See, e.g.*, Fed. R. Civ. P. 26(c)(1).

Bad faith is not a concern here either. The plaintiffs have not used the sharp practices that have been evidence of bad faith in other actions. They have not, for example, proposed amendments that would deprive the court of jurisdiction. *See, e.g.*, *HiRel Connectors, Inc. v. United States*, No. 01-11069, 2005 WL 4958488, at *5 (C.D. Cal. July 15, 2005) (finding bad faith in request to amend that seemed likely to deprive court of jurisdiction and rested on dubious claims of newly discovered evidence).

Contrary to Rite Aid's argument, bad faith is not apparent in the plaintiffs' justifications for their motion. *See* Opp'n at 9–12. To be sure, the plaintiffs paint a far rosier picture of their diligence than a disinterested observer might perceive. For example, the plaintiffs explain the timing of their proposal by arguing that Rite Aid said nothing about Thrifty Payless and Hdqtrs. during California's or the federal government's lengthy investigations, but it is difficult to infer that Rite Aid intended to deceive, as the plaintiffs suggest it did; the government's requests for information asked Rite Aid to respond on behalf of its subsidiaries and affiliates. *See id.* The plaintiffs could also have searched public databases for clues about Rite Aid's corporate structure, and if they had, they may well have discovered that "Thrifty Payless, Inc. operates the Rite Aid drugstore chain." *Noel v. Thrifty Payless, Inc.*, 7 Cal. 5th 955, 962 n.2 (2019). The plaintiffs' attempt to portray themselves as hoodwinked victims is not bad faith; at worst it is overambitious advocacy. Good faith is apparent on all sides here: Rite Aid advanced its wrong-entity defense in its first responsive pleading, the parties negotiated in an attempt to find a resolution, they conducted discovery, the plaintiffs sought relief only after negotiations proved unsuccessful, and they moved to amend before discovery was closed or any trial date was set. *See SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1094–95 (S.D. Cal. 2002) (finding movant's supposed delays actually showed good-faith).

/////

The same history shows the plaintiffs' motion was not unduly delayed. But even if the plaintiffs were sluggish in their investigation, "[i]n the Ninth Circuit, delay alone is insufficient to provide grounds for denying leave to amend, though it is a relevant factor." *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 156 (N.D. Cal. 2005).

Finally, filing the proposed amendments would not invite an exercise in futility. Rite Aid advances three arguments to the contrary. First, it argues the plaintiffs' new allegations would not plausibly plead Rite Aid and its subsidiaries are jointly and severally liable under an alter-ego or agency theory of liability. But sparser allegations have proven viable in California federal district courts. *See, e.g.*, *In re Out of Network Substance Use Disorder Claims*, No. 19-2075, 2020 WL 2114934, *12 (C.D. Cal. Feb. 21, 2020). This question is also better addressed by direct motion practice on the pleadings or at summary judgment. *SAES Getters*, 219 F. Supp. 2d at 1086 ("[S]uch issues are often more appropriately raised in a motion to dismiss rather than in an opposition to a motion for leave to amend.").

Second, Rite Aid argues the plaintiffs could not state a claim under California Government Code section 12651(a)(8), which makes inadvertent beneficiaries of false claims liable if they discover a claim was false but do not disclose the false claim to the state. Rite Aid argues the proposed amended complaints never claim that Rite Aid discovered the allegedly false claims. *See* Opp'n at 16. But it is reasonable to infer from the plaintiffs' proposed allegations that Rite Aid turned a blind eye to known problems, *see, e.g.*, Proposed Am. Compl. in Interv. ¶ 112, ECF No. 315-1, and the court is aware of no authority preventing these allegations from permitting an inference of liability under Government Code section 12651(a)(8). Rite Aid also remains free to contest these allegations at a later stage.

Third, Rite Aid argues the new claims would be barred by the applicable statutes of limitations. The success of this argument turns on Rule of Civil Procedure 15(c). Under that rule, when an amendment "changes the party . . . against whom a claim is asserted," the amendment "relates back to the date of the original pleading" if three requirements are satisfied:

    1.    The amendment asserts a claim arising out of the same "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading";

      2.      The new party "received such notice of the action that it will not be prejudiced in defending on the merits" within the time period described by Rule 4(m);

      3.      The new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

*See* Fed. R. Civ. P. 15(c)(1).

Here, the proposed amendment "changes" the party or parties against whom claims are brought: Until now, that party has been Rite Aid; after amendment it would be three entities, Rite Aid, Thrifty, and the "Hdqtrs." entity. Although some courts have held an addition such as this is not a "change" under Rule 15(c), others have construed Rule 15 more liberally. *Compare, e.g.*, *Goodman v. Praxair*, Inc., 494 F.3d 458, 469 (4th Cir. 2007) (interpreting "changes" to include "adds"), *with, e.g.*, *Telesaurus VPC, LLC v. Power*, No. 07-01311, 2011 WL 5024239, at *6 (D. Ariz. Oct. 21, 2011) (reading "changes" to mean one-for-one, defendant-for-defendant substitution). The Ninth Circuit and Supreme Court have not addressed this disagreement.

Having considered the persuasive authorities cited in the parties' briefs, this court concludes the broader interpretation of "changes" is the better one. The Fourth Circuit summarizes the "complex compromise" of Rule 15(c) well: On the one hand, the Federal Rules seek to simplify pleadings and permit amendments in an effort to secure efficient and just resolutions. *See Goodman*, 494 F.3d at 467. On the other hand, defendants are entitled to repose from aging claims. *See id.* at 467–68. Rule 15(c) balances these concerns by requiring notice to new defendants and prohibiting amendments that would cause undue prejudice. *See id.* at 468. Reading a one-for-one exchange requirement into Rule 15 serves neither of these interests. *See id.* A one-for-one substitution rule would create a restrictive, unnecessarily formalistic policy; would prevent the resolution of claims on their merits; and would not protect mistakenly omitted defendants from old claims any better than a broader reading of "changes" because a new defendant joins the case under both interpretations.

The advisory committee's notes to Rule 15 are consistent with this interpretation. The committee explained that before Rule 15(c) was adopted, plaintiffs had often mistakenly sued the wrong government agency or administrator or even a nonexistent department, only to discover

7

their error after the applicable limitations period had expired. *See* Rule 15, Advisory Committee Notes to 1966 Amendment. Under these circumstances, the government would not have suffered prejudice if the correct department or agency had been substituted in; it knew about the claim all along. But courts sometimes dismissed claims nonetheless, and claimants lost their day in court. *See id.* Adapting this reasoning to changes that add parties is not difficult. If a plaintiff mistakenly believes only one defendant is responsible for his injury, but evidence later comes to light that would allow the defendant to point its finger at its subsidiary—and both the parent and the subsidiary knew of this evidence all along, but the plaintiff did not—then it would be unjust to deprive the plaintiff of a chance to pursue claims against both. Releasing one responsible defendant would exonerate a potentially liable party. *See* 6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1498.2 (Apr. 2020 Update).

The three subsidiary requirements of Rule 15(c)(1)(C) are satisfied here as well. First, the proposed amendments are about the same Code 1 restrictions and drugs that underlie the plaintiffs' original complaints, so they relate to the same "conduct, transaction, or occurrence." Second, the new defendants are Rite Aid subsidiaries that share interests in their defense with Rite Aid, whose counsel has even offered to make one of them a defendant. This shows they received sufficient notice of this litigation. *See, e.g.*, *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1503 (9th Cir. 1994) (holding new party receives "notice" under Rule 15(c)(1) if it shares "community of interest" with existing defendant, such as corporate affiliate with closely related business operations). And if Rite Aid knew it was the wrong defendant, the subsidiaries must have known as well. Third, the history of this action, including the parties' pleadings, motion practice, and discovery efforts, demonstrates the plaintiffs' motion to amend is the result of their mistake about who truly operates Rite Aid stores and who actually controlled pharmacy reimbursement requests: Rite Aid, Thrifty, Hdqtrs., or some combination? *See* Reply at 8–9, ECF No. 322. That is, the plaintiffs' "wrong action or statement" proceeded from a "faulty judgment, inadequate knowledge, or inattention," *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548–49 (2010) (citation omitted), not an intentional and strategic decision.

## IV. CONCLUSION

The motion to amend, ECF No. 315, is **granted**. The proposed amended complaints, ECF Nos. 315-1 and 315-3, are **deemed filed**. Deadlines for responsive filings and pleadings are governed by the Federal Rules of Civil Procedure and this court's Local Rules.

IT IS SO ORDERED.

DATED: April 6, 2021.

CHIEF UNITED STATES DISTRICT JUDGE