UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel.* LOYD F. SCHMUCKLEY, JR., <br><br> Plaintiffs, <br><br> v. <br><br> RITE AID CORPORATION, *et al.*, <br><br> Defendants. | Case No.  2:12-cv-01699-KJM-JDP <br><br><br> ORDER RE IN CAMERA REVIEW |
| STATE OF CALIFORNIA *ex rel.* LOYD F. SCHMUCKLEY, JR., <br><br> Plaintiff, <br><br> v. <br><br> RITE AID CORPORATION, *et al.*, <br><br> Defendants. | |

This court previously granted plaintiff-intervenor State of California's motion for *in camera* review of certain documents over which defendants have asserted attorney-client privilege.  ECF No. 450.  I have reviewed the documents, which consist of four unique documents—minutes from two meetings and an email and accompanying attachment—and has considered the parties' associated submissions.  I find that the documents were not improperly

1

withheld.

A.     Background

California asked the court to conduct an *in camera* review of documents over which defendants have asserted privilege, and which defendants have either entirely withheld or produced with redactions. The documents are identified in the nine rows of defendants' March 29, 2022 privilege log, listed as Document Numbers 89-93 and 95-98. ECF No. 442-3. Defendants have stated that these documents—created in August or September 2006—contain communications related to Medi-Cal's Pharmacy Outreach Program ("POP"), which was launched in 2006 as an effort "to educate providers about Medi-Cal billing requirements, including Code 1 requirements." ECF No. 442 at 7; ECF No. 444 at 5. They explained that to prepare for POP visits, Rite Aid established a Medi-Cal Audit Task Force ("Task Force"), which relied on attorney Michael Yount—Rite Aid's then-Director of Government Affairs—"for legal advice concerning Medi-Cal rules and regulations in connection with these POP visits and related issues." ECF No. 444 at 5. Defendants have contended that the nine documents contain privileged communications that either reflect Yount's legal opinions or were made by Rite Aid employees to assist him in providing legal advice to the company.

The court granted California's request for an *in camera* review and directed defendants to submit the relevant documents and supporting declarations to the court. The court directed defendants to serve California with a copy of the declarations.[1] Defendants have complied, and California has filed a response to defendants' supporting declarations. ECF No. 454.

B.     Legal Standards

In cases involving both federal and supplemental state law claims, federal privilege law applies. *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). It

---

[1] Defendants were notified that they could redact any privileged information from the declarations served on California.

"exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. The "party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication," and "if necessary, [of] segregat[ing] the privileged information from the non-privileged information." *United States v. Ruehle*, 583 F.3d 600, 608-09 (emphasis in original). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id*. at 607. The attorney-client privilege exists:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992). The party asserting the privilege bears the burden of establishing each element. *Ruehle*, 583 F.3d at 608.

In cases involving corporate clients, like the instant one, "[t]he administration of the attorney-client privilege in the case of corporations" presents certain challenges, including the challenge of identifying the client. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). Since a corporation can only act through its agents, the privilege may apply "to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Admiral Ins. Co. v. U.S. Dist. Ct*., 881 F.2d 1486, 1492 (9th Cir. 1989) (citing *Upjohn*, 449 U.S. at 394).

Under this framework, courts have held that the privilege may apply to "a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel," as well as "an employee [communication regarding] her intent to seek legal advice about a particular issue." *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). "[W]here the specific purpose of the document is to seek legal advice and the document is sent to nonlegal business staff for the purpose of informing them that legal advice

3

has been sought or obtained, the attorney-client privilege obtains even though the document was provided to nonlegal personnel." *In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI (EMC), 2006 WL 2585038, at *3 (N.D. Cal. Aug. 30, 2006) (internal quotations omitted). *See AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("Communications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege."); *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006) (noting that attorney-client privilege applies in the corporate "context of an investigation or fact-finding inquiry conducted by a company's attorneys"); *In re Grand Jury Subpoena v. United States*, 599 F.2d 504 (2d Cir. 1979) (finding that common law attorney-client privilege did not cover an investigation conducted by management alone for the purpose of discovering facts, but it did apply to a second investigation conducted by counsel seeking to determine appropriate tax filings and to evaluate the vulnerability of the corporation or its personnel to civil and criminal sanctions).

If a communication serves a dual purpose—i.e., it relates to both a legal and business concern—courts utilize the primary purpose test to assess whether the communication is privileged. *In re Grand Jury*, 23 F.4th 1088 (9th Cir. 2021). "Under the 'primary purpose' test, courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice." *Id*. at 1091.

C. Discussion

As noted above, the documents at issue consist of minutes from two Task Force meetings and a single email and associated attachment.

1. Meeting Minutes

The documents numbered 89 and 90, which defendants produced with redactions, contain minutes from two Task Force meetings held in August 2006. Defendants argue that the redacted portions of the minutes reflect Mr. Yount's legal advice, which Rite Aid sought in preparation for POP visits. ECF No. 444-6 at 2. More specifically, defendants contend that "Mr. Yount was asked to provide, and did provide, his legal interpretation and analysis of Medi-Cal audit rules and regulations and Pharmacist-In-Charge rules and regulations." *Id*.

4

Review of the redacted portions of these minutes substantiates defendants' position. The documents' first two redacted sections concern an internal regulatory compliance review and Mr. Yount's impressions thereof.[2] The remaining two redactions memorialize Mr. Yount's legal assessments of regulations and Medi-Cal audit rules. The redacted language describes counsel's legal opinions and communications made to the client to keep the client informed of legal developments. Such communications fall within the protection afforded by the attorney-client privilege. *See In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI (EMC), 2006 WL 1699536, *4 (N.D. Cal. June 16, 2006) ("The attorney-client privilege protects documents which 'involve either client communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications, including implications of client activity noticed by the attorney but with regard to which no written request for advice from the client has been found.") (quoting *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 46) (N.D. Cal. 1971).

2.  Emails and Attachments

The documents numbered 91, 93, 95, and 97 are identical copies of an email that Jack Huston—the then-director of Rite Aid's departments of Third Party Audit & Analysis and Third Party Document Retention—sent to Rite Aid personnel, including Mr. Yount. The email concerns an internal investigation related to Rite Aid's compliance with pharmacy rules and regulations, including discussions of initiatives related to regulatory compliance. Defendants explain that Rite Aid, at the direction of Mr. Yount, conducted the internal investigation "to independently review and assess the regulatory compliance of certain stores that were subject to Medi-Cal store visits in connection with POP." ECF No. 444-6 at 3. They further state that Mr. Yount enlisted Rite Aid's Third Party Audit department to assist with the investigation, which included gathering the necessary facts and data. Decl. of Ryan McCarthy ISO Defs.' Privilege Assertions. Mr. Huston attests that he was aware that the investigation was being conducted at

---

[2] Each set of produced minutes includes redactions of the same language.

1 Mr. Yount's request. ECF No. 444-5 at 2.

2 Based on a review of the email and defendants' supporting declarations, the court is
3 satisfied that Mr. Huston's email was sent for the purpose of facilitating legal advice.
4 Accordingly, the documents numbered 91, 93, 95, and 97 are protected by the privilege. *See*
5 *Lewis v. Wells Fargo & Ci.*, 266 F.R.D. 433, 445 (N.D. Cal. 2010) (observing that documents
6 created by non-attorney that summarizes factual findings of internal investigation are privileged
7 so long as the "author of the communication was aware that the audit to which the
8 communication related was being conducted for the purposes of obtaining legal advice and that
9 the document was being created to advance that purpose"); *cf. In re Kellogg Brown & Root, Inc.*,
10 756 F.3d 754, 758 (D.C. Cir. 2014) ("In the context of an organization's internal investigation, if
11 one of the significant purposes of the internal investigation was to obtain or provide legal advice,
12 the privilege will apply. That is true regardless of whether an internal investigation was
13 conducted pursuant to a company compliance program required by statute or regulation, or was
14 otherwise conducted pursuant to company policy.").

15 The remaining three documents—numbered 92, 96, and 98—are four copies of a
16 spreadsheet that was included as an attachment to Mr. Huston's email.[3] The spreadsheet details
17 the factual findings of the internal investigation conducted by Rite Aid's Third Party Audit
18 department. Although the attachment was not prepared by counsel, the factual findings contained
19 therein were gathered to assist Mr. Yount in providing legal advice. Consequently, the
20 spreadsheet contained in the documents numbered 92, 96, and 98 is also privileged. *See United*
21 *States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996) (explaining that "fact-finding which pertains
22 to legal advice counts as 'professional legal services'"); *see also In re Morning Song Bird Food*
23 *Litig.*, No. 12cv1592 JAH(RBB), 2015 WL 12791473, *5 (S.D. Cal. July 17, 2015) ("A
24 document need not be authored or addressed to an attorney in order to be properly withheld on
25 attorney-client privilege grounds.") (quotations omitted); *AT&T Corp.*, 2003 WL 21212614, at *4
26 ("An attachment must qualify on its own for attorney-client privilege and 'must be listed as a

27

28 [3] Document Number 92 includes two copies of the spreadsheet.

separate document on the privilege log.'") (quoting *O'Connor v. Boeing N. American, Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999)).

      Accordingly, the undersigned finds that the documents identified in defendants' March 29, 2022 privilege log as Document Numbers 89-93 and 95-98 were not improperly withheld.

IT IS SO ORDERED.

Dated:   January 25, 2023  

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE